# EXHIBIT 8

# SOPP 8401: Administrative Processing of Original Biologics License Applications (BLA) and New Drug Applications (NDA)

**Version:** 12
**Effective Date:** March 7, 2021

## Table of Contents

I.      Purpose ....................................................................................................................1
II.     Scope .......................................................................................................................1
III.    Background ..............................................................................................................2
IV.     Definitions ...............................................................................................................3
V.      Policy .......................................................................................................................5
VI.     Responsibilities .....................................................................................................11
VII.    Procedures ............................................................................................................12

          A.  General Information...........................................................................    12
          B.  Receipt of Application ......................................................................    12
          C.  First Committee Meeting ..................................................................    16
          D.  Filing Decision ..................................................................................    16
          E.  Deficiencies Identified (Day-74) Letter, if necessary ....................    18
          F.  Review Tasks Prior to Mid-Cycle Meeting ......................................    19
          G.  Internal Mid-Cycle Meeting .............................................................    21
          H.  Mid-Cycle Communication Telecon ..................................................    21
          I.   Review Continued .............................................................................    22
          J.  Late-cycle Meeting for Applications Subject to the PDUFA/BsUFA Programs    25
          K.  Amendments......................................................................................    26
          L.  Review Wrap-up................................................................................    27
          M.  Complete Response (CR) Actions.....................................................    28
          N.  Approval Actions...............................................................................    29
          O.  After Action Activities .....................................................................    31
VIII.   Appendices.............................................................................................................32
IX.     References ..............................................................................................................32
X.      History....................................................................................................................35

## I.   Purpose

This Standard Operating Policy and Procedure (SOPP) serves as a guide to the Center for Biologics Evaluation and Research (CBER) staff for the administrative processing of Biologics License Applications (BLAs) and New Drug Applications (NDAs).

## II.   Scope

**A.** This SOPP applies to original BLAs and NDAs processed by CBER including those subject to the Biosimilar User Fee Act (BsUFA) and the Prescription Drug User Fee Act (PDUFA).

**B.** This procedure does not apply to:

1. BLAs subject to the Medical Device User Fee Act (MDUFA)
2. Abbreviated New Drug Applications (ANDAs) subject to the Generic Drug User Fee Act (GDUFA)
3. Annual Reports

## III. Background

**A.** The BLA is a request for permission to introduce, or deliver for introduction, a biologic product into interstate commerce.  A BLA is submitted by an applicant (manufacturer) and must contain data derived from non-clinical laboratory and clinical studies which, demonstrate that the manufactured product meets prescribed requirements of safety, purity, and potency (21 CFR Part 601.2).

**B.** The NDA is the vehicle through which applicants formally propose that a new drug be approved for sale and marketing in the United States (Federal Food, Drug, and Cosmetic Act (FDCA) section 505(b)).

**C.** The Patient Protection and Affordable Care Act amended the Public Health Service (PHS) Act to create an abbreviated licensure pathway for biological products that are demonstrated to be "biosimilar" to or "interchangeable" with an FDA-licensed biological product.  The Biosimilar User Fee Act (BsUFA) authorized the FDA to assess and collect fees for biosimilar products.

**D.** The Prescription Drug User Fee Act (PDUFA) authorized the FDA to collect user fees from manufacturers of certain human drug and biological products.

1. PDUFA V established a review model, known as "the Program," for original BLAs and new molecular entity (NME) NDAs.  The goal of "the Program" is to improve the efficiency and effectiveness of the first cycle review process and, through improved communication and greater transparency, decreasing the number of review cycles necessary for approval.

2. Products subject to PDUFA user fees include most human drugs and biological drug products.  Products exempted from PDUFA include the following:

   **a.** Whole blood or a blood component for transfusion;
   **b.** Bovine blood product for topical application licensed before September 1, 1992;
   **c.** Allergenic extracts;
   **d.** Cord blood and peripheral blood stem cells separated from whole blood by physical or mechanical means for transfusion;
   **e.** An in vitro diagnostic biologic product licensed under section 351 of the PHS Act. (These BLAs are subject to MDUFA.);
   **f.** A biological product licensed for further manufacturing use only.

**E.** CBER developed the Managed Review Process (MRP) with the goal of providing a process to most effectively and efficiently review all user fee and non-user fee license applications and supplements.  This process begins during the investigational phase which builds the foundation of information necessary to demonstrate safety, efficacy and capability of consistent manufacture of a drug or biological drug product and continues through the postmarketing phase.

    **1.** The MRP incorporates the fundamental values and operational principles contained in the draft *Guidance for Industry and Review Staff: Good Review Management Principles and Practices for New Drug Applications and Biologics License Applications.*

    **2.** CBER's MRP consists of all CBER regulatory SOPPs, checklists, job aids, references, and templates, including letter and review templates that help CBER's review community carry out their review responsibilities.

**F.** Complementary to the MRP during the review and decision-making process are advisory committees (ACs).  They provide independent advice and recommendations to the FDA on scientific and technical matters related to the development and evaluation of products regulated by the Agency.  The FDA requests advice from ACs on a variety of matters, including various aspects of clinical investigations and applications for marketing approval of drug products.  Advisory committee members are scientific experts such as physician-researchers and statisticians, as well as representatives of the public, including patients.  Although the ACs provide recommendations to the Agency, final decisions are made by the FDA.

