Jeffrey C. Block, *pro hac vice*
Michael D. Gaines, *pro hac vice*
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
michael@blockleviton.com

Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
400 Concar Drive
San Mateo, CA 94402
(650) 781-0025 phone
jake@blockleviton.com

*Attorneys for Lead Plaintiff Jeffrey M. Fiore and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| MICHAEL PARDI, *Individually and on Behalf of All Others Similarly Situated,*<br><br>Plaintiff,<br><br>v.<br><br>TRICIDA, INC. and GERRITT KLAERNER,<br><br>Defendants. | Case No. 4:21-cv-00076-HSG<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CLARIFY ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>**Class Action**<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>Date: July 18, 2024<br>Time: 2:00pm<br>Courtroom 2, 4th Floor |

LEAD PLAINTIFF'S MOTION TO CLARIFY
4:21-cv-00076-HSG

**NOTICE OF MOTION AND MOTION TO CLARIFY ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that pursuant to Civil Local Rule 7-2 and Federal Rule of Civil Procedure 60(a), on July 18, 2024 at 2:00pm, in the courtroom of the Honorable Judge Haywood S. Gilliam, Jr., Oakland Courthouse, Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA 94612, Lead Plaintiff Jeffrey M. Fiore moves the Court for an order clarifying the Court's March 11, 2024 Order Granting in Part and Denying in Part Motion to Dismiss the Second Amended Complaint (the "SAC Order"), ECF No. 145.

Lead Plaintiff Jeffrey Fiore seeks limited clarification of the SAC Order to resolve what appears to be an inconsistent ruling over the actionability of Defendant Klaerner's May 7, 2020 statement, identified at ¶158 of the Second Amended Complaint ("SAC"), ECF No. 142, that "while the FDA continues its review, we remain confident that our submission meets the standard for approval through the Accelerated Approval Program." This statement was explicitly sustained by the Court in its July 29, 2022 Order Granting in Part and Denying in Part Motion to Dismiss the First Amended Complaint ("FAC Order"), *see* ECF No. 93, at 22–23, 29–30. The SAC Order, however, is ambiguous, on the one hand including it in a bulk list of dismissed "opinion statements," even though the Court stated "there is no basis to revisit any of [the Court's] prior rulings" so "the Court only addresses the statements that it previously found inadequately pled," and later calling the statement in question "misleading . . . by omission." ECF No. 145, at 8, 23–24. Accordingly, Lead Plaintiff seeks clarification as to whether the SAC Order intended to revisit this previously upheld statement.

This motion is based on the attached memorandum, the pleadings, this Court's Orders, and such argument as may be presented to the Court on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.        SUMMARY OF THE ARGUMENT**

Lead Plaintiff seeks clarification of the Court's March 11, 2024 SAC Order. In its July 29, 2022 order denying in part Defendants' motion to dismiss Lead Plaintiff's first Amended Complaint for Violations of the Federal Securities Laws ("FAC"), the Court held that Defendant Klaerner's statement on May 7, 2020 that "while the FDA continues its review, we remain confident that our submission meets the standard for approval through the Accelerated Approval Program" was adequately pled. ECF No. 93, at 22–23, 29–30. In sum, the Court held that "Defendants could have remained altogether silent about the review issues they discussed with the FDA. But they could not disclose only one review issue discussed with the FDA and conclude that they were thus confident about their chances for approval, while omitting the other review issue they knew the FDA was concerned about." ECF No. 93, at 30.

In ruling on Klaerner's motion to dismiss the SAC, the Court stated that it would not "revisit statements that the Court already found sufficiently pled" in the FAC, *see* ECF No. 145, at 8. The SAC Order, however, also included that the same statement made by Klaerner—"while the FDA continues its review, we remain confident that our submission meets the standard for approval through the Accelerated Approval Program"—in a bulk list of statements of opinion for which "[Lead Plaintiff] fails to plausibly plead any basis for concluding that Klaerner's opinion statements . . . expressing optimism about FDA approval directly contradicted what he knew at the time and were therefore false." ECF No. 145, at 12. But later in the SAC Order, the Court pointed to Klaerner's purported justification for why the FDA would not hold an AdCom meeting and his statement expressing confidence in obtaining FDA approval and found that the "SAC pleads that Klaerner selectively raised only one of the FDA's concerns in the May 7, 2020 call, but not others, thereby misleading the market by omission." *Id*. at 23–24.

It is unclear whether the SAC Order supersedes the FAC Order on this statement, and whether the statement made by Klaerner on May 7, 2020 expressing confidence that Tricida's

"submission meets the standard for approval" is still an actionable misrepresentation live in the case. Accordingly, Lead Plaintiff respectfully seeks clarification.

