# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PARDI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRICIDA, INC., and GERRIT KLAERNER,<br><br>Defendants. | Case Number: 4:21-cv-00076-HSG<br><br>STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION |

IT IS HEREBY STIPULATED AND AGREED by and between parties hereto, through their undersigned counsel, and subject to this Court's approval:

**1.   PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2.   DEFINITIONS**

2.1.   "Document" or "Documents" means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail or facsimile and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols or combinations thereof, and any record created thereby, regardless of the manner in which the record has been stored, and also specifically includes Electronically Stored Information and Hard-Copy Documents.

2.2.   "Electronically stored information" or "ESI" means any Document or Documents

stored or transmitted in electronic form.

2.3. "Hard-Copy Document" means any Document existing in paper form at the time of collection.

2.4. "Hash Value" is a unique alphanumerical identifier that can be assigned to a file, a group of files or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

2.5. "Metadata" means data created as a function of the application software used to create the document or file. To the extent they are available and able to be captured at the time of collection, the metadata values that are to be extracted and produced in the metadata load files (.DAT file using concordance standard delimiters) are listed in "Addendum A" attached hereto.

2.6. "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is a .xls or .xslx file.

2.7. "Load Files" means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

2.8. "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

2.9. "Searchable Text" means the text extracted or generated using OCR from any Document that allows the Document to be electronically searched.

3. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

4. **LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and

production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**5.    DEDUPLICATION**

In order to reduce the burdens of discovery, the parties agree that ESI should be deduplicated across the entire collection (i.e., global deduplication) based on MD5 or SHA-1 hash values at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Removal of near-duplicate documents and email thread suppression is not acceptable.  Deduplication will be done across the entire collection (global deduplication) and the CUSTODIAN field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document.  The CUSTODIAN and FILEPATH metadata fields shall be populated at the time of production for all ESI produced in discovery.  For non-email, the FILEPATH-DUP metadata field shall be populated at the time of production.  Should the CUSTODIAN or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.  Notwithstanding the above, the parties retain the right to request all file paths corresponding to specifically identified documents produced in discovery, which data shall be provided in the form of an overlay file within two weeks of any such requests.

**6.    SEARCH**

6.1    The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

6.2    The Producing Party may apply electronic searches in order to identify potentially responsive ESI. The Parties agree to meet and confer on a search protocol for such searches,

comprising of (a) the custodians and/or sources of ESI to be searched; (b) the search terms to be applied against those custodians and/or sources; (c) the date range to be applied against those custodians and/or sources; and (d) any other search criteria or methods to be used to identify potentially responsive ESI (the "Search Protocol"). If the Parties fail to reach agreement as to the Search Protocol, either Party may, but is not required to, bring the dispute to the Court for resolution. In the absence of an agreement or court order regarding a Search Protocol, the Producing Party may apply a Search Protocol of its choosing, without prejudice to the Requesting Party's ability to seek later relief from the Court regarding the adequacy of the Search Protocol.

6.3     The fact that the Parties agree to a Search Protocol shall not preclude a Producing Party from reviewing potentially responsive ESI that is returned by the Search Protocol in order to make final determinations as to the responsiveness of the ESI and the privilege and other protections applicable to the ESI.

6.4     The parties agree that the use of technology (such as active learning and/or email threading) to locate ESI likely to contain discoverable information may be appropriate and agree to meet and confer, in good faith, to discuss methodology, including the use of search terms in conjunction with active learning, the use of search terms alone or the use of active learning alone.

6.5     If search terms are used, focused terms and queries should be employed; broad terms or queries should be avoided. The parties agree that if search terms are used, the methodology using search terms often requires iterative refinement.

6.6     Where reasonable, including but not limited to if specific sources of potential ESI cannot be searched using the Search Protocol due to technical limitations, a Producing Party may employ means other than the Search Protocol in order to identify responsive Documents or ESI. The Parties agree to meet and confer regarding any disagreements. If the Parties fail to reach agreement, any Party may, but is not required to, bring the dispute to the Court for resolution.

**7.     PRODUCTION FORMATS**

7.1     ESI is to be produced in 300 DPI Group IV Grayscale Tagged Image File Format (.TIFF or .TIF) files.  TIFF files shall be produced in single-page format along with image load

files (.OPT file and .LFP file). If TIFF files are unavailable or unable to be produced, documents may be produced in a similar graphic file format (*e.g.*, .JPG). All documents are to be provided with per document searchable text (.TXT) files, and such text files shall contain the full text extraction. In the event a document is redacted or scanned into TIFF format, the text file should contain that document's OCR text. These text files and image load files should indicate page breaks, to the extent possible. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

7.2   During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified to TIFF, metadata values should be extracted and produced in a load file.

