July 17, 2024

Re:     Discovery Dispute in *Pardi v. Tricida, Inc.*, No. 4:21-cv-76-HSG (N.D. Cal.)

Dear Judge Gilliam,

On April 9, 2024, Lead Plaintiff Jeffrey Fiore served Defendant Gerrit Klaerner with a Second Set of Requests for Production of Documents. Defendant served Responses and Objections on May 9, 2024. The Parties met and conferred over the matter on May 17, 2024 and May 29, 2024, and exchanged letters on June 7, 2024, June 13, 2024 and June 26, 2024. Plaintiff seeks to compel production of documents in response to RFP Nos. 2, 5, 7-12, 15-18, 21, 27-30, and 36-39.

**Plaintiff's Position:**

Defendant seeks to unfairly limit the scope of discovery. His "compromises" are unreasonable, and his position is untenable.

The Court upheld the actionability of two statements made by Klaerner on May 7, 2020. *See* Order re MTD the SAC ("SAC Order"), Dkt. 145, at 25. First, Klaerner "disclos[e]d that Tricida discussed 'outstanding review issues' with the FDA at the May 1, 2020 meeting," but he identified only "one of those issues (the 'magnitude and durability of the treatment effect on the surrogate marker')," and he was therefore "also 'obligated to share the other significant review issue—"applicability of data from TRCA-301 and TRCA-301E trials to the U.S. population." Order re Mot. Clarify, Dkt. 161, at 2. Second, Klaerner said that a previously planned AdCom meeting "was canceled 'due in part to the logistical challenges posed by COVID-19,'" but, as alleged in the SAC, "'the FDA did not cite logistical challenges stemming from COVID-19 as even a contributing factor in cancelling the AdCom meeting in its communications with Tricida.'" Dkt. 145, at 17. Instead, "the AdCom meeting was canceled because of 'the FDA's concerns that there were too many problems with the NDA to even warrant convening an [AdCom].'" *Id.* The SAC "cites documents detailing communications from the FDA to Tricida beginning in January 2020 in which the Agency identified 'significant issues' with the trial and their impact on a potential AdCom meeting." *Id.* Accordingly, the Court held that disclosure "that the FDA referenced its concerns with the NDA, and never referenced the COVID-19 pandemic, in canceling the AdCom meeting—'would have been viewed by the reasonable investor as having significantly altered the total mix of information available.'" *Id.* at 17-18.

In analyzing scienter, the Court connected all the dots: "The SAC alleges that Klaerner was party to extensive communications with the FDA about its concerns and their potential impact on the AdCom meeting, and that the FDA did not at any point cite COVID-19 logistical issues as the reason for canceling the meeting…. And the SAC pleads that Klaerner selectively raised only one of the FDA's concerns in the May 7, 2020 call, but not the others, thereby misleading the market by omission. Under the circumstances, it was obviously relevant whether the meeting was canceled for 'logistical reasons' or substantive ones, and it was also relevant what the full substantive reasons were once Klaerner chose to highlight some of them." *Id.* at 24.

Plaintiff seeks an order compelling Klaerner to produce documents directly related to the allegations in the SAC that the Court relied on in support of its rulings, namely the communications between Tricida and the FDA beginning in January 2020 concerning the FDA's review of the NDA and documents related to those communications. Plaintiff is entitled to discovery into whether the FDA was "concern[ed] that there were too many problems with the NDA to even warrant convening an" an AdCom and the "significant issues" the FDA identified with the NDA. And Plaintiff is entitled to discovery into the FDA's concerns about the "magnitude and durability of the treatment effect"—one of the specific "significant issues." SAC, Dkt. 142, ¶¶72-77. In short, Plaintiff is entitled to discovery to prove the SAC's allegations relevant to the upheld claims.

Defendant, however, claims Plaintiff is not entitled to any such discovery. Instead, he claims Plaintiff is only entitled to "documents related to the reasons the FDA gave for holding or not holding an AdCom, beginning in January 2020." All other discovery, according to Klaerner, is off limits. He also claims that because he disclosed one of the review issues—that Tridica and the FDA discussed the magnitude and durability of the treatment effect—full disclosure was made and no discovery on this issue is allowed.[1] This is disingenuous. The FDA told Tricida, beginning in January 2020, that the magnitude and durability of the treatment effect seen in TRCA-301/301E was unlikely to predict clinical benefit. This was a "significant" review issue and one of the "substantive reasons" for not holding the AdCom. It was also among the review issues discussed on May 1, but Klaerner omitted revealing the FDA's concerns about this to investors.

