# Exhibit A
# Plaintiff's Second Set of Requests for Production of Documents

Jeffrey C. Block, *pro hac vice*
Jacob A. Walker (SBN 271217)
Michael D. Gaines, *pro hac vice*
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
T: (617) 398-5600 / F: (617) 507-6020
jeff@blockleviton.com
jake@blockleviton.com
michael@blockleviton.com

*Attorneys for Lead Plaintiff*
*Jeffrey M. Fiore and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| MICHAEL PARDI, *Individually and on Behalf of All Others Similarly Situated*,<br><br>    Plaintiff,<br><br>    v.<br><br>TRICIDA, INC. and GERRIT KLAERNER,<br><br>    Defendants. | Case No.: 21-cv-00076-HSG<br><br>**Lead Plaintiff's Second Set of Requests for Production of Documents to Defendant** |

Propounding Party:         Lead Plaintiff Jeffrey M. Fiore

Responding Parties:         Defendant Gerrit Klaerner

Set Number:                 Two

Pursuant to Fed. R. Civ. P. 26 and 34, Plaintiff Jeffrey M. Fiore hereby requests that Defendant Gerrit Klaerner identify and produce the documents requested below for inspection and copying to the law offices of Block & Leviton LLP, Jacob A. Walker, Block & Leviton LLP, 400 Concar Drive, San Mateo, CA, 94402, or electronically to Block & Leviton, within 30 days of the date of service of these requests.

Defendant Klaerner is required to produce all requested documents that are in his actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of their officers, employees, agents or representatives. Defendant Klaerner shall produce said documents as they are kept in the usual course of business and shall organize and label them to correspond with the categories in the request.

**DEFINITIONS**

Unless stated otherwise, the terms set forth below are defined as follows:

1. "Action" refers to the litigation captioned *Pardi et al. v. Tricida, Inc., et al.*, No. 21-cv-00076-HSG (N.D. Ca.).

2. "ADA" means the FDA's Accelerated Drug Application program.

3. "AdCom Meeting" means an advisory committee meeting held by the FDA to discuss a new drug application.

4. "Board of Directors" means Tricida's Board of Directors and all Board of Director committees and all persons acting or purporting to act on its behalf.

5. "Communication" or "communications" means e-mail, text, message, letter (including attachments) or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

6. "Complaint" means the Second Amended Complaint for Violations of the Federal Securities Laws (ECF No. 115).

7. "Concerning" means relating to, referring to, describing, evidencing or constituting.

8. "CRL" means the Complete Response Letter Tricida received from the FDA on August 21, 2020 regarding the NDA for Veverimer.

9. "Defendant" refers to Gerrit Klaerner.

10. "Document" or "documents" shall have the broadest meaning possible under Fed. R. Civ. P. 34, including all originals and drafts, in any and all languages, of any nature whatsoever, in your possession, custody or control, regardless of where located, and includes, but is not limited to, letters, correspondence, logs, drafts, contracts, prospective contracts, agreements, records, studies, surveys, resolutions, tabulations, notes, summaries, memoranda, Electronically Stored Information ("ESI"), electronic mail ("e-mail"), instant messages, calendar or diary entries, handwritten notes, working papers, worksheets, spreadsheets, diagrams, minutes, agendas, bulletins, periodicals, circulars, advertisements, notices, announcements, invoices, statements, checks (front and back), bank statements, ledgers, orders, vouchers, instructions, drawings, charts, graphs, manuals, brochures, pamphlets, schedules, telegrams, teletypes, photographs, audio tapes, voice-mail messages, videotapes, electronic recordings, facsimile transmissions and information of whatever kind, either stored on computers, including computer disks, hard drives and other media for storage of ESI or information recorded on any medium, and every other written, typed, recorded, transcribed, filed or graphic matter, whether sent, received or neither, and both sides thereof, including non-identical copies and drafts, in the custody, possession or control of the parties responding to this request, their agents, accountants, employees representatives or attorneys, and things similar to any of the foregoing, however denominated by the parties required to produce hereunder.

