Jeffrey C. Block, *pro hac vice*
Michael D. Gaines, *pro hac vice*
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
michael@blockleviton.com

Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
400 Concar Drive
San Mateo, CA 94402
(650) 781-0025 phone
jake@blockleviton.com

*Attorneys for Lead Plaintiff Jeffrey M. Fiore and the Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| MICHAEL PARDI, *Individually and on Behalf of All Others Similarly Situated,*<br><br>    Plaintiff,<br><br>v.<br><br>TRICIDA, INC. and GERRITT KLAERNER,<br><br>    Defendants. | Case No. 4:21-cv-00076-HSG<br><br>**REPLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO CERTIFY CLASS, APPOINT CLASS REPRESENTATIVE, AND APPOINT CLASS COUNSEL**<br><br>**Class Action**<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>Date: September 12, 2024<br>Time: 2:00 p.m.<br>Courtroom 2, 4th floor |

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  DEFENDANT FAILS TO PROVE AN ABSENCE OF PRICE IMPACT .......................... 2

    A.  Klaerner Misrepresented and Omitted to Reveal The "Substantive Concerns" the FDA Raised at the May 1, 2020 Meeting and Why the AdCom was Canceled .................................. 4

    B.  The July 15 and August 6 Disclosures Did Not Convey The Full Truth ........................... 5

    C.  Defendant's Premature Truth-on-the-Market Argument Fails .......................................... 7

    D.  The Disclosures After August 6, 2020 Conveyed New Information That Corrected Klaerner's Misleading Statements and Material Omissions ......................................................... 8

    E.  Defendant's "Price Impact" Argument is Merely a Premature Loss Causation Argument 10

    F.  Even If Considered, Defendant's Loss Causation Arguments Fail ................................... 10

III.  PLAINTIFF IS A TYPICAL CLASS REPRESENTATIVE ......................................... 14

IV.  PLAINTIFF MAY INVOKE THE AFFILIATED UTE PRESUMPTION OF RELIANCE 15

V.  CONCLUSION ................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972)........................................ 15

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) .................................... 7

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988)........................................................................... 3

*Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999) ..................................................................... 15

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485 (D. Conn. Apr. 13, 2023)........ 2, 3, 10

*Buttonwood Tree Value Partners, LP v. Sweeney*, 2013 WL 12125980 (C.D. Cal. Sept. 12, 2013) ................................................................................................................................... 14

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2024 WL 1060079 (S.D. Cal. Mar. 11, 2024).................................................................................................................. 11

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543 (N.D. Cal. Oct. 11, 2018) ...................................................................................................... 1

*Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995) ...................................................................... 1

*Erica P. John Fund, Inc. v. Halliburton Co.* (*Hallburton I*), 563 U.S. 804 (2011) ........................ 2

*Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364 (D. Nev. Mar. 1, 2023) .................................... 11

*Goldman Sachs Grp., Inc. v. Ark. Tchr's Ret. Sys.*, 594 U.S. 113 (2021) ...................... 1, 3, 10, 11

*Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*), 573 U.S. 258 (2014) ................. 2, 3

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)...................................................... 15

*Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)....... 10

*Homyk v. ChemoCentryx, Inc.*, 2024 WL 1141699 (N.D. Cal. Mar. 6, 2024), *leave to appeal denied*, 2024 WL 2745788 (9th Cir. May 23, 2024) ...................................................... 2, 3, 10

*In re Alphabet Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021) .................................................................. 13

*In re Apache Corp. Sec. Litig.*, 2024 WL 532315 (S.D. Tex. Feb. 9, 2024) ................................. 3

*In re Apple, Inc. Sec. Litig.*, 2022 WL 354785 (N.D. Cal. Feb. 4, 2022) ............................... 10, 12

*In re BofI Hldg., Inc. Sec. Litig.*, 977 F.3d 781 (9th Cir. 2020)................................................... 12

*In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572 (N.D. Cal. 2009)........................................... 14

*In re Facebook Inc. Sec. Litig.,* 87 F.4th 934 (9th Cir. 2023).................................................... 13

*In re FibroGen Sec. Litig.*, 2024 WL 1064665 (N.D. Cal. Mar. 11, 2024) .................................... 2

*In re Heritage Bond Litig.*, 2004 WL 1638201 (C.D. Cal. July 12, 2004) .............................. 2, 14

*In re LDK Solar Sec. Litig.*, 255 F.R.D. 519 (N.D. Cal. 2009)........................................................ 7

*In re Mattel, Inc. Sec. Litig.*, 2021 WL 4704578 (C.D. Cal. Oct. 6, 2021) ............................. 4, 10

*In re Montage Tech. Grp. Ltd. Sec. Litig.*, 2016 WL 1598666 (N.D. Cal. Apr. 21, 2016) .......... 15

*In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996 (S.D. Cal. 2011).................................... 11

*In re Qualcomm Inc. Sec. Litig.*, 2023 WL 2583306 (S.D. Cal. Mar. 20, 2023)............................ 3

*In re Robinhood Ord. Flow Litig.*, 2022 WL 9765563 (N.D. Cal. Oct. 13, 2022) ...................... 15

*In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209 (C.D. Cal. 2019) ........................................................ 8

*Karinski v. Stamps.com, Inc.*, 2020 WL 6572660 (C.D. Cal. Nov. 9, 2020)............................. 4, 7

*Malriat v. QuantumScape Corp.*, 2022 WL 17974629 (N.D. Cal. Dec. 19, 2022) ...................... 14

*Monroe Cty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370 (N.D. Ga. 2019) .................................... 3

*Nostrum Pharm., LLC v United States Food and Drug Admin.*, 35 F.4th 820 (D.C. Cir. 2022).... 6

*Sayce v. Forescout Techs., Inc.*, 2024 WL 2750003 (N.D. Cal. May 28, 2024) .......................... 10

*SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276 (N.D. Cal. May 8, 2020).................. 8, 15

*Weston v. DocuSign, Inc.*, 2024 WL 2925979 (N.D. Cal. June 10, 2024)...................... 2, 7, 14, 15

## I.   INTRODUCTION

Plaintiff has carried his burden to meet the requirements of Rule 23(a) and (b)(3). He has established that Tricida common stock traded in an efficient market so the class may invoke the presumption of reliance under the fraud-on-the market theory. Like almost all securities fraud class actions, this case is ideally suited for class certification and "fit[s] Rule 23 'like a glove.'" *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018) (citing *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995)).

Defendant does not dispute the Rule 23(a) factors (with the misplaced exception of typicality) are met or that plaintiff has established that Tricida common stock traded in an efficient market during the Class Period. Instead, he argues that he has proven that there was no impact to Tricida's stock price after July 15, 2020—an argument that fundamentally misunderstands the function of proving a statement had no price impact and burden to do so. He mistakenly claims that the July 15, 2020 announcement—that Tricida received a letter from the FDA stating the Agency "identified deficiencies that preclude discussion of labeling and postmarketing requirements/commitments at this time"—and the contents of its Second Quarter 2020 Form 10-Q, filed with the SEC on August 6, 2020 (the "Q2 10-Q"), communicated to the market the full and complete truth of the FDA's substantive concerns about Tricida's NDA, so there was no "price impact" from each of the subsequent statistically significant price drops.

Not so. Defendant has failed to carry his burden of persuasion, *Goldman Sachs Grp., Inc. v. Ark. Tchr's Ret. Sys.*, 594 U.S. 113 (2021), to prove his May 7, 2020 statements did not impact the price of Tricida stock. Indeed, Defendant concedes that the price drop following the July 15, 2020 disclosure is "back-end" evidence of his misstatements' price impact, *id.* at 123; Dkt. 162 ("Opp."), at 2, 16, so this should end the analysis. The relevant "inquiry is whether Defendants have proven a complete lack of price impact during the Class Period, not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage." *Homyk v. ChemoCentryx, Inc.*, 2024 WL 1141699, at *4 (N.D. Cal. Mar. 6, 2024), *leave to appeal denied*, 2024 WL 2745788 (9th

Cir. May 23, 2024). By conceding price impact with respect to "at least some of the alleged corrective disclosures," *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at \*12 (D. Conn. Apr. 13, 2023), Defendant has conceded that his "alleged misrepresentations affected the market price in the first place," *Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*), 573 U.S. 258, 278 (2014), so the class should be certified.

Plus, Defendant's argument that the full truth was revealed by August 6, 2020, is a highly fact intensive, premature truth-on-the-market defense that is inappropriate to resolve on a motion for class certification. His assertion that each of the post-August 6 stock drops were the result of a materialization of a known risk is a premature a loss causation argument similarly reserved for the merits. *In re FibroGen Sec. Litig.*, 2024 WL 1064665, at \*16 (N.D. Cal. Mar. 11, 2024) ("[M]aterialization of the risk is … a form of loss causation.").

Finally, Defendant's claim that Plaintiff is atypical is misplaced. That Plaintiff made stock purchases on the same date of a partial disclosure, July 16, 2020, is irrelevant to his typicality because "the weight of authority favors the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement." *Weston v. DocuSign, Inc.*, 2024 WL 2925979, at \*7 (N.D. Cal. June 10, 2024). Defendant has provided no evidence to suggest that Plaintiff's and the Class's claims do not "involve the same conduct by the defendant," which is all that is required to establish typicality. *In re Heritage Bond Litig.*, 2004 WL 1638201, at \*7 (C.D. Cal. July 12, 2004). Indeed, many Class members purchased stock after July 15, 2020, and they will be in the same position as Fiore. This is a question common to the class.

## II.   DEFENDANT FAILS TO PROVE AN ABSENCE OF PRICE IMPACT

"The 'fundamental premise' underlying the [*Basic*] presumption [of reliance] is 'that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction.'" *Halliburton II*, 573 U.S. at 278 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.* (*Hallburton I*), 563 U.S. 804, 813 (2011)). But if the alleged misrepresentations did not "affect[] the market price in the first place, … *Basic*'s fraud-on-the-market theory and presumption of reliance collapse." *Id.* "The defendant bears the burden of persuasion to prove a

lack of price impact," and a defendant's "mere production of *some* evidence relevant to price impact will rarely accomplish this feat." *Goldman*, 594 U.S. at 126 (emphasis in original). Indeed, this is a heavy burden: Defendant must offer proof that completely "severs the link between the alleged misrepresentation and … the price received (or paid) by the plaintiff." *Basic, Inc. v. Levinson*, 485 U.S. 224, 248 (1988). Defendant has failed to do so here.

Because Defendant concedes the stock drop following Tricida's July 15, 2020 announcement is "back-end" evidence of "inflation maintained by [his] earlier misrepresentation[s]," *Goldman*, 594 U.S. at 123; *see* Opp. at 2, 16, he cannot prove that his May 7, 2020 misstatements did not "affect[] the market price in the first place." *Halliburton II*, 573 U.S. at 278. "This concession dooms Defendants' attempt to rebut the presumption of reliance." *Alexion Pharms.*, 2023 WL 2932485, at *12 (citing *Monroe Cty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019)). Once Defendant concedes his May 7 statements impacted Tricida's stock price, "[t]he fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place." *Halliburton I*, 563 U.S. at 813. Indeed, the relevant "inquiry is *whether Defendants have proven a complete lack of price impact during the Class Period*, not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage." *ChemoCentryx*, 2024 WL 1141699, at *4 (emphasis added). By conceding price impact with respect to "at least some of the alleged corrective disclosures," *Alexion Pharms.*, 2023 WL 2932485, at *12, he has conceded the price impact of his May 7 statements. He cannot rebut the class-wide presumption of reliance.[1]

---

[1] Defendant misplaces his reliance on *In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *7 (S.D. Tex. Feb. 9, 2024) and *In re Qualcomm Inc. Sec. Litig.*, 2023 WL 2583306, at *11-14 (S.D. Cal. Mar. 20, 2023). In both of those cases, the defendants proved that alleged false *statements* did not impact stock price **at all** by showing that *none of the alleged disclosures correcting those statements* showed back-end price impact. By contrast, Klaerner has not even attempted to prove that his May 7, 2020 misstatements did not impact Tricida's stock price. *Goldman*, 594 U.S. at 122 n.2.

What is more, Courts find "ample evidence" of price impact where, as here, Plaintiff's expert "conducted a robust event study and determined that there were statistically significant share price declines following the alleged corrective disclosures." *Karinski v. Stamps.com, Inc.*, 2020 WL 6572660, at *6 (C.D. Cal. Nov. 9, 2020); *see also In re Mattel, Inc. Sec. Litig.*, 2021 WL 4704578, at *5 (C.D. Cal. Oct. 6, 2021) ("[A] statistically significant price adjustment following a corrective disclosure is evidence that the original misrepresentation did, in fact, affect the stock price."). Defendant's expert agrees: "my ultimate determination regarding statistical significance is the same as Mr. Coffman's." Dkt. 163-1, ¶40 n. 62. Mr. Coffman found statistically significant price drops on August 24, 2020, October 29, 2020, December 8, 2020, and February 25, 2021, and finds that new information entered the market on each of these corrective disclosure days, which provides additional evidence of back-end price impact for Defendant's May 7, 2020 misstatements and omissions. Coffman Rebuttal Rpt., Ex. A to Declaration of Jeffrey C. Block ("Block Decl.").

### A. Klaerner Misrepresented and Omitted to Reveal The "Substantive Concerns" the FDA Raised at the May 1, 2020 Meeting and Why the AdCom was Canceled

Defendant mistakenly argues that "[p]laintiff's fraud claim is that Klaerner misled investors by revealing only one of the two review issues discussed at the May 1 meeting." Opp. at 18. From this, he claims, there is no price impact after July 15, 2020. This cuts Plaintiff's case too narrow. In denying Klaerner's motion to dismiss the First Amended Complaint, this Court noted that "once defendants choose to tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive." FAC Order at 23. Here, Klaerner touted the positive—Tricida's rationale as to why the NDA should be approved, without revealing the adverse—the FDA's substantive concerns that (1) the demonstrated magnitude and durability of the treatment effect on the surrogate marker serum bicarbonate was too small to predict clinical benefit, and (2) the data from TRCA-301/301E was unreliable and inapplicable to U.S. patients and medical practice because (a) most of the patients and positive results came from a single trial site in Bulgaria, (b) most of the enrolled subjects were from Eastern Europe, and (c) many subjects appeared to be suffering

from Balkan Endemic Nephropathy ("BEN") instead of Chronic Kidney Disease ("CKD"). The FDA raised these significant issues with Tricida and Klaerner repeatedly since January 2020, and raised them again, in more detail, during the May 1, 2020 late cycle meeting.

In denying the motion to dismiss the Second Amended Complaint, this Court held,

> Fiore plausibly pleads that Klaerner misled investors as to the true reasons, even 'in part,' for why the AdCom meeting was canceled, "affirmatively creat[ing] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Brody*, 280 F.3d at 1006 (citation omitted). Thus, "there is a substantial likelihood that the disclosure of the [allegedly] omitted fact"—namely, that the FDA referenced its concerns with the NDA and never referenced the COVID-19 pandemic as a reason for canceling the AdCom meeting—"would have been viewed by the reasonable investor as having significantly altered the total mix of information available."

SAC Order at 18-19. Indeed, the Court explained it was "obviously relevant whether the meeting was canceled for 'logistical reasons' or substantive ones, and it was also relevant what the full substantive reasons were once Klaerner chose to highlight some of them." *Id.* at 24. Furthermore, said the Court, "It is plausible that a seasoned pharmaceutical executive like Klaerner would be aware that the FDA's reasons for canceling a critical meeting would be highly significant to investors." *Id.* The aforementioned substantive concerns raised by the FDA beginning in January 2020 and specifically reiterated during the May 1 late-cycle meeting were among the reasons why the FDA said an AdCom was "no longer necessary."

**B.      The July 15 and August 6 Disclosures Did Not Convey The Full Truth**

On July 15, 2020, Tricida disclosed that it received a letter from the FDA in which it "identified deficiencies that preclude discussion of labeling and postmarketing requirements/commitments at this time." Tricida specifically stated that *the FDA's "notification does not specify the deficiencies identified by the FDA."* (emphasis added). The July 15, 2020 disclosure could not have revealed the substantive review issues identified by the FDA as Tricida expressly stated the letter did not identify any of the deficiencies raised by the FDA and Tricida revealed no deficiencies.

In fact, Tricida's Q2 10-Q revealed, in referencing the July 15 letter, that Tricida could not "be certain what the identified deficiencies are or whether the deficiencies relate to the substantive

review issues raised by the FDA *in connection with the late cycle meeting."* (emphasis added). The Q2 10-Q confirms that the July 15, 2020 disclosure could not have fully informed the market of the substantive issues discussed at the late cycle meeting or why the AdCom was canceled.

The Q2 10-Q did reference that Tricida and the FDA discussed two review topics, the magnitude and durability of the treatment effect and the applicability of the data to the U.S. population, but Tricida only disclosed that it provided its "rationale for why we believe our data addressed the substantive review issues" but did not reveal the FDA's position—*i.e.*, its substantive concerns—which were raised both before and at the meeting and which were why the AdCom was canceled. Tricida also revealed in. the Q2 10-Q:

> While we plan to work with the FDA to resolve the deficiencies referenced in the July 14, 2020 letter, **we require additional information from the FDA** before we can evaluate whether and how we will be able to address those deficiencies. We believe we are likely to receive that clarification in the form of a Complete Response Letter, or CRL[2]. Consequently, at this time we do not believe we will receive approval *to market veverimer* in the United States **by our PDUFA goal date** of August 22, 2020, if at all.

(emphasis added). Tricida clearly informed investors that it needed "additional information from the FDA" to understand the deficiencies. If Tricida did not understand the deficiencies as of August 6, it could not have fully communicated them to investors that day. And, Tricida said it expected the CRL to provide the necessary "clarification," which Tricida received on August 24, 2020.

Finally, the Q2 10-Q did not, as Klaerner repeatedly argues, disclose that "Tricida expected the FDA to reject its NDA." Opp. at 17. Tricida disclosed it did not expect to receive in a timely manner "approval to market vevirmer." Tricida, however, made its expectations about the NDA clear, informing its investors that it continued "to plan for the commercial launch of veverimer upon approval" as it "hired approximately 40 specialty account managers in key territories, which we believe will allow us to reach, either in person or remotely, 70% to 80% of the 5,000 highest-prescribing nephrologists in the United States." Q2 10-Q, Dkt. 163-9, at 7 (ECF pagination).

---

[2] A CRL from the FDA means that "an application has a defect that could possibly cause the agency to reject the application." The CRL "will describe all of the specific deficiencies and "when possible" will "recommend actions that the applicant might take to place the application in condition for approval." *Nostrum Pharm., LLC v United States Food and Drug Admin.*, 35 F.4th 820, 822 (D.C. Cir. 2022). A CRL does not necessarily mean that an NDA will be rejected.

Telling investors that Tricida was still planning for commercial launch and hiring additional account managers to sell the drug is entirely inconsistent with the claim that Tricida fully disclosed it expected the NDA to be rejected; it conveyed that the CRL would merely delay approval.

### C.      Defendant's Premature Truth-on-the-Market Argument Fails

Defendant's argument that the disclosures after August 6 "did not convey new information" is "a truth-on-the-market defense" that "is not properly considered at the class certification stage because materiality is assumed." *Stamps.com,* 2020 WL 6572660, at *7 (rejecting truth-on-the-market class certification challenge that did not "unequivocally disclose[] the alleged prior misrepresentation"); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 481-82 (2013) (whether "news of the truth credibly entered the market and dissipated the effects of prior misstatements" presents common questions and thus is "a matter for trial."). At trial, Defendant faces a "heavy burden" of proof on this argument. *Provenz v. Miller,* 102 F.3d 1478, 1492-93 (9th Cir. 1996). Even if the Court considers this premature argument, Defendant has failed to meet his "heavy burden of proof" to show that the truth was fully disclosed by August 6, 2020. *Provenz*, 102 F.3d at 1493. The Q2 10-Q cannot be corrective because it did not reveal any of the FDA's concerns, which Klaerner knew, and which were the subject of his misrepresentations and omissions. *See Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *12 (C.D. Cal. July 17, 2024) ("Defendants overstate what an investor could have gleaned from this disclosure.").

"Whether a disclosure 'actually cured a prior misrepresentation' should not be decided at class certification unless there is 'no substantial doubt' as to the disclosure's curative effect." *DocuSign*, 2024 WL 2925979, at *12 (citing *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 529 (N.D. Cal. 2009)).  The court in *DocuSign* declined to adopt a similar argument to "limit the class period" based on an argument that the first disclosure "fully revealed the fraud." *Id.* The same reasoning applies here: "any inquiry as to precisely when the truth was fully disclosed to the market is best reserved for resolution on the merits" and "should not result in the Court's narrowing of the class period at class certification unless the defendant 'unequivocally' disclosed the alleged prior

representation." *Id.*[3] As in *DocuSign*, the possibility that "the first disclosure only partially revealed the fraud or there is a factual dispute about the extent to which the first disclosure revealed the fraud" creates an issue that should be "resolved on the merits." *Id.*

**D.      The Disclosures After August 6, 2020 Conveyed New Information That Corrected Klaerner's Misleading Statements and Material Omissions**

Each of the disclosures after August 6, 2020 revealed new, corrective information to the market, further evidencing the price impact of Defendant's May 7 misstatements:

**August 24, 2020.** For the first time Tricida revealed "the FDA is seeking additional data beyond the TRCA-301 and TRCA-301E trials regarding the magnitude and durability of the treatment effect of veverimer on the surrogate marker of serum bicarbonate and the applicability of the treatment effect to the U.S. population. FDA also expressed concern as to whether the demonstrated effect size would be reasonably likely to predict clinical benefit." This was discussed at and before the late-cycle meeting and was new information conveyed to the market. *See* Coffman Rebuttal Rpt. ¶¶18-19. Tricida's stock fell in a statistically significant manner, 24%.[4]

The August 24, 2020 disclosure, however, still did not fully reveal the FDA's concerns about the "reliability of the data" which was discussed prior to and during the May 1 late cycle meeting, was among the reasons why the AdCom was canceled, and was cited in the CRL, itself: "Given that there is only a single study (with an extension) and given that the findings in Study TRCA-301 (and its extension trial) were driven by a single site, *we have concern about the reliability of the findings.*" CRL at , Ex. B to Block Decl. (emphasis added). Plus, the CRL informed Tricida that "for this application to be approved, you will need to conduct at least one additional adequate and well-controlled study demonstrating the efficacy of veverimer for the treatment of metabolic acidosis associated with CKD." *Id.* Tricida, however, informed investors

---

[3] *See also In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 225 (C.D. Cal. 2019) (refusing to shorten class period to end on date that lawsuit was revealed because, after that date, it was alleged that defendant "continued to make misrepresentations regarding the lawsuit"); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 287 (N.D. Cal. May 8, 2020) (rejecting the defendants' argument that loss causation issues should be decided at the class certification stage)).

[4] Defendant argues that this was merely the materialization of a known risk, which is a loss causation argument.

that "the company may or may not have to conduct an additional clinical trial." SAC ¶177; Def. Ex. 3.

October 29, 2020. On this date Tricida revealed, for the first time, that the FDA was "unlikey to rely solely on serum bicarbonate data for [the] determination of efficacy.[5]" SAC ¶86; Def. Ex. 4.. This was new information revealed to the market. Coffman Rebuttal Rpt. ¶¶26-27. This was an issue raised before the May 1, 2020 late cycle meeting and was among the reasons why the AdCom was canceled. In addition, while Klaerner discussed during an analyst call that day the need to enroll subjects who were representative of the U.S. patient population, he did not reveal the FDA's concerns—also discussed at the late cycle meeting and a reason for the cancelation of the AdCom—that the trial results themselves were unreliable as most of the patients came from one trial site in Bulgaria. If the market learned that the FDA believed the trial results were unreliable, it would have understood that Tricida would have to conduct an entirely new study to support an NDA for veverimer[6] Tricida's stock fell by $3.90 per share, or 47%.[7]

February 25, 2021. Tricida disclosed having received the appeal denial letter ("ADL") and again revealed new information about the FDA's concerns: that trial's results were "strongly influenced by a single site," and "the majority of sites for the TRCA-301/TRCA-301E trial" were in Eastern Europe, "where differences in patient management … might affect the treatment response to veverimer," rendering questionable "the applicability to a U.S. patient population." SAC ¶¶92, 185; Def. Ex. 6. This new information to the market, *see* Coffman Rebuttal Rpt. ¶¶34-36, was discussed before and during the May 1 late cycle meeting and was among the reasons why the AdCom was canceled. Tricida's stock price fell in a statistically significant manner from $7.36 per share at close on February 25, 2021 to $5.11 per share at close on February 26, 2021.

---

[5] As the FDA explained to Tricida in its Appeal Denial Letter dated February 25, 2021, the FDA had consistently informed Tricida (including during the class period) that it was unlikely to rely solely on serum bicarbonate data for the determination of efficacy. SAC ¶91; Block Decl. Ex. C.

[6] On December 8, 2020 Tricida's stock declined in a statistically significant manner. Whether it corrected the misstatements is a loss causation question left to the merits. *See supra* at 9.

[7] Again, Defendant attempts to explain away this stock drop by calling it the "materialization of a known risk." Opp. at 19. This is again a loss causation issue—off limits at class certification.

### E.   Defendant's "Price Impact" Argument is Merely a Premature Loss Causation Argument

Defendant's purported price impact arguments are really a premature challenge to loss causation. *Goldman* reaffirmed the Supreme Court's earlier directive in *Halliburton I* that loss causation is not a class certification issue. *See* 594 U.S. at 122 n.2 (district courts "must use the evidence to decide the price impact issue 'while resisting the temptation to draw what may be obvious inferences for the closely related issues that must be left for the merits,'" including materiality and loss causation); *Sayce v. Forescout Techs., Inc.*, 2024 WL 2750003, at *11 (N.D. Cal. May 28, 2024) ("The Supreme Court has said that plaintiffs do not need to prove loss causation at the class certification stage[.]").  Once Defendant conceded his May 7 statements impacted Tricida's stock price, "[t]he fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place." *Halliburton I*, 563 U.S. at 813. This remaining inquiry "whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations … is a loss causation analysis not appropriate at this stage." *ChemoCentryx*, 2024 WL 1141699, at *4; *Alexion Pharms.*, 2023 WL 2932485, at *12.

Defendant's "'attack[s on] the 'fit' between an alleged corrective disclosure and a prior alleged fraudulent statement …. [are] nothing more than [ ] attack[s] on loss causation,' which plaintiff need not show as a condition of class certification." *In re Apple, Inc. Sec. Litig.*, 2022 WL 354785, at *12 (N.D. Cal. Feb. 4, 2022) (citing *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *9 (N.D. Cal. Mar. 16, 2016)). Even so, these arguments fail on their own terms.

### F.   Even If Considered, Defendant's Loss Causation Arguments Fail

Loss causation involves "no more than the familiar test for proximate cause," and "there are an infinite variety of ways for a tort to cause a loss." *Mineworkers' Pen. Scheme v. First Solar Inc.,* 881 F.3d 750, 753 (9th Cir. 2018). A plaintiff must merely "show a causal connection between the fraud and the loss by tracing the loss back to the very facts about which the defendant lied." *Id.* The Ninth Circuit does not require a corrective disclosure be the "mirror image" of an alleged misrepresentation, and *Goldman* did not change this settled law. *Mattel*, 2021 WL 4704578, at *5;

*see also Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364, at *10 (D. Nev. Mar. 1, 2023) ("[A] corrective disclosure need not precisely mirror the earlier misrepresentation.").

Here, Defendant argues for a "mirror image" between the misrepresentation and the corrective disclosure. Klaerner erroneously invokes "price impact," and asserts that if the corrective disclosure itself does not expressly reference the late cycle meeting or specifically identify the FDA's concern as a reason why the AdCom was canceled, it cannot be a corrective disclosure. This misstates the law in this Circuit. Even if "some information had come into the market … partial disclosures at an earlier date do not negate loss causation upon fuller disclosure of the relevant truth." *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1021 (S.D. Cal. 2011). A defendant can also slow the disclosure of the truth by making additional misstatements or casting doubt on the disclosure's validity, turning potentially full disclosures into partial disclosures." *See Cooper v. Thoratec,* 2018 WL 2117337, at *6 (N.D. Cal. May 8, 2018).

Tricida investors learned the truth piecemeal over time. Defendant took steps to delay the full truth from becoming known, and as Mr. Coffman indisputably demonstrates, Tricida's stock price reacted in a statistically significant way after each of the corrective disclosures at issue. *See* Coffman Rpt. ¶¶63, 70-71. Each of the corrective disclosures revealed additional information about the details and significance of veverimer's review issues that were repeatedly flagged by the FDA, and each disclosure corresponded with a statistically significant price drop. Dkt. 152, at 5-7. Defendant has not proven, as he must, that these stock price declines resulted from anything other than the corrective disclosures. *See City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2024 WL 1060079, at *13 (S.D. Cal. Mar. 11, 2024). Even if Defendant's premature loss causation arguments are considered, they fail to show a lack of price impact.

***First***, unlike in *Goldman*, Defendant does not contend that his misrepresentations were "generic." 594 U.S. at 123. Nor is there any "mismatch" between the alleged misrepresentations and corrective disclosures. *Id*. It is a "basic ground rule[]" that "a disclosure need not precisely mirror the earlier misrepresentation. It is enough if the disclosure reveals new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading." *In re BofI Hldg.,*

*Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020). Here, Klaerner failed to disclose the full substantive review issues repeatedly flagged by the FDA in January, March, April, and May 2020, which also precluded scheduling an AdCom meeting. SAC ¶¶25, 72-76. Klaerner concealed the FDA's concerns and falsely attributed the FDA's decision to not hold an AdCom to Covid-19. Investors were unaware of the true impact of the review issues on FDA approval until the final February 25, 2021 disclosure. Defendant's arguments merely "misconstrue plaintiff's theory" and "distract[] from the relevant price impact inquiry." *Apple*, 2022 WL 354785, at *9.

*Second*, Defendant's argument that these disclosures were not corrective simply because they did not specifically discuss the May 1 meeting, Opp. at 14, or why the AdCom was canceled, misses the point—the Court has already held that Klaerner's statements were material to investors because of their implications concerning the overall FDA approval process. *See* SAC Order at 24 ("It was obviously relevant whether the meeting was canceled for "logistical reasons" or substantive ones, and it was also relevant what the full substantive reasons were once Klaerner chose to highlight some of them.") It is the continued, piecemeal disclosure of the substantive reasons that corrected Klaerner's misleading statements and material omissions.

*Third*, statements from analysts do not prove the "market's prior understanding that the FDA would reject the NDA." Opp at 13. They show the opposite. The Zurek Report cites several analyst reports on August 24, 2020 expressing the belief that veverimer's NDA could be approved by the FDA. *See* Dkt. 163-1, at 30-31 (Needham: "We acknowledge uncertainty around the review process, but continue to believe the Phase 3 data are sufficiently strong to justify approval of the drug."; Cowen: "Though veverimer's path [cannot] be understood until after the Type A meeting, we are cautiously optimistic that TCDA and [the] FDA will agree on an expeditious one that does not require results from [V]ALOR-CKD.").

The same is true for the October 29, 2020 disclosure. Analyst reports cited by Defendant further demonstrate that the market was unaware of the FDA's true position, viewing the announcement on October 29, 2020, for example, as an "apparent moving of goal posts for veverimer's US approval." Opp. at 14. Defendant also acknowledges that "Tricida characterized

this as a retreat by the FDA," Opp. at 14, meaning that investors were not previously aware of severity of the FDA's concerns, which Klaerner knew since at least January 2020 and concealed on May 7, 2020.

Analysts likewise did not "understand[] that the FDA would reject the NDA" after the December 8, 2020 disclosure. *See* Dkt. 163-1, at 42-43 (J.P. Morgan on December 8: "[Management] … is optimistic that the process could still result in further regulatory clarity and potentially an alternative path forward for accelerated approval."; Cowen on December 9: "Despite the delay to veverimer's approval, we continue to believe that there is a major need for a therapy that can increase blood bicarbonate in CKD patients without conferring a large dose of sodium. We remain hopeful that veverimer will ultimately become a standard treatment in CKD with $1B in peak revenue potential.").

*Fourth*, Defendant mistakenly asserts that because Tricida issued generic risk warnings that the FDA might not accept the trial results, investors were adequately warned of the risks so when the stock fell after July 15, 2020, those were merely the materialization of a known risk. Not so. Disclosures that warn that "risks could occur when, in fact, those risks had already materialized" is materially misleading. *In re Facebook Inc. Sec. Litig.,* 87 F.4th 934, 948-49 (9th Cir. 2023) (citing *In re Alphabet Sec. Litig.*, 1 F.4th 687, 702-05 (9th Cir. 2021)). Here, the FDA *already informed* Tricida of its concerns about the very issues for which Klaerner claims Tricida warned investors *might happen*, so the purported risk disclosures are inapplicable. Coffman Rebuttal Rpt. ¶¶ 21-22, 29-30, 37-38.

*Finally*, Defendant disingenuously argues that the August 24, October 29, and February 25 disclosures are entirely based on "new information" from agency actions that could not have been disclosed earlier. Opp. at 13-18. Not so. Each of these disclosures partially revealed the substantive concerns the FDA had expressed to Tricida and Klaerner, both before and during the May 1 late cycle meeting, which were what led to the cancelation of the AdCom. Each disclosure provided the market with additional information regarding the FDA's concerns with the NDA,

culminating with the ADL on February 25, 2021. These issues were all discussed at or before the May 1, 2020 late cycle meeting, and all known to Defendant.[8]

### III.   PLAINTIFF IS A TYPICAL CLASS REPRESENTATIVE

Defendant's argument that Plaintiff is atypical rests on the improper premise that the Class Period should end on July 16, 2020. This is incorrect, and more importantly, does not impact typicality. "Under the rule's permissive standards, representative claims are 'typical' if they are *reasonably co-extensive* with those of absent class members; they need not be substantially identical." *Malriat v. QuantumScape Corp.*, 2022 WL 17974629, at *4 (N.D. Cal. Dec. 19, 2022). Because Plaintiff's claims and the Class's claims "involve the same conduct" by Klaerner, "typicality is established[.]" *Heritage Bond*, 2004 WL 1638201, at *7.

Plaintiff is not subject to any "unique defenses" that would render him atypical. Defendant's burden to make this showing is high—any "unique defense" must "threaten to be a major focus of the litigation so as to harm the interests of absent class members." *Buttonwood Tree Value Partners, LP v. Sweeney*, 2013 WL 12125980, at *5 (C.D. Cal. Sept. 12, 2013). Defendant cannot make such a showing here. Purchasing stock after a partial disclosure is not a bar to satisfying typicality. *DocuSign*, 2024 WL 2925979, at *7 ("[T]he weight of authority favors the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement."); *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 576 (N.D. Cal. 2009) ("The Court rejects defendants' first argument, which is that in general, a plaintiff is atypical if it buys stock after the disclosure of an alleged fraud."); *Schneider v. Champignon Brands Inc.*, 2021 WL 4935160, at *3 (C.D. Cal. June 29, 2021) ("The weight of authority 'favor[s] the position that

---

[8] Klaerner's reliance on *FibroGen*, is thus misplaced because all the FDA's substantive issues with the NDA were communicated to Klaerner before May 7, 2020. *See* 2024 WL 1064665, at *13. As this Court already recognized, Plaintiff "cites documents detailing communications … beginning in January 2020 in which the Agency identified 'significant issues' with the trial and their impact on a potential AdCom meeting…. The SAC further alleges that Klaerner knew about these issues because he attended meetings in January and May 2020 at which the FDA discussed them." SAC Order at 17 (citing ¶¶72-77, 159, 163–65). Moreover, the FDA's decision to require additional data beyond the Phase 3 trial, which was disclosed on October 29, 2020, was not "new" information for Klaerner because he had received the CRL in August 2020. ¶84. The same is true of subsequent disclosures of the FDA's position. ¶¶180-185.

the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement'"); *Symantec*, 335 F.R.D. at 284 ("Plaintiff's reliance on the integrity of the market is not subject to serious dispute as a result of its post-disclosure purchases."). The same is true here.

Moreover, "even if the Lead Plaintiffs *were* subject to a unique non-reliance defense, that would not be a basis for denying class certification unless they had engaged in unique types of trading." *DocuSign*, 2024 WL 2925979, at \*5; *see Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (finding that plaintiff would be subject to unique defenses based on "his practice of buying a minimal number shares of stock in various companies, and his uneconomical purchase of only ten shares of stock in Dataproducts").

## IV.   PLAINTIFF MAY INVOKE THE *AFFILIATED UTE* PRESUMPTION OF RELIANCE

Separately, Defendant has also failed to show that the Class cannot also be certified under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). As alleged in the SAC, Plaintiff's fraud claims are predicated in part upon omissions of material facts about the NDA for veverimer for which there was a duty to disclose. *See, e.g.*, ¶¶158-159, 162.

When a securities fraud case is "primarily about what [Defendants] did not say," the *Affiliated Ute* presumption of reliance applies. *In re Robinhood Ord. Flow Litig.*, 2022 WL 9765563, at \*13 (N.D. Cal. Oct. 13, 2022); *see also In re Montage Tech. Grp. Ltd. Sec. Litig.*, 2016 WL 1598666, at \*6 (N.D. Cal. Apr. 21, 2016) ("*Affiliated Ute* affords a presumption of reliance to a plaintiff who advances a securities fraud claim based on a defendant's failure to disclose material information."); *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). This is true even in "mixed" cases where both omissions and misrepresentations are alleged, so long as the "case can be characterized as one that primarily alleges omissions." *Binder*, 184 F.3d at 1064. Because Defendant "misle[d] the market by omission," SAC Order at 24, Plaintiff is entitled to rely on the *Affiliated Ute* presumption as an alternative to establish class-wide reliance.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion, certify the Class, appoint Jeffrey M. Fiore as Class Representative, and appoint Block & Leviton LLP as Class Counsel.

Respectfully submitted,

August 15, 2024                                   /s/ Jeffrey C. Block
                                                   Jeffrey C. Block (*pro hac vice*)
                                                   Michael D. Gaines (*pro hac vice*)
                                                   **BLOCK & LEVITON LLP**
                                                   260 Franklin Street, Suite 1860
                                                   Boston, MA 02110
                                                   (617) 398-5600 phone
                                                   jeff@blockleviton.com
                                                   michael@blockleviton.com

                                                   Jacob A. Walker (SBN 271217)
                                                   **BLOCK & LEVITON LLP**
                                                   400 Concar Drive
                                                   San Mateo, CA 94402
                                                   (650) 781-0025 phone
                                                   jake@blockleviton.com