Sara B. Brody (SBN 130222)
sbrody@sidley.com
Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:  (415) 772-1279

Robin E. Wechkin (admitted *pro hac vice*)
rwechkin@sidley.com
SIDLEY AUSTIN LLP
8426 316th Place Southeast
Issaquah, WA 98027
Telephone: (415) 439-1799

*Attorneys for Defendant Gerrit Klaerner*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PARDI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRICIDA, INC., and GERRIT KLAERNER,<br><br>Defendants. | Case No.:  4:21-cv-00076-HSG<br><br><u>CLASS ACTION</u><br><br>**DEFENDANT GERRIT KLAERNER'S SUR-REPLY IN OPPOSITION TO CLASS CERTIFICATION**<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>Date:  September 12, 2024<br>Time: 2:00 p.m.<br>Courtroom 2, 4th Floor |

## I. INTRODUCTION

Plaintiff's attack on Klaerner's price impact evidence depends on a distortion of the claims remaining in the case and a misapprehension of Section 10(b) class certification law following the Supreme Court's 2021 *Goldman Sachs* decision.  Because Klaener bears the burden on price impact, he submits this short sur-reply to address these issues.  Dkt. 180.

## II. ARGUMENT

### A.   Klaerner's Review Issue Statement Had No Price Impact After July 16, 2020

Klaerner showed in his opposition brief that under both a "market knowledge" and a "mismatch" analysis, the challenged review issue statement ceased to impact Tricida's stock price after July 16, 2020.  Opp. 9-12 (market knowledge) & 12-19 (mismatch).  In arguing otherwise, Plaintiff ignores the limited scope of both the challenged statement and the theory of fraud that survived the pleading motions.  The Court held that Plaintiff adequately alleged that Klaerner misled the market by identifying one of two review issues discussed at the May 1, 2020 FDA meeting (magnitude and durability of treatment effect) without also identifying the other issue (geographical applicability).  *Id.* 2-3 (citing Dkt. 93 at 22, 30-31).  The Court did not hold that by disclosing one review issue, Klaerner assumed a duty to disclose all concerns the FDA had expressed over the multi-year review process.  Nor would the text of the challenged statement support such a conclusion.  Klaerner did not undertake to summarize the history of Tricida's interactions with the FDA.  Nor did he predict the likelihood of approval based on FDA interactions.  He simply stated that magnitude and durability of treatment effect was among the issues Tricida discussed with the FDA on May 1.  SAC ¶ 158.

Plaintiff thus attacks a straw man when he argues that Klaerner has failed to show that Tricida's July 16 and August 6 disclosures "communicated to the market the full and complete truth of the FDA's substantive concerns about Tricida's NDA."  Reply 1.  Klaerner does not bear the burden of showing that.  Klaerner has disproven price impact by showing that the market learned of the purportedly omitted second review issue through Tricida's August 6 Form 10-Q, which means that under the efficient market hypothesis, the review issue statement ceased to impact Tricida's stock price after that date.  The market also knew by August 6 that veverimer would not be

1

approved on schedule, if at all.[1]

Plaintiff's attack on Klaerner's showing of mismatch is defective for the same reason. Plaintiff argues that with each of the three remaining purported corrective disclosures—on August 24, 2020, October 29, 2020, and February 25, 2021—Tricida released "additional information regarding the FDA's concerns with the NDA." Reply 13; *see also id.* 11 (same). Plaintiff's expert, Coffman, then contends that the FDA expressed these purportedly omitted concerns in communications dating back to 2015—while also acknowledging that in every instance this was "prior to the Class Period." *E.g.*, Dkt. 175-2 ¶ 10 nn.6-7, ¶ 11 nn.9-10, ¶ 28 n.45. Plaintiff's showing that Tricida released new information about the FDA's historical concerns after August 6 is almost entirely beside the point. The question is whether Tricida provided the market with new information correcting the omission from the May 7 statement—that a second review issue was also on the table at the May 1 meeting. Plaintiff does not contend that any purported corrective disclosures after August 6 included that information.

Plaintiff complains that Klaerner's price impact analysis "cuts [the] case too narrow." Reply 4. But an omission theory is not a bottomless pit. Plaintiff's use of that theory would resurrect his original failed fraud claim—that Klaerner had a duty to disclose all concerns the FDA expressed during the review process. The Court explicitly rejected that contention when it dismissed the SAC as to all but two challenged statements. Opp. 3; Dkt. 145 at 12-13 (discussing the "overarching flaw with Fiore's argument"). In ruling on the FAC, the Court held that Plaintiff adequately pled that Klaerner misleadingly omitted the second review issue—not every concern the FDA had ever expressed. Dkt. 93 at 22, 30. Most recently, the Court confirmed the limited nature of the surviving theory of fraud when it denied Plaintiff's motion for clarification. Dkt. 161 at 2 (explaining that in its earlier ruling, the Court concluded that Plaintiff had adequately alleged that Klaerner was "obligated to disclose the [second] significant review issue"). Klaerner has

---

[1] Plaintiff suggests that Tricida obscured the latter point by stating in the August 6 Form 10-Q that it continued "to plan for the commercial launch of veverimer's upon approval." Reply 6 (quoting Form 10-Q). That does not detract from Tricida's disclosure that it expected approval to be delayed, if not denied. Launch plans were ongoing, but the launch itself could occur only "upon approval." Tricida also cautioned the market that it could not predict the "full impact" of developments with the FDA on the prospective approval and launch processes. Dkt. 163-9 at 22.

DEFENDANT'S SUR-REPLY IN OPPOSITION TO CLASS CERTIFICATION
CASE NO. 4:21-CV-00076-HSG

established that the purportedly omitted information entered the market on August 6. That disproves price impact thereafter for the review issue statement, as does Klaerner's showing that the subsequent alleged corrective disclosures do not match the purported omission.[2]

### B.    Klaerner's AdCom Statement Had No Price Impact After July 16, 2020

Plaintiff again distorts the scope of what remains in this case in connection with the second challenged statement, about scheduling an AdCom meeting. Klaerner told investors on May 7 that the FDA had informed Tricida on May 1 that no AdCom meeting would be scheduled "due in part to the logistical challenges posed by COVID-19." ¶ 158. Klaerner showed in his opposition that the information the market learned on July 15 and August 6 removed any inflation the challenged statement could theoretically have maintained in Tricida's stock price. As Plaintiff himself says, "the market learned" on August 15 "that Tricida's veverimer NDA suffered from review issues that were significant enough to preclude discussions of labeling and premarketing requirements/ commitments." ¶ 193. That plainly mooted the previous statement about AdCom scheduling.

In disputing Klaerner's price impact evidence, Plaintiff again seeks to open the floodgates through an omission theory, arguing that the AdCom statement put in play negative FDA feedback dating back to 2015, and that because Tricida did not disclose that feedback on July 15 or August 6, its stock price remained inflated. *Supra* at 2; *see also, e.g.*, Reply 4-5 (listing multiple items of purportedly omitted information, with subparts). But Plaintiff's attack on the challenged statement is not primarily an omission claim at all. Plaintiff's theory is that the FDA never referred to COVID-19 in connection with AdCom scheduling, and that Klaerner's statement was accordingly a "blatant[] lie." Dkt. 108/109 at 20. In any event, Klaerner did not purport to summarize Tricida's

---

[2] Although Klaerner does not bear the burden of identifying alternative reasons for stock declines following the post-August 6 purported corrective disclosures, his expert, Zurek, has demonstrated that those declines reflected the materialization of disclosed risks. Opp. 15, 17. Plaintiff attacks Zurek's conclusions, arguing that Tricida's pre-class period risk disclosures were impermissibly "generic" on the subject of FDA approval. Reply 13. Even if that were an accurate characterization of the risk disclosures in Tricida's Form 10-K (it is not), Plaintiff ignores the risks Tricida disclosed on July 15 and August 6, when it reported on the deficiency notice. That serious setback created heightened risks, and those risks materialized in the new developments Tricida reported on August 24, 2020, October 29, 2020, and February 25, 2021. Plaintiff is also wrong as a legal matter in arguing that Klaerner "must" prove that post-August 6 declines "resulted from anything other than the corrective disclosures." *Id.* 11. Klaerner's burden is to sever the link between the challenged statements and stock price after August 6, not to identify alternative reasons for post-August 6 declines. *Goldman Sachs Grp. v. Ark. Teachers Ret. Sys.*, 594 U.S. 113, 118 (2021).

history of interactions with the FDA.  He commented on the FDA's remarks about an AdCom at the May 1 meeting.  What was omitted can only sensibly be understood as a function of what was said.

Plaintiff relies heavily on the Court's reasoning, in analyzing scienter, that "it was obviously relevant whether the meeting was canceled for 'logistical reasons' or substantive ones, and it was also relevant what the full substantive reasons were once Klaerner chose to highlight some of them."  Dkt. 145 at 24.  But in analyzing state of mind—what Klaerner believed investors would take from his statements—the Court did not indicate that all substantive concerns the FDA had ever expressed are part of the case, nor that Klaerner was obligated to disclose them all.  The case is necessarily bounded by the content of the challenged statement, which concerned the FDA's comment on May 1 about AdCom scheduling.

Properly understood, the AdCom statement could not have continued to impact Tricida's stock price after August 6.  The market knew no later than this that the approval process was badly off track, and that the FDA might never approve veverimer.  Tricida continued to report on new developments in the FDA review process thereafter, and investors learned additional details about the FDA's views on veverimer generally.  But those details, in the words of *Goldman Sachs*, are a "mismatch" with the challenged statement about the FDA's May 1 comment that it would not convene an AdCom in part for logistical reasons.  Plaintiff fails to reckon with either the limited scope of the challenged statement or the operation of common sense—which dictates that scheduling issues were superseded when the market learned that veverimer might never be approved.  After Tricida revealed that piece of very serious bad news, Klaerner's statement about the FDA's May 1 scheduling comments could no longer have impacted Tricida's stock price.[3]

### C.   Plaintiff's Price Impact Arguments Are Framed by Legal Errors

Beyond these defects, Plaintiff wraps his attack on Klaerner's price impact evidence in two

---

[3] In connection with both challenged statements, Plaintiff suggests that Tricida's August 6 reference to a CRL did not alert investors that the FDA would deny its NDA; Plaintiff claims that a CRL is distinct from a denial.  Reply 6 n.2.  That is flatly wrong.  The FDA issues a CRL when it determines that it "will not approve the application … in its present form …." 21 C.F.R. § 314.110.  Plaintiff also faults Klaerner for not providing complete information about the CRL on August 24 or about an October 20 meeting on October 29.  Reply 8-9.  Plaintiff's suggestion that the purported corrective disclosures themselves misled the market is not part of the SAC.  Moreover, an allegedly misleading statement about developments in August and October 2020 has no bearing on the issue here, which is limited to the impact of Klaerner's May 7 statements about the May 1 meeting.

4

legal errors.  He first invites the Court to disregard the evidence altogether, arguing that Klaerner has "conceded" price impact by seeking merely to shorten the class period.  He then asks the Court to set aside the evidence as a "premature" attack on causation.  Plaintiff is wrong on both counts.

***Klaerner has not "conceded" price impact.***  Plaintiff argues that because Klaerner does not seek to disprove price impact for the nine weeks between May 7 and July 15, 2020, Klaerner has somehow conceded it for the next seven months, through February 25, 2021.  Reply 1-3, 10. Plaintiff's brief contains its own refutation.  Quoting *Halliburton II*, Plaintiff recognizes a critical temporal limitation on the fraud-on-the-market presumption:  "[A]n investor presumptively relies on a misrepresentation so long as it was reflected in the market price *at the time of his transaction*." Reply 2 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278 (2014)) (cleaned up; emphasis added).  The effect of a purported falsehood may be incorporated into price at one point, but if it does not remain in the price when an investor buys the stock, no presumption applies. Courts consequently shorten proposed class periods when defendants show that a challenged statement ceased to impact stock price after a given date, or in connection with a given disclosure. *E.g.*, *In re Fibrogen Sec. Litig.*, 2024 WL 1064665, at *12-15 (N.D. Cal. Mar. 11, 2024) (cutting off class period on the date of the first purported corrective disclosure where defendants disproved price impact for all subsequent periods); *see also In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *8 (S.D. Tex. Feb. 9, 2024) (R&R) (assessing price impact as to three purported corrective disclosures "in reverse chronological order . . . as that will determine the Class Period's end point").

A court's obligation to consider evidence that goes to less than the entirety of a class period also flows from the Supreme Court's directive to remain "open to *all* probative evidence" when assessing price impact.  *Goldman Sachs*, 594 U.S. 113 at 122.  Following *Goldman Sachs*, courts have rejected the argument that price impact is an all-or-nothing proposition over the course of a class period.  *Ramirez v. Exxon Mobil Corp.*, 2023 WL 5415315, at *13, *15-21 (N.D. Tex. Aug. 21, 2023) (concluding that defendants disproved price impact with respect to all but one of seven purported corrective disclosures, each of which the court analyzed separately).  Indeed, even in the decisions Plaintiff cites, courts truncate class periods—or otherwise remove certain purported corrective disclosures from a case—where defendants show that the alleged fraud had no impact

5

after a given date or in connection with a particular disclosure. *E.g.*, *Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364, at *11 (D. Nev. Mar. 1, 2023) (under "mismatch" analysis, class "may not proceed" as to one purported corrective disclosure).

Plaintiff cites two decisions in support of his contention that price impact is an all-or-nothing proposition. Reply at 2-3. But the language he quotes from *ChemoCentryx* is dictum: The court did not address the argument that challenged statements ceased to impact price within the proposed class period. *Homyk v. ChemoCentryx, Inc.*, 2024 WL 1141699, at *4 (N.D. Cal. Mar. 6, 2024). In any event, the plaintiff there established *front-end* price impact directly, by showing a stock price increase in response to the challenged statements. *Id.* In *Alexion*, while the court accepted an argument similar to Plaintiff's, it relied on pre-*Goldman Sachs* law, and did not seek to reconcile its conclusion either with *Goldman Sachs*' mandate to consider all probative evidence, or with *Halliburton II*'s temporal approach to price impact. *Boston Ret. Sys. v. Alexion Pharm., Inc.*, 2023 WL 2932485, at *11 (D. Conn. Apr. 13, 2023). Under the latter authorities, Klaerner is entitled to disprove price impact disclosure by disclosure and statement by statement.

***Plaintiff cannot dispense with price impact evidence or arguments by labeling them "loss causation" or "truth on the market."*** Plaintiffs' second argument—that Klaerner has prematurely teed up loss causation and the truth-on-the-market defense—is even more plainly foreclosed by *Goldman Sachs*. The Supreme Court directed district courts to consider all probative evidence "regardless whether that evidence overlaps with" any merits issue. 594 U.S. at 124; *see also id.* at 122 n.2 ("a district court may not use the overlap to refuse to consider the evidence") (cleaned up). Thus under *Goldman Sachs*' "mismatch" prong, courts must consider whether a purported corrective disclosure "actually corrected" the challenged statement, even though that question might also be relevant to a loss causation analysis. *Id.* at 123; *Apache*, 2024 WL 532315, at *10 (rejecting plaintiff's contention that "mismatch" analysis constitutes an impermissible loss causation argument; "that is not the law"); *see also, e.g.*, *Fibrogen*, 2024 WL 1064665, at *12 ("revelations that are not 'corrective' cannot form the basis for a corrective disclosure," and hence cannot support a finding of back-end price impact). Similarly, courts must determine whether information conveyed by a purported corrective disclosure was already circulating in the marketplace, even

6

though that might also be relevant to a truth-on-the-market defense. *See Fibrogen*, 2024 WL 1064665, at *12 (back-end price decline shows price impact only if disclosure precipitating decline consists of information previously unknown to the market).

Plaintiff's own authorities again refute his argument. Plaintiff cites *Apple*, but the court there *rejected* the plaintiff's contention that mismatch arguments "speak to materiality and loss causation, issues that are inappropriate for resolution at the class certification stage." *In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *8 (N.D. Cal. Feb. 4, 2022). The court in *Rivian* similarly analyzed the company's "market knowledge" and "statement mismatch" arguments in detail, notwithstanding overlap with truth-on-the-market and loss causation issues. *Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *11-15 (C.D. Ca. July 17, 2024). These courts ultimately concluded that the defendants had not met their burden of disproving price impact, but that is very different from simply dispensing with the issue—which is what Plaintiff asks the Court to do here.[4] Klaerner's price impact evidence and arguments are properly before the Court at class certification, notwithstanding overlap with merits issues the Court may reach later in the case.

## III. CONCLUSION

Because Klaerner has disproven price impact, the class period for any class the Court certifies should end on July 16, 2020.

Dated: August 27, 2024

Respectfully submitted,

**SIDLEY AUSTIN LLP**

By: */s/ Sara B. Brody*
Sara B. Brody (SBN 130222)
*Attorneys for Defendant*

---

[4] Plaintiff's other authorities are inapposite. Plaintiff cites *DocuSign*, but the defendant there did not try to disprove price impact, and the court mentioned neither *Halliburton II* nor *Goldman Sachs*. *Weston v. DocuSign, Inc.*, 2024 WL 2925979 (N.D. Cal. June 10, 2024). Plaintiff cites *Sayce v. Forescout Technologies, Inc.*, for the proposition that "[t]he Supreme Court has said that plaintiffs do not need to prove loss causation at the class certification stage." 2024 WL 2750003, at *11 (N.D. Cal. May 28, 2024); Reply 10. That is of course beyond dispute—but it does not mean that courts may disregard price impact analyses that may overlap with loss causation. *Goldman Sachs* (not cited in *Forescout*) says exactly the opposite: "a district court may not use the overlap to refuse to consider the evidence." 594 U.S. at 122 n.2. Finally, *Stamps.com* is a pre-*Goldman Sachs* decision, and is superseded by the Supreme Court's instructions on scope of review and embrace of the "mismatch" concept. *Karinski v. Stamps.com, Inc.*, 2020 WL 6572660 (C.D. Cal. Nov. 9, 2020).