## IV.   Definitions

**A. Amendment –** Information submitted to a pending submission, including additional information or reanalysis of data previously submitted to clarify, revise or modify the application as originally submitted.

    **1. Major Amendment –** An amendment to an original application, efficacy supplement, manufacturing supplement or resubmission of any of these applications, including biosimilars, that extends the review clock.

    **2. Unsolicited Amendment –** A submission of information or data from the applicant that the Agency has not requested.

**B. Complete Response (CR) Letter –** A letter issued when the complete review indicates that there are deficiencies remaining that preclude the approval of the application at that time. **Note**:  A CR letter stops the review clock.  The CR letter will summarize all of the deficiencies remaining and describe actions necessary to place the application in a condition for approval.

**C. Deficiencies Identified (Day 74) Letter –** A letter notifying the applicant of issues identified during the filing review phase that were not communicated in the filing letter.

**D. Establishment inspection report (EIR) –** The report issued at the conclusion of an establishment inspection that summarizes the inspectional findings.

**E. Expedited Review –** FDA's review of a human drug application that has received priority review designation where the Review Team (Committee) plans to act at least 1 month before the PDUFA goal date provided that no significant application deficiencies prevent an early action.

**F. Filing Letter –** A letter issued to notify the applicant that their submission has been filed and will be reviewed. **Note:** The filing letter also includes information stipulated by PDUFA and may contain any identified filing deficiencies.

**G. Information Request (IR) Communication –** A communication sent to an applicant during submission review to request further information or clarification that is needed to complete review.

**H. Late-Cycle Meeting (LCM) –** A meeting held for applications subject to the PDUFA Program with the CBER Review Committee, CBER senior management, and the applicant to discuss the status of the review of the application late in the review cycle. **Note:** This meeting is not intended to discuss the pending regulatory decision on the application.

**I. Letter Ready Comments –** Written comments formulated by the reviewer(s) of a submission written sufficiently well (e.g., correct grammar, spelling, punctuation) to be readily included in a communication (not always a letter) to the applicant.

**J. Mid-Cycle Communication –** A phone call to the applicant that generally happens within two weeks following the internal Mid-Cycle review meeting to provide the applicant with an update on the status of the review of their submission. **Note:** This applies to submissions subject to the PDUFA/BsUFA Programs only.

**K. Primary Discipline Review –** A written review containing a reviewer's assessment and recommendations of all assigned areas of the original submission.

**L. Priority Review –** A reduced review schedule compared to a standard review schedule to potentially allow the product to reach the market faster.

**M. Regulatory Communication –**A communication that contains regulatory information, including correspondence generated by CBER. The inclusion of a submission's submission tracking number (STN) makes a communication regulatory in nature.

**N. Review Memorandum Addendum –** Information appended to a previously finalized review memorandum. **Note:** This addendum may include a written review of any amendments that have been accepted for review by CBER since the primary discipline review was completed and documented, any AC recommendations, and/or results or actions stemming from issuance of an establishment inspection report (EIR).

**O. Secondary Discipline Review –** A review by the Division Director and by intervening supervisory (i.e., Branch or Laboratory Chief) or non-supervisory (Team Lead) reviewers of the primary discipline review memo.

**P. Standard Review –** All non-priority applications are considered standard applications.

**Q. Substantive Review Issues –** Issues identified to date that may preclude approval if not resolved.

**R. Summary Basis of Regulatory Action (SBRA) –** A summary of all relevant and pertinent information from the review of a BLA or NDA. **Note:** The SBRA documents conclusions from all review disciplines (clinical, statistical, CMC, pharmacology/toxicology, etc.) about the product, notes any critical issues and disagreements with the applicant and within the FDA Review Committee and how they were resolved, provides recommendations for action and an explanation of any non-concurrence with review conclusions, and provides a detailed discussion of areas in which there were notable issues, unusual aspects or problems with the data or analysis, novel features of design, or conduct of studies.

## V.   Policy

**A.** All new marketing applications for products subject to licensure under the Public Health Service (PHS) Act are handled as BLAs. The procedures in this SOPP are not inclusive of all detailed procedures used to process applications. This SOPP is to be used with other related SOPPs, such as *SOPP 8412: Review of Product Labeling* and others listed in the references section, that describe administrative handling and review of license applications. NDAs are managed in the same manner as BLAs where appropriate. Differences in NDA handling are described in the Procedures section of this SOPP as needed.

**B.** Requirements for electronic submissions:

**1.** Under Section 745A(a) of the Federal Food, Drug, and Cosmetic Act (FDCA), applicants are required to submit information electronically in the appropriate FDA-supported formats (electronic common technical document (eCTD)) for certain BLAs, NDAs, ANDAs and supplements to these submission types with the exception of devices and blood and blood components, including source plasma submissions.

**2.** Submissions that are required to be eCTD compliant but are not submitted electronically or electronic submissions that are not in a format that FDA can process, review, and archive, will not be filed or received, unless exempted from these requirements.

**3.** Submissions that are not required to be in eCTD format (e.g., submissions for blood and blood components) should be submitted as directed on the FDA's eSubmitter website (https://www.fda.gov/ForIndustry/FDAeSubmitter/default.htm).

**4.** Please see the *Guidance for Industry: Providing Regulatory Submissions in Electronic Format: Certain Human Pharmaceutical Product Applications and Related Submissions*