## II. SUMMARY OF THE ISSUES TO BE DECIDED

Whether the Court intended to revisit its holding from the FAC Order that Lead Plaintiff plausibly alleged Klaerner's May 7, 2020 statement of confidence to be misleading.

## III. BACKGROUND

Lead Plaintiff filed the FAC on June 1, 2021. *See* ECF No. 72. The FAC alleged that Klaerner misleadingly stated on May 7, 2020, during Tricida's 1Q20 earnings call:

> *In our late-cycle meeting with the FDA held in May 2020, the FDA indicated it currently* does *not plan to hold an AdCom to discuss veverimer due in part to the logistical challenges posed by COVID-19. In our late-cycle meeting with FDA, we took the opportunity to address outstanding review issues.* We presented our data and rationale as to why we think we very much satisfied the requirements for initial approval under the Accelerated Approval Program including the magnitude and durability of the treatment effect on the surrogate markup serum bicarbonate demonstrated in the TRCA-301 and TRCA-301E trials.
>
> Under the initial approval, we have to ensure that US patients who would be prescribed veverimer get clinically significant benefit that outweighs the risk of treatment. **Overall, while the FDA continues its review, we remain confident that our submission meets the standard for approval through the Accelerated Approval Program**.

ECF No. 39, ¶101 (italic emphasis original, bold emphasis added).

In the FAC Order, the Court quoted the above paragraph in its entirety and found the FAC adequately alleged the statements therein to be both misleading and made with scienter:

> Fiore alleges that Klaerner's statement misled investors because while it revealed that Defendants had discussed outstanding review issues with the FDA, he omitted the FDA's "concerns regarding the trial data supporting TRCA-301, that the majority of participants were from Eastern Europe and the high concentration in one trial site." Dkt. No. 79 at 24. Fiore argues that Defendants' 2Q 2020 Form 10-Q, filed three months later, confirmed the materiality of this omission when it revealed that at the May 2020 meeting the FDA shared concerns about "the magnitude and durability of the treatment effect on the surrogate marker" and the "*applicability of data* from the TRCA-301 and TRCA-301E trials to the U.S. population." *Id.* ¶ 102 (emphasis added). Defendants ultimately acknowledged in their 2Q 2020 Form 10-Q that the FDA would likely decline to approve the NDA. . . .

The Court concludes that Fiore has sufficiently alleged that Klaerner's May 7 statement was misleading. . . . Klaerner disclosed the fact that Defendants had discussed "outstanding review issues" with the FDA at the May 2020 late-cycle meeting and shared one of those issues: "the magnitude and durability of the treatment effect on the surrogate marker." [FAC] ¶ 101. Fiore plausibly alleges that by disclosing this key detail, Klaerner was obligated to share the other significant review issue – "applicability of data from the TRCA-301 and TRCA-301E trials to the U.S. population" – discussed with the FDA. . . . Further, Fiore's allegations that the August 6, 2020 2Q 2020 Form 10-Q indicated Defendants did discuss the applicability concern with the FDA at the May 2020 meeting suggest that, **at the time Klaerner made the statement at issue, Defendants knew the nature of the FDA's concerns with their clinical data, and that those concerns affected veverimer's chances for FDA approval.** Put another way, Fiore's allegations support a plausible inference that Klaerner informed investors of the good news – the discussion of "review issues" with the FDA – without including the bad news from the same meeting – the discussion of the FDA's concerns with the "applicability" of Defendants' clinical data.

\*        \*        \*

The Court concludes that Fiore has plausibly alleged scienter with respect to Klaerner's statements regarding the May 1, 2020 late-cycle meeting. Defendants met with the FDA at a May 1, 2020 late-cycle meeting and discussed the FDA's concerns with Defendants' clinical data. Six days later, on May 7, 2020, Klaerner disclosed this meeting during an earnings call. However, he only shared one issue discussed at that meeting – "the magnitude and durability of the treatment effect on the surrogate marker." He did not share the other issue that was discussed – the FDA's concerns with the applicability of Defendants' foreign clinical data to the U.S. population. Klaerner only said that Defendants were "looking at . . . the clinical benefit that the U.S. patients get." Dkt. No. 78-14 (May 7, 2020 Tricida Earnings Call) at 11. Klaerner concluded his statement by assuring investors that, "**Overall, while the FDA continues its review, we remain confident that our submission meets the standard for approval through the Accelerated Approval Program**." *Id.* at 6.

The facts here are similar to those in *Schueneman*. 840 F.3d at 702. There, the defendant (a bio-pharmaceutical company that was testing and developing a new drug) **affirmatively told investors that the company was "confident" about the drug's approval**, which was based on the testing data including "all the animal studies that have been completed." *Id.* The company made that statement despite the allegation that it knew, and had indeed reported to the FDA, the result of a rat study that indicated that the drug was causing tumors and various types of cancer in rats. *Id.* at 701. Based on those allegations, the Ninth Circuit held that while the company "may not have had a duty to disclose the Rat Study had they not been representing that animal studies supported [the drug]'s safety and therefore

> its likelihood of being approved . . . once [the company] chose to tout [the drug]'s likely approval by referencing allegedly positive animal and preclinical studies, they were bound to do so in a manner that wouldn't mislead investors." *Id.* at 707-708.

> Like the company in *Schueneman*, Defendants "may not have had a duty to disclose" the FDA's concern regarding the applicability of their data had they not also partially disclosed the conversation with the FDA and discussed their chances for approval. 840 F.3d at 707. But "once defendants chose to tout [allegedly positive discussions with the FDA], they were bound to do so in a manner that wouldn't mislead investors as to [potentially negative issues from that same discussion within their possession]." *Berson*, 527 F.3d at 987. Here, Defendants' failure to inform the market about the FDA's applicability concerns is plausibly alleged to be "an extreme departure from the standards of ordinary care . . . [that] present[ed] a danger of misleading buyers or sellers that [was] either known to [Defendants] or [was] so obvious that [Defendants] must have been aware of it." *Zucco*, 552 F.3d at 991 (internal quotation marks omitted). . . .

> Defendants could have remained altogether silent about the review issues they discussed with the FDA. **But they could not disclose only one review issue discussed with the FDA and conclude that they were thus confident about their chances for approval, while omitting the other review issue they knew the FDA was concerned about**.

ECF No. 93 at 22–23, 29–30 (bold emphasis added).

On December 15, 2022, Lead Plaintiff filed his SAC. *See* ECF No. 115.[1] The SAC repeated the FAC's allegations that Klaerner's May 7, 2020 statements—found actionable in the above-quoted excerpts of the FAC Order—were misleading. *See* ECF No. 115, ¶158.

On February 6, 2023, Klaerner moved to dismiss the SAC. ECF No. 128. In addition to challenging newly-alleged misstatements, Klaerner's motion argued that those claims previously sustained by the FAC Order should be dismissed. The Court, however, explicitly declined to revisit its prior ruling in its March 11, 2024 SAC Order:

> As a preliminary matter, without seeking leave, Klaerner attempts to revisit statements that the Court already found sufficiently pled…. This is an impermissible de facto motion for reconsideration of the Court's previous order, which Klaerner neither acknowledges nor properly briefs. The Court finds that there is no basis to revisit any of its prior rulings, including the statements discussing outstanding review issues with the FDA that the Court previously found to be sufficiently pled…. Accordingly, the Court

---

[1] Re-filed with fewer redactions at ECF No. 142.

only addresses the statements that it previously found inadequately pled, along with the new purported misrepresentations and allegations of scienter raised in the operative complaint.

ECF No. 145, at 8.

The SAC Order, however, listed statements it considered to be statements of opinion, including the last sentence of SAC ¶158: "[O]n May 7, 2020, Klaerner stated that '[o]verall, while the FDA continues its review, we remain confident that our submission meets the standard for approval through the Accelerated Approval Program.'" ECF No. 145, at 11. The SAC Order then stated that all statements of opinion were dismissed. *Id.* at 10–16.

Later in the SAC Order, however, when the Court again addressed SAC ¶158 in its analysis of scienter, it both called Klaerner's statement "misleading" and agreed that Klaerner's recent meeting with the FDA evidenced intentional or reckless deception:

> [A]fter stating that the AdCom meeting would be canceled in part due to COVID "logistical issues," Klaerner shared only one of the outstanding review issues raised by the FDA at the late-cycle meeting—"the magnitude and durability of the treatment effect on the surrogate markup." [SAC] at ¶ 158. **Klaerner then concluded that "[o]verall, while the FDA continues its review, we remain confident that our submission meets the standard for approval through the Accelerated Approval Program."** *Id.*

> The Court finds that Fiore plausibly pleads that Klaerner intentionally or recklessly misrepresented the true reasons for the cancellation of the AdCom meeting. The SAC alleges that Klaerner was party to extensive communications with the FDA about its concerns and their potential impact on the AdCom meeting, and that the FDA did not at any point cite COVID-19 logistical issues as the reason for canceling the meeting.  SAC at ¶¶ 159, 162.  **And the SAC pleads that Klaerner selectively raised only one of the FDA's concerns in the May 7, 2020 call, but not others, thereby misleading the market by omission.** *Id.* **at ¶ 158.**  Under the circumstances, it was obviously relevant whether the meeting was canceled for "logistical reasons" or substantive ones, and it was also relevant what the full substantive reasons were once Klaerner chose to highlight some of them.

ECF No. 145, at 23–24 (bold emphasis added).

## IV.    ARGUMENT

"A court may clarify its order for any reason." *Wahl v. Am. Sec. Ins. Co.*, No. C 08-0555 RS, 2010 WL 2867130, at *3 (N.D. Cal. July 20, 2010). A motion for clarification "does not

require a 'substantive change of mind by the court.'" *JH Kelly, LLC v. AECOM Technical Services, Inc.*, No. 20-cv-05381-HSG (June 1, 2022) (quoting *Bordallo v. Reyes*, 763 F.2d 1098, 1102 (9th Cir. 1985)) (construing motion for reconsideration in part to be motion for clarification).[2] "Instead, such a request 'invite[s] interpretation, which trial courts are often asked to supply, for the guidance of the parties.'" *Wahl*, 2010 WL 2867130, at *3 (quoting *Bordallo*, 763 F.2d at 1102) (alteration in original).

The SAC Order expressed the Court's intent to leave the findings of the FAC Order undisturbed. *See* ECF No. 145, at 8 & n.5. One of these findings was that Lead Plaintiff plausibly alleged it was misleading for Klaerner to claim on May 7, 2020 that "[o]verall, while the FDA continues its review, we remain confident that our submission meets the standard for approval through the Accelerated Approval Program." ECF No. 93, at 21–22, 29–30.

But the SAC Order also included Klaerner's May 7, 2020 statement of confidence in a compilation of statements the Court deemed inactionable statements of "opinion[]." *See* ECF No. 145, at 11. That section of the SAC Order contained no separate analysis of the May 7, 2020 statement despite its materially different circumstances—it was made after the January 27, 2020 mid-cycle meeting and the May 1, 2020 late-cycle meeting. Indeed, like the FAC Order, the SAC Order later explains why this statement in particular could have misled investors and why Klaerner would have known it was misleading when he said it. *See* ECF No. 145, at 23–24; *see City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech. Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) (explaining opinion statements are actionable where "the speaker is aware of undisclosed facts tending seriously to undermine the statement's accuracy.).

Thus, there appears to be an ambiguity within the SAC Order. Lead Plaintiff submits that

---

[2] Motions for clarification are distinct from motions for reconsideration. The former ask a court to clarify what was intended by an ambiguous order, while the latter request a substantive modification to an unambiguous ruling. *See Farfan v. SSC Carmichael Operating Co. LP*, No. 18-CV-01472-HSG, 2019 WL 690289, at *1–2 (N.D. Cal. Feb. 19, 2019) (denying motion for reconsideration while granting motion for clarification). Because the SAC Order can be read both to sustain SAC ¶158 in full, consistent with its prior order, and to dismiss the final sentence of SAC ¶158, Lead Plaintiff requests only clarification as to the SAC Order.

under the law of the case doctrine, *see Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.*, 2024 WL 86859, at *2 (N.D. Cal. Jan. 8, 2024), along with the Court's stated refusal to revisit the FAC Order's findings, the absence of recognition in the SAC Order that the Court was reversing its prior holding, and later explanation in the SAC Order as to why the statement would have misled investors, that the more likely reading of the SAC Order is that it did not intend to dismiss the May 7, 2020 statement expressing confidence in FDA approval which the Court previously found adequately pled. Defendant disagrees, and contends the statement is no longer in the case. *See* Declaration of Michael D. Gaines in Support of Lead Plaintiff's Motion to Clarify Order Granting in Part and Denying in Part Motion to Dismiss at ¶4. As such, Lead Plaintiff requests clarification as to the proper interpretation of the SAC Order.

## V.    CONCLUSION

For the reasons stated herein, Lead Plaintiff respectfully requests that the Court issue an order clarifying the SAC Order with respect to Klaerner's statement that "while the FDA continues its review, we remain confident that our submission meets the standard for approval through the Accelerated Approval Program," made on May 7, 2020.

DATED: June 6, 2024                     Respectfully submitted,

                                        /s/ Jeffrey C. Block
                                        Jeffrey C. Block (*pro hac vice*)
                                        Michael D. Gaines (*pro hac vice*)
                                        **BLOCK & LEVITON LLP**
                                        260 Franklin Street, Suite 1860
                                        Boston, MA 02110
                                        (617) 398-5600 phone
                                        jeff@blockleviton.com
                                        michael@blockleviton.com

                                        Jacob A. Walker (SBN 271217)
                                        **BLOCK & LEVITON LLP**
                                        400 Concar Drive
                                        San Mateo, CA 94402
                                        (650) 781-0025 phone
                                        jake@blockleviton.com