7.3   Unless otherwise stated herein, documents in families shall be produced and Bates-stamped in sequence with the Absolute Parent first in sequence, followed by any and all attachments. Absolute Parent shall be defined as the document that is the source for all other documents in a document family, regardless of whether attachments to the Absolute Parent are also parent documents with attachments. When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

7.4   Any Party may request the production of ESI in native format where the production in native format is reasonably necessary to the ESI's comprehension or use. For ESI produced in native format, a Bates-stamped placeholder TIFF bearing the legend "This Document has been produced in Native Format" shall also be produced in the same manner as other TIFFs.

7.5   Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives or through secure file transfer protocols (*e.g.*, FTP) or similar secure electronic transmission.  A production by secure file transfer shall be considered complete when made available to the Receiving Party, unless technical issues prevent the Receiving Party from accessing and downloading the documents (provided, however, that the Producing Party shall be notified of the issue and given reasonable opportunity to complete the production through alternative means).

7.6     To maximize the security of information in transit, any media on which documents are produced shall be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with the encrypted media.

## 8. DOCUMENTS PROTECTED FROM DISCOVERY

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

Communications involving trial counsel that post-date January 6, 2021, the date of the filing of the original complaint in this matter, are not discoverable. Such communications also need not be included on a producing party's privilege log.

## 9. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: July 9, 2024

BLOCK & LEVITON, LLP

By: */s/ Jeffrey C. Block*
Jacob A. Walker (SBN 271217)
jake@blockleviton.com
Jeffrey C. Block (*pro hac vice*)
jeff@blockleviton.com
Michael D. Gaines (*pro hac vice*)
michael@blockleviton.com
BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600

*Attorneys for Lead Plaintiff*

DATED: July 9, 2024                               SIDLEY AUSTIN LLP

By: */s/ Sara B. Brody*
Sara B. Brody (SBN 130222)
sbrody@sidley.com
Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: 415 772 1200

Robin Wechkin (admitted *pro hac vice*)
rwechkin@sidley.com
SIDLEY AUSTIN LLP
8426 316th Place Southeast
Issaquah, WA 98027
Telephone: 415 439 1799

*Attorneys for Defendant Gerrit Klaerner*

Pursuant to Civil Local Rule No. 5-1(h)(3), all signatories concur in filing this Stipulated Order re: Discovery of Electronically Stored Information.

DATED: July 9, 2024                              By: */s/ Sara B. Brody*
                                                 Sara B. Brody (SBN 130222)

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: 7/11/2024                                 _____
                                                 Hon. Haywood S. Gilliam, Jr.
                                                 United States District Court Judge

# ADDENDUM A

| Field | Definition | Doc Type |
|---|---|---|
| CUSTODIAN | Name of person from where Documents/files were collected or, in the case of non-human sources, a short description of that source (*e.g.*, "Shared Drive"). | All |
| ALLCUSTODIANS | The Custodian value of the Document as well as the Custodian value for all copies of the Document that were removed as a result of de-duplication. | All |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | Ending Bates Number (production number) | All |
| BEGATTACH | First Bates number of family range (*i.e.*, Bates number of the first page of the parent Document) | All |
| ENDATTACH | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment or, if no attachments, the Document itself) | All |
| PAGE COUNT | Number of pages in the Document | All |
| APPLICATION | Commonly associated application for the specified file type. | All |
| NATIVE FILE LINK | The file path for Documents provided in Native Format | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |

| FOLDER | Folder location of the e-mail within the PST/OST | E-mail |
|---|---|---|
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| DATESENT | Date Sent (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| DATERCVD | Date Received (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| HASHVALUE | Hash value (*e.g.*, MD5 or SHA-1) | All |
| FILENAME | Original file name at the point of collection | E-Document |
| TITLE | Internal Document property | E-Document |
| AUTHOR | Creator of a Document | E-Document |
| DATE CREATED | Creation Date (mm/dd/yyyy hh:mm:ss AM) | E-Document |
| DOCUMENT TYPE | Descriptor for the type of Document | All |
| PRODVOL | Name of media that data was produced on. | All |
| CONFIDENTIALITY | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |
| TIMEZONE | Time zone of data used during processing of data. | All |