Indeed, beginning in January 2020, the FDA advised Klaerner and Tricida of the Agency's multiple concerns over the NDA, including that because of those concerns, an AdCom was no longer necessary. *See* SAC, Dkt. 142, ¶¶72-77. Then, in the May 1 late cycle meeting, the FDA reiterated that an AdCom was unnecessary based on the outstanding review issues. *See id.*, ¶159 ("'Given the significant issues' with the TRCA-301 and TRCA-301E trials, it was 'no longer obvious to us that an advisory committee meeting is needed.'"), *see also id.* ¶¶72-77.

Defendant's position on the scope of discovery is untenable. "Relevance for purposes of discovery is broadly defined to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Valentine v. Crocs, Inc.*, 2024 WL 2193321, at *1 (N.D. Cal. May 15, 2024) (quoting *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020)). While Klaerner would like to limit discovery only to whether the FDA tied a review issue to canceling the AdCom, Plaintiff is entitled to discovery into the "significant issues" and concerns the FDA expressed to Tricida and Klaerner, beginning in January 2020, about the NDA which is what led to the FDA not convening an AdCom. After all, a jury would likely find it relevant that for months before the May 1, 2020 meeting, the FDA expressed concerns about the NDA and that those concerns would make an AdCom meeting unnecessary.

Documents related to outstanding review issues thus "bear on" the truthfulness of Klaerner's statements and his state of mind when making his statements on May 7. *Valentine*, 2024 WL 2193321, at *1. Klaerner discussing these outstanding review issues with colleagues or the board of directors is relevant to how he and others at Tricida understood their significance as an obstacle to possible FDA approval and why the FDA was not inclined to hold an AdCom. *Cf. Davis v. Yelp, Inc.*, 2021 WL 4923359, at *11 (N.D. Cal. Sept. 17, 2021) ("[S]everal internal

---

[1] To date, Klaerner has yet to produce a single document in discovery.

communications show Defendants had been consistently concerned with low retention rates of local advertisers since the summer of 2016. By attributing the increase in cancellations from local advertisers in the fourth quarter of 2016 to 'the election' and 'vacation time,' Defendants conveniently avoided telling investors what they told Yelp's board as early as July 2016….."). Plaintiff is entitled to documents related to all outstanding review issues raised by the FDA during the NDA review, not just the one specific review issue concealed from investors. *See* RFP Nos. 2, 11, 12, 15, 16, 17, 18, 21, 27, 28, 29, 36, 37, 38, 39. Documents relating to the FDA's communications with Tricida and Klaerner, relating to the FDA's review of the NDA from January 2020 onward, are relevant and should be produced.

Separately, Defendant maintains that Plaintiff's request for documents regarding his transactions in Tricida securities (including prohibited periods for trading, requested or approved pre-clearance of transactions, and 10b-5(1) plans) are "irrelevant to the allegations that remain in the case" because the Court's FAC and SAC Orders found "Plaintiff failed to adequately allege that the timing of Klaerner's stock sales—all of which were made pursuant to a 10b5-1 plan— were unusual or suspicious." 6/7/24 Hemmendinger Letter, at 3. But whether Plaintiff was able to plead a strong inference of scienter based on Klaerner's trading activity—*without the benefit of any discovery*—does not affect the relevance of his trading activity to the sustained securities fraud claims. If Klaerner will argue that he had no motive to mislead investors, his stock sales are relevant to his motive. "Evidence of insider trading by [Klaerner] may be relevant to the scienter element of the § 10(b) and Rule 10b-5 misrepresentation claims and perhaps for other purposes." *Smilovits v. First Solar, Inc.*, 2019 WL 7282026, at *2 (D. Ariz. Dec. 27, 2019). It is discoverable.[2]

**Defendant's Position:**

    1.  The "AdCom" Statement Does Not Put in Play All Documents About Review Issues.

Plaintiff's case is limited to two statements from Defendant's May 7, 2020 discussion of a May 1, 2020 meeting between Tricida and the FDA:  (1) the reference to one review issue, concerning magnitude and durability of treatment effect, but not a second issue, concerning geographical applicability; and (2) the statement that "the FDA indicated it currently does not plan to hold an AdCom to discuss veverimer due in part to the logistical challenges posed by COVID-19."  Dkt. 93 at 22, 30; Dkt. 145 at 17.  Except for these two statements the Court dismissed Plaintiff's claims.  Documents relevant to the case that survived the motions to dismiss are those that relate to the FDA's statements to Tricida, at the May 1 meeting, about (1) geographic applicability, and (2) the reasons it would not convene an AdCom.

Defendant has agreed to produce these documents and more.  Although the case following the Court's motion to dismiss rulings is limited to Defendant's statements about events

---

[2] The same is true of Plaintiff's request for documents regarding Klaerner's certification of compliance with Tricida's Code of Business Conduct and Ethics any violations of Tricida's recordkeeping and record retention policies, Code of Business Conduct and Ethics, insider trading policy, and communications policy. RFP Nos. 3, 4, 5, 6, 7, 30.

at the May 1 meeting, Defendant agreed to produce documents about the relevant topics (the geographical applicability concern and AdCom scheduling) going back to January 1, 2020. Plaintiff claims that Defendant has taken the position all discovery is "off limits" other than the reasons the FDA gave for holding or not holding an AdCom, but that is untrue.  Defendant also agreed to produce documents about the geographical applicability concern that was the subject of the other surviving challenged statement.  Moreover, Defendant has committed to produce in full documents related to the two topics at issue, which will in many cases also include information about *other* aspects of the FDA's review of the veverimer NDA.[3]

Plaintiff argues that still more is warranted.  He contends that all documents after January 1, 2020 are relevant if they relate to any review issue Tricida and the FDA discussed.  Plaintiff's theory is that Defendant's May 7 statement about AdCom scheduling puts in play everything the FDA said in the prior four months.  That is not consistent with the challenged statements or the Court's orders.  With the exception of the AdCom and review issue statements, the Court dismissed Plaintiff's challenges to Tricida's statements about FDA review.  That ruling forecloses discovery on the subject.  *In re Clorox Co. Sec. Litig*., 238 F. Supp. 2d 1139, 1143 (N.D. Cal. 2002) (plaintiff cannot "obtain discovery on a litany of meritless assertions simply by attaching them to one narrow colorable allegation"), *aff'd,* 353 F.3d 1125 (9th Cir. 2004).  The Court ruled that Plaintiff had adequately alleged that Defendant's statement about the FDA's reasons for not convening an AdCom was false, crediting Plaintiff's allegation that "the FDA never cited COVID-19 logistics as the reason for the cancellation."  Dkt. 145 at 17.  This put in play any "substantive reasons" the FDA provided *for not convening an AdCom*.  *Id.* at 24.  It did not put at issue every document related to NDA review issues as a whole.

Plaintiff argues that he is entitled to discovery into magnitude and durability of treatment effect because it was "among the review issues discussed on May 1, but Klaerner omitted revealing the FDA's concerns about this to investors."  But the theory of fraud that survived dismissal is that Tricida misleadingly failed to disclose the geographical applicability issue, not that it insufficiently disclosed the magnitude and durability issue.  Dkt. 93 at 22.

Plaintiff also claims that the challenged AdCom statement supports discovery into all review issues because the FDA advised beginning in January 2020 "of the Agency's multiple concerns over the NDA, including that because of those concerns, an AdCom was no longer necessary."  This misstates the record.  As Plaintiff knows from the minutes of a January 2020 meeting with the FDA, an AdCom was still on the table at that point, and the FDA told Tricida it would make a decision after reviewing Tricida's mid-cycle responses.  Plaintiff next claims that "in the May 1 late cycle meeting, the FDA reiterated that an AdCom was unnecessary based on the outstanding review issues."  *Supra* at 2 (quoting ¶ 159).  The cited paragraph does not

---

[3] In addition, while Dr. Gerrit Klaerner is the only remaining defendant, and Tricida's estate is controlled by a liquidating trustee, Defendant has agreed to produce documents from other custodians, collected before or in connection with the bankruptcy.  The volume of those documents is substantial.

support that statement, and Plaintiff misses the point in any event.  Defendant has agreed to produce all documents related to the FDA's communications about scheduling an AdCom.

In a similar vein, Plaintiff argues that discussions of all outstanding review issues (and not just the geographical applicability concern) are relevant to Defendant's understanding of "why the FDA was not inclined to hold an AdCom."  This again is overbroad.  The challenged statement puts at issue the question of what FDA said about the AdCom—did the FDA mention logistical challenges related to COVID-19, or did the FDA instead cite "its concerns with the NDA . . . in canceling the AdCom meeting," as Plaintiff alleges?  Dkt. 145 at 18.  The answer to this question depends on what FDA said to Tricida about the reasons that an AdCom was not scheduled.  It does not implicate all discussions about all review issues.  Plaintiff is not entitled to documents untethered to any surviving theory of fraud.

   2.   <u>Trading Information Is Not Relevant to Any Remaining Issue.</u>

Plaintiff seeks information about transactions in Tricida securities by "any Company directors, officers, or employees."  *E.g.*, RFPs 8, 9; RFP 45.  Any requests for trading information for officers and employees other than Defendant are clearly irrelevant.  As to Defendant's trading, the Court has *dismissed* Plaintiff's stock sale allegations, holding that Plaintiff failed to allege that the "timing of Klaerner's stock sales was unusual or suspicious," and declined to revisit that holding.  Dkt. 93 at 25; Dkt. 145 at 19, n.6.  Defendant's trading activity is irrelevant to any issue remaining in the case.

Plaintiff argues that the Court's rejection of his trading allegations "does not affect the relevance of [Defendant's] trading activity to the sustained securities fraud claims."  *Supra* at 3.  This is wrong.  "[R]ulings granting dispositive motions also define, and narrow, the scope of permissible discovery."  *In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*, 2012 WL 4764589, at *7 (D.N.J. Oct. 5, 2012) (R&R); *see also Clorox*, 238 F. Supp. 2d at 1143 ("Plaintiffs earned the right to proceed with discovery on [statements which survived a motion to dismiss], but did not earn the right to proceed on all the other twice-dismissed allegations contained in the [amended complaint]").  The Court held that Plaintiff's stock sale allegations did not pass muster even as a pleading matter.  Plaintiff argues that discovery may redeem his deficient allegations, but that is exactly what the PSLRA does not permit.  *Clorox*, 238 F. Supp. 2d at 1143.

Plaintiff's cited decision is not contrary.  In *First Solar*, the court ruled on a motion *in limine* that evidence of trading might be relevant to scienter, even though plaintiff could not assert an insider trading claim.  *Smilovits v. First Solar, Inc.*, 2019 WL 7282026, at *2, n.3 (D. Ariz. Dec. 27, 2019).  That has no bearing on whether a plaintiff is entitled to discovery on allegations related to stock sales rejected at the pleading stage.[4]

---

[4] Plaintiff claims he is entitled to documents related to compliance with Tricida policies.  As a compromise, Defendant has agreed to produce the policies themselves.  But Plaintiff has not even attempted to explain how certificates of compliance he seeks bear on any remaining issue.

DATED: July 17, 2024

**BLOCK & LEVITON LLP**

    */s/ Jeffrey C. Block*
Jeffrey C. Block (admitted *pro hac vice*)
jeff@blockleviton.com
Michael D. Gaines (admitted *pro hac vice*)
michael@blockleviton.com
BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600

Jacob A. Walker (SBN 271217)
BLOCK & LEVITON LLP
400 Concar Drive
San Mateo, CA 94402
(650) 781-0025
jake@blockleviton.com

*Attorneys for Lead Plaintiff*

**SIDLEY AUSTIN LLP**

    */s/ Sara B. Brody*
Sara B. Brody (SBN 130222)
sbrody@sidley.com
Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: 415 772 1200

Robin Wechkin (admitted *pro hac vice*)
rwechkin@sidley.com
SIDLEY AUSTIN LLP
8426 316th Place Southeast
Issaquah, WA 98027
Telephone: 415 439 1799

*Attorneys for Defendant Gerrit Klaerner*

Pursuant to Civil Local Rule No. 5-1(i)(3), all signatories concur in filing this Joint Letter regarding the parties' discovery dispute.

DATED: July 17, 2024           By: */s/ Jeffrey C. Block*
                                 Jeffrey C. Block (admitted *pro hac vice*)