11. "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," electronic messaging services, electronic forums or discussion services, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks,

code keys, pull down tables, logs, file layouts or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file or file fragment. "Electronic data" also includes, without limitation, any items stored on computer, smartphone or tablet memory or memories, hard drives, zip drives, CD-ROM discs, or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

12.    "Electronically stored information" or "ESI" refers to any original and non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital or other programs, programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull-down tables, logs, file layouts or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file or file fragment. "ESI" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs or containers and labels appended to or associated with any physical storage device associated with each original and each copy. "ESI" also includes, without limitation, any MMS or SMS text messages and any electronic instant messages, including, but not limited to, messages in an internal messaging system or external personal account on desktop, laptop, mobile phone, tablet or other mobile device, concerning the topics in the following requests.

13.    "Employee" refers to any person who at any time acted or purported to act on your or Tricida's behalf or under your or Tricida's supervision, direction or control, including, without

limitation, past and current directors, officers, principals, partners, executives, independent contractors, assigns, businesses or similar persons or entities.

14.   "Entity" or "entities" has the same meaning as person (defined below).

15.   "FDA" means the U.S. Food and Drug Administration and any employee, representative, agent, or advisory committee thereof.

16.   "Identify," with respect to persons, means to give, to the extent known, the person's full name, present or last known address, present or last known e-mail address and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

17.   "Identify," with respect to documents, means to give, to the extent known, the: (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and recipient(s).

18.   "Klaerner" means Defendant Gerrit Klaerner.

19.   "Late cycle meeting" refers to the late cycle meeting held between Tricida, Klaerner, and the FDA on May 1, 2020.

20.   "Meeting" refers to the contemporaneous presence of any natural persons (including by telephone or by any other electronic means) for any purpose, whether such presence was by chance or prearranged, and whether the meeting was formal or informal, or occurred in connection with some other activity.

21.   "NDA" means the New Drug Application submitted to the FDA in August 2019 for Veverimer through the ADA.

22.   "Person" or "persons" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

23.   "SEC" means the U.S. Securities and Exchange Commission.

24.   "Security" or "securities" refers to any note, stock, treasury stock, bond, debenture, certificate or other evidence or indebtedness, certificate of interest or participation in any profit-sharing agreement, any collateral-trust certificate, preorganization certificate or subscription,

transferable share, investment contract, voting-trust certificate, certificate of deposit, or any certificate of interest or participation in, receipt for, or warrant or right to subscribe to or purchase any of the foregoing.

25.    "Tricida" shall mean Tricida, Inc., any of its direct or indirect subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, present and former officers, directors, employees, agents, and all other persons acting or purporting to act on its behalf.

26.    "Veverimer" means TRC101, or "a non-absorbed, orally administered polymer designed to treat metabolic acidosis by binding and removing acid from the gastrointestinal tract."

27.    "TRCA-301" means Tricida's pivotal Phase 3 clinical trial.

28.    "TRCA-301E" means Tricida's 40-week safety extension trial.

29.    "VALOR-CKD" means Tricida's confirmatory postmarketing clinical trial, also known as TRCA-303.

30.    "You" or "your" refers to Klaerner.

**INSTRUCTIONS**

1.    "All," "any" and "each" shall each be construed as encompassing any and all.

2.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.    The singular of any term includes the plural, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

4.    In responding to these requests, you shall produce all responsive documents which are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, executives, officers, partners, managing agents, agents, employees, accountants or any other representative.  A document shall be deemed to be within your control if you have the

ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

5. Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and copying by Lead Plaintiffs' original documents as they are kept in the usual course of business and you shall organize and label them to correspond with the categories in these requests.

6. In responding to these requests, you shall produce all responsive documents available at the time of production and you shall supplement your responses as required by Fed. R. Civ. P. 26(e).

7. If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

8. If you claim any form of privilege or any other objection, whether based on statute, common law or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

    a. the privilege being asserted;

    b. the person on whose behalf the privilege is asserted;

    c. a precise statement of the facts upon which the claim of privilege is based; and

    d. identify the purported privileged document including:

        i. its nature, *e.g.*, letter, memorandum, tape, etc.;

        ii. the date it was prepared;

        iii. the date the document bears;

        iv. the date the document was sent;

        v. the date it was received;

        vi. the name of the person who prepared the document;

vii.   the name(s) of the person(s) who received the document;

viii.   the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

ix.   a statement of whom each identified person represented or purported to represent at all relevant times.

9.      If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

10.      You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 5 and 6 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

**PRODUCTION OF HARD COPY DOCUMENTS**

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN."  The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  If an original document contains color to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  Multi-page OCR text for each document should also be provided.  The OCR software shall maximize text quality over process speed.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**PRODUCTION OF ESI**

1.      *Format*: Electronically stored information ("ESI"), including email, should be produced in searchable electronic format (*i.e.*, single-page TIFF format with corresponding OCR or full extracted text files), with the exception of spreadsheet type files (including Microsoft Excel), PowerPoint documents, source code, and audio and video files, which should be produced

in native format.  Images should be produced in single-page Group IV TIFF files.  TIFFs should show all text and images which would be visible to the reader using the native software that created the document.  If certain documents were originally generated in color, they should be produced in color.  The parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

2.    ***Format – Native Files***: If a document is produced in native, a single-page Bates stamped image slip sheet stating the document has been produced in native format should also be provided.  Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.    ***De-Duplication***: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  An e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in the content in those fields, even if all remaining content in the e-mail is identical.  Removal of near-duplicate documents and e-mail thread suppression is not acceptable.  De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN field should list each custodian, separated by a semi-colon, who was a source of that document.  Should the CUSTODIAN metadata field produced become outdated due to rolling productions, an overlay file providing all the custodians for the affected documents should be produced prior to substantial completion of the document production.

4.    ***Technology Assisted Review***: Predictive coding/technology-assisted-review shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

5.      *Metadata*: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed below.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.

| Field |
|---|
| **BEGBATES**: Beginning Bates number for each document or communication |
| **ENDBATES:** Ending Bates number for each document or communication |
| **BEGATTACH:** Beginning Bates number for each "family" range |
| **ENDATTACH:** Ending Bates number for each "family" range |
| **Custodian:** Individual from whom the document or communication was collected |
| **All Custodian(s):** All custodians who had the document or communication at issue (relevant and necessary if producing party deduplicates between custodians prior to production) |
| **From:** Sender field extracted from an email message |
| **To:** Recipient field extracted from an email message |
| **CC:** CC field extracted from an email message |
| **BCC:** BCC field extracted from an email message |
| **Email Subject:** Subject field extracted from email |
| **Author:** Author field extracted from non-email |
| **ESI Title:** Title field extracted from non-email |
| **ESI Date Received:** Received date of an email message (mm/dd/yyyy 12:00 format) |
| **Date Sent:** Sent date of an email message (mm/dd/yyyy 12:00 format) |
| **Date Created:** Date that non-email ESI was created (mm/dd/yyyy 12:00 format) |
| **Last Modified:** Most recent modification date for non-email |
| **ESI Extracted Text:** File path to Extracted Text/OCR File |
| **File Name:** Original name of the file |
| **File Path:** Original file path and location metadata for the document |
| **Extension:** Original extension of a file (e.g., .xls, .doc, or .pdf.) |
| **Fingerprint:** MD5 or SHA-1 hash value generated by creating a binary stream of the file ProdVolume: Identifies production media deliverable |
| **Confidentiality:** Identifies the confidentiality designation of the file |
| **Redacted:** "Yes," for redacted documents; otherwise, blank |

6.      *Embedded Objects*: The parties should meet and confer over the inclusion or exclusion of embedded files from the production.

7.      *Compressed Files Types*: Compressed file types (*i.e.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

8.      ***Structured Data***: To the extent a response to discovery requires production of electronic information stored in a database, the parties should discuss methods of production best providing all relevant information, including, but not limited to, duplication of databases or limited access for the purpose of generating reports.  Parties shall consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.  A document reference sheet shall be provided to describe the purpose of the database and meaning of all tables and column headers produced.

9.      ***Exception Report***: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type and the file location.

10.      ***Encryption***: To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

11.      ***Redactions***: If documents that the parties have agreed to produce in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

**RELEVANT PERIOD**

Unless otherwise specifically indicated, the requests herein refer to the period from January 1, 2020 and December 31, 2021 (the "Relevant Period") and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period.  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

**DOCUMENT REQUESTS**

REQUEST FOR PRODUCTION NO. 1:

Directories, organizational charts, or other documents sufficient to identify Tricida's organization structure, and its officers, directors and employees during the Relevant Period.

REQUEST FOR PRODUCTION NO. 2:

Calendars, date books, and/or appointment books reflecting Tricida-related activities maintained by or for Klaerner, his administrative assistant, and each former Tricida employee identified in either of the parties' Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 3:

The version(s) of Tricida's accurate recordkeeping and/or corporate records retention policies that were in effect during the period January 1, 2020 to the present and all documents regarding any potential or actual violation of those policies.

REQUEST FOR PRODUCTION NO. 4:

The version(s) of Tricida's Code of Business Conduct and Ethics, or any similar policy, that was in effect during the Relevant Period and all documents regarding any potential or actual violations thereof.

REQUEST FOR PRODUCTION NO. 5:

The certifications of compliance with Tricida's Code of Business Conduct and Ethics, or any similar policy, by or on behalf of Klaerner and any persons identified in the parties' Rule 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 6:

The version(s) of Tricida's insider trading and foreign corrupt practices policies that were in effect during the Relevant Period and all documents regarding any potential or actual violation of these policies.

REQUEST FOR PRODUCTION NO. 7:

The version(s) of Tricida's policies regarding securities trades by Tricida directors, officers, or employees that were in effect during the Relevant Period and all documents regarding any potential or actual violation of these policies.

REQUEST FOR PRODUCTION NO. 8:

All documents concerning prohibited periods for trading in Tricida's securities by any Company directors, officers or employees, including all emails regarding the commencement or conclusion of any such period.

REQUEST FOR PRODUCTION NO. 9:

All documents concerning any requested or approved pre-clearance of any transaction in Tricida securities by any Company directors, officers, or employees.

REQUEST FOR PRODUCTION NO. 10:

Transfer records or other documents identifying ownership of Tricida common stock.

REQUEST FOR PRODUCTION NO. 11:

All documents concerning any Board of Directors meeting (whether formal or informal and including committee meetings of the Board of Directors), including board packages, financial closing packages, meeting minutes, exhibits, agendas, memoranda and resolutions, whether adopted or discussed concerning Tricida's interactions with the FDA and/or the late cycle meeting.

REQUEST FOR PRODUCTION NO. 12:

All documents sent to or received from any of Tricida's directors regarding Tricida's budget or finances, Tricida's stock price, Tricida's investors, TRCA-301, TRCA-301E, VALOR-CKD, the FDA approval process for Veverimer, or the CRL.

REQUEST FOR PRODUCTION NO. 13:

Documents sufficient to identify all personal and business phone numbers (including all cell phones), email addresses, Twitter accounts, Slack accounts, or accounts on other electronic messaging services (including but not limited to Signal, Telegram, WeChat, iMessage, and Duo) for Klaerner, his administrative assistant, and each former Tricida employee identified in either of the parties' Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 14:

All documents regarding any internet postings by or on behalf of Klaerner or Tricida concerning Veverimer, TRCA-301, TRCA-301E, or VALOR-CKD, including documents sufficient to identify any aliases or screen names used by or on behalf of Klaerner.

REQUEST FOR PRODUCTION NO. 15:

All documents and communications concerning the FDA regulatory process for approval of Veverimer, including related meetings and interim interactions with the FDA.

REQUEST FOR PRODUCTION NO. 16:

All documents you sent to or received from the FDA concerning Veverimer.

REQUEST FOR PRODUCTION NO. 17:

All communications to, from, by, or involving Klaerner, or any former employee identified in either of the parties' Fed. R. Civ. P. 26(a)(1) disclosures, concerning Veverimer's prospects for FDA approval.

REQUEST FOR PRODUCTION NO. 18:

All documents and communications concerning the design and completion of TRCA-301 and TRCA-301E, including their associated risks.

REQUEST FOR PRODUCTION NO. 19:

The documents concerning the late cycle meeting, including any feedback you received from the FDA in connection with the late cycle meeting.

REQUEST FOR PRODUCTION NO. 20:

All minutes, transcriptions, scriveners' notes, memoranda, or other records of the late cycle meeting, whether prepared by you, the FDA, or anyone else.

REQUEST FOR PRODUCTION NO. 21:

All documents and communications regarding the FDA's comments about the trial data supporting TRCA-301 and TRCA-301E, including any comments expressed by the FDA at the late cycle meeting.

REQUEST FOR PRODUCTION NO. 22:

All documents regarding the FDA's comments expressed in connection with the late cycle meeting about the applicability of Tricida's foreign clinical data from TRCA-301 and TRCA-301E to the United States population, and the magnitude of the treatment effect on blood bicarbonate in TRCA-301 and the ability of TRCA-303 to confirm a treatment benefit.

REQUEST FOR PRODUCTION NO. 23:

All documents regarding whether the FDA would hold an AdCom meeting to discuss Veverimer.

REQUEST FOR PRODUCTION NO. 24:

All documents concerning Tricida's public statements made on May 7, 2020 about the late cycle meeting and related feedback from the FDA, including but not limited to drafts and discussions about the statements, before or after they were made.

REQUEST FOR PRODUCTION NO. 25:

All documents concerning Tricida's public statements made on August 6, 2020 about the late cycle meeting and related feedback from the FDA, including but not limited to drafts and discussions about the statements, before or after they were made.

REQUEST FOR PRODUCTION NO. 26:

All documents and communications concerning issues or deficiencies in the NDA for Veverimer raised by the FDA, including the FDA's notification to Tricida on July 14, 2020 that it had identified deficiencies precluding discussion of labeling and postmarketing requirements/commitments at that time.

REQUEST FOR PRODUCTION NO. 27:

All documents and communications concerning the FDA's determination to seek additional data beyond TRCA-301 and TRCA-301E, including additional data regarding the magnitude and durability of the treatment effect of Veverimer on the surrogate marker of serum bicarbonate and the applicability of the treatment effect to the U.S. population.

REQUEST FOR PRODUCTION NO. 28:

All documents and communications concerning the CRL, including any communications with the FDA regarding the CRL and subsequent End-of-Review Type A Conference held on October 20, 2020 with the FDA's Division of Cardiology and Nephrology.

REQUEST FOR PRODUCTION NO. 29:

All documents and communications concerning Tricida's appeal of the FDA's rejection of the NDA for Veverimer, including the Appeal Denied Letter from the FDA's Office of New Drugs in response to Tricida's Formal Dispute Resolution Request submitted in December 2020.

REQUEST FOR PRODUCTION NO. 30:

The version(s) of any of Tricida's external corporate communications policies in effect during the Relevant Period and all documents regarding any request for or approval of any Company personnel to speak on behalf of Tricida or any violation of these policies.

REQUEST FOR PRODUCTION NO. 31:

All documents regarding any selective disclosure of any information regarding Veverimer, the FDA regulatory process, or Klaerner's interactions with the FDA, including any confidentiality or non-disclosure agreement executed in connection with any such selective disclosure.

REQUEST FOR PRODUCTION NO. 32:

All documents concerning the retention, engagement, and/or consultation with any public/investor relations, disclosure, and/or legal advisors in connection with Tricida's public disclosures during the Relevant Period, including communications with or documents sent to or received from any such consultant or advisor.

REQUEST FOR PRODUCTION NO. 33:

Draft and final versions of all filings made by or on behalf of Tricida with the SEC.

REQUEST FOR PRODUCTION NO. 34:

Draft and final versions of all press releases issued by or on behalf of Tricida.

REQUEST FOR PRODUCTION NO. 35:

Draft and final versions of all public conference call scripts or presentations made by or on behalf of Tricida, including any draft questions and answers.

REQUEST FOR PRODUCTION NO. 36:

All documents regarding Klaerner's consideration of whether and/or when Tricida should disclose to investors any information about Tricida's interactions with the FDA concerning Veverimer.

REQUEST FOR PRODUCTION NO. 37:

All documents concerning any communications, conference calls, presentations or meetings with any securities analysts, financial analysts, individual or institutional investors, financial publications, news reporters, journalists, or investment bankers concerning Veverimer.

REQUEST FOR PRODUCTION NO. 38:

All documents regarding any coverage of Veverimer by securities analysts or the news media, including any draft or final reports or articles sent to or received by Klaerner.

REQUEST FOR PRODUCTION NO. 39:

All communications with, and documents sent to or received from, any analyst or analyst firm concerning Veverimer.

REQUEST FOR PRODUCTION NO. 40:

All documents regarding Tricida's share price, market capitalization, volume of shares traded, and/or the value of options or any other Tricida security, including documents regarding any price movements in Tricida common stock.

REQUEST FOR PRODUCTION NO. 41:

All documents regarding the possible or actual factors or reasons that led to any change in the price of Tricida common stock at any time.

REQUEST FOR PRODUCTION NO. 42:

Documents sufficient to identify Tricida's monthly and quarterly burn rate during the Relevant Period.

REQUEST FOR PRODUCTION NO. 43:

All documents concerning Klaerner's compensation from Tricida, including all documents related to:

(a)    any severance package, termination agreement, or parachute payments;

(b)    payments made pursuant to §280G of the Internal Revenue Code, 26 U.S.C. §280G;

(c)    all bonuses and/or other compensation policies, terms, and agreements;

(d)    any performance reviews;

(e)    the benchmarking of salaries against peer groups; and

(f)    all payments, loans, or taxable benefits received from Tricida.

REQUEST FOR PRODUCTION NO. 44:

Documents sufficient to identify the date, source, and cost basis of any Tricida securities, including common stock shares and options, owned by Klaerner at any time during the period January 1, 2018 to the present.

REQUEST FOR PRODUCTION NO. 45:

All documents concerning any Rule 10b5-1 trading plan by or on behalf of Klaerner or any Tricida officers or employees identified in the parties' Rule 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 46:

All documents concerning Klaerner's holdings and transactions in Tricida stock for or during the period January 1, 2018 to present, including all documents related to:

(a)     Tricida securities held;

(b)     transactions in Tricida securities, including purchases, sales, donations or use of Tricida securities as collateral; and

(c)     any loans of Tricida stock or options, including, but not limited to, any prepaid variable forward contract or sale lending agreement.

REQUEST FOR PRODUCTION NO. 47:

All documents concerning communications with, requests by, or actions of any governmental or regulatory agency, including but not limited to the SEC, the Financial Industry Regulatory Authority, and the NASDAQ, concerning Tricida or Klaerner's public statements related to Tricida or transactions in Tricida securities.

REQUEST FOR PRODUCTION NO. 48:

All documents concerning any policy, procedure, or practice concerning the preservation or destruction of the documents or types of documents sought herein.

REQUEST FOR PRODUCTION NO. 49:

All liability insurance policies carried by Klaerner.

REQUEST FOR PRODUCTION NO. 50:

All documents regarding any indemnification agreements between Tricida and Klaerner, including agreements to assume liability, any insurer for Klaerner or any other entities that may be financially affected by the claims in this Action.

REQUEST FOR PRODUCTION NO. 51:

All documents identified in your Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 52:

All documents supporting or relating to any of Defendant's affirmative and other defenses set forth in Defendant's Answers.

April 9, 2024

/s/ Jacob A. Walker
Jacob A. Walker *(*CA Bar. No. 271217)
Jeffrey C. Block (*pro hac vice*)
Michael D. Gaines (*pro hac vice*)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
T: 617) 398-5600
F: (617) 507-6020
jake@blockleviton.com
jeff@blockleviton.com
michael@blockleviton.com

*Lead Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I, Sarah Delaney, declare: I am employed in Boston, Massachusetts.  I am over the age of 18 years and not a party to the above-captioned action.  My business address is 260 Franklin Street, Suite 1860, Boston, MA 02110.  On April 9, 2024, I served the above document via email on:

**SIDLEY AUSTIN LLP**
Sara B. Brody (SBN 130222)
sbrody@sidley.com
Sarah A. Hemmendigner (SBN 298659)
shemmendinger@sidley.com
Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1279
Facsimile: +1 415 772 7400

Matthew J. Dolan (SBN 291150)
mdolan@sidley.com
1001 Page Mill Road, Building 1
Palo Alto, CA 94304
Telephone: +1 650 565 7106
Facsimile: +1 650 565 7100

Robin E. Wechkin (*pro hac vice*)
rwechkin@sidley.com
8426 316th Place Southeast
Issaquah, WA 98027
Telephone: +1 415 439 1799

*Counsel for Defendant Gerrit Klaerner*