# Exhibit C
# Appeal Denied
# Letter
# 2/17/2021

# REDACTED VERSION OF DOCUMENT TO BE SEALED

CONFIDENTIAL



**U.S. FOOD & DRUG**
ADMINISTRATION

NDA 211408

**APPEAL DENIED**

Tricida, Inc.
Attention: Sarah McNulty
Senior Vice President, Regulatory Affairs
7000 Shoreline Court, Suite 201
South San Francisco CA 94080

Dear Ms. McNulty:

Please refer to your New Drug Application (NDA) submitted under section 505(b) of the Federal Food, Drug, and Cosmetic Act for TRC 101 (veverimer) powder for suspension.

I also refer to your December 3, 2020, request for formal dispute resolution received on December 3, 2020. The appeal concerned the August 21, 2020 Complete Response Letter issued by the Office of Cardiology, Hematology, Endocrinology, and Nephrology (OCHEN) for NDA 211408.

I also refer to the meeting held between FDA and Tricida, Inc. on January 19, 2021, where the issues raised in your request for formal dispute resolution were discussed.

I have carefully reviewed the materials you submitted in support of your appeal, as well as reviews, meeting minutes, decision memoranda prepared by FDA staff, and the complete response letter, as well as relevant literature, and, I have also consulted with Staff in the Division of Cardiology and Nephrology (herein referred to as the "Division").

As noted in our December 17, 2020 Acknowledgement and Meeting Granted letter, materials submitted in support of your appeal included new information that was not considered by OCHEN before issuing the August 21, 2020 Complete Response letter (herein referred to as the "CR letter"). The new information included Figure 5 and Attachment 1. All FDA decisions on any dispute must be based on information already in the relevant administrative file (§10.75(d)). Therefore, these materials were not considered in my response.

I have completed my review of your request for formal dispute resolution and deny your appeal. I describe below the basis for my decision and provide recommendations for a possible path forward.

████████████████████████████████████████████████████████████

████████████████████████████████████████ You argue that substantial

FDACDER000833

NDA 211408
Page 2

evidence of the efficacy of TRC101 was established in Study TRCA-301, and therefore request that the Office of New Drugs "find that the magnitude of SBC change seen in Studies TRCA-301 and TRCA-301E is reasonably likely to predict clinical benefit in the treatment of metabolic acidosis associated with CKD and that it can therefore serve as the basis for accelerated approval." (Page 2, formal dispute resolution request [FDRR] Letter).

Detailed information on the development program and results from Study TRCA-301/-301E are provided in the your December 3, 2020, FDRR letter and in the CR letter from OCHEN, and meeting minutes between the Division and the Company, so I will discuss these only briefly, and then review the key concerns raised in the CR letter and address your arguments in the FDRR letter.

TRC101 is a non-absorbable oral powder composed of spherical beads that bind hydrogen and chloride. Unlike treatment of metabolic acidosis with sodium bicarbonate, TRC101 binds hydrochloric acid in the gastrointestinal (GI) tract, increasing fecal excretion of acid ($H^+$ ions), leading to a net increase in systemic bicarbonate.  A Phase 2 study showed that 2 weeks of treatment with TRC101 increased SBC. A Phase 3 study, TRCA-301, was then conducted that had a 12-week placebo-controlled randomized treatment period and a 40-week extension study (TRCA-301E). Patients entering the extension study continued the same randomized treatment as assigned in the base randomized treatment period.  Overall 217 patients with CKD (eGFR of 20-40 mL/min/1.73 m$^2$) who had metabolic acidosis (SBC 12 to ≤ 20 mEq/L) were randomized in a 4:3 ratio to TRC101 or placebo. The primary study endpoint was the proportion of patients with a ≥ 4 mEq/L increase in SBC or an SBC in the normal range (22-29 mEq/L) at Week 12; change from baseline (CFB) in SBC was the first secondary endpoint.  In addition, the trial also evaluated endpoints reflecting physical functioning: a patient-reported outcome measure, the Kidney Disease Quality of Life Instrument physical function domain score (KDQOL-PFD), which collects patient's reports of their physical activity, and a performance outcome measure (PerfO), five-times repeated chair stand time (STS5).

The results of Study TRCA-301 showed a statistically significant increase in the primary endpoint at Week 12: 59.2% and 22.5% of patients in the TRC101 relative to the placebo group, respectively, met the response criteria, with a similar, statistically significance difference, seen at Week 52 (in TRCA-301E).  The between-group difference in SBC of 2.6 mEq/L at Week 12 was also statistically significant, but modestly attenuated to 2.0 mEq/L, still statistically significant, at Week 52. You then submitted an NDA for TRC101 supported by this trial.



**U.S. Food and Drug Administration**
Silver Spring, MD 20993
**www.fda.gov**

CONFIDENTIAL

NDA 211408
Page 3



For a single AWC study to support a conclusion of substantial evidence of effectiveness, the study must, *alone*, provide persuasive evidence of benefit; the FDA's effectiveness guidances (from the FDA guidance "*Providing Clinical Evidence of Effectiveness for Human Drug and Biological Products*" published in 1998 and the recently published guidance, "*Demonstrating Substantial Evidence of Effectiveness for Human Drug and Biological Products Guidance for Industry*", 2019) provide



**U.S. Food and Drug Administration**
Silver Spring, MD 20993
**www.fda.gov**

FDACDER000835

NDA 211408
Page 4



**U.S. Food and Drug Administration**
Silver Spring, MD 20993
**www.fda.gov**

**CONFIDENTIAL**

NDA 211408
Page 5



**U.S. Food and Drug Administration**
Silver Spring, MD 20993
**www.fda.gov**

Reference ID: 4748404                                                         FDACDER000837

CONFIDENTIAL

NDA 211408
Page 6



**U.S. Food and Drug Administration**
Silver Spring, MD 20993
**www.fda.gov**

**CONFIDENTIAL**

NDA 211408
Page 7



I note that the initial protocol version of TRCA-303 was available at the time of the NDA, and subsequently, Protocol Amendment 1, was submitted to the IND and cross-referenced to the NDA.  More recently (December 2020), you submitted Protocol Amendment 2. Since this amendment, which substantially changes assumptions underlying study power, has not been reviewed by the Division and was submitted long after the Division's action on the NDA which is the subject of this FDRR, I will only focus my comments on prior protocol versions of TRCA-303.

**U.S. Food and Drug Administration**
Silver Spring, MD 20993
**www.fda.gov**

FDACDER000839

CONFIDENTIAL

NDA 211408
Page 8



I will discuss later in this document how this issue might be addressed in the context of an accelerated approval.

**U.S. Food and Drug Administration**
Silver Spring, MD 20993
www.fda.gov

FDACDER000840

**CONFIDENTIAL**

NDA 211408
Page 9



In contrast to the analytes that serve as surrogates supporting full approval, and as already discussed, an increase in SBC has not been demonstrated to predict clinical benefit and accepted to support full approval. Moreover, the extent of increase in SBC that is reasonably likely to predict benefit is unknown (vs the extent of abnormality in the analytes above that can lead to harm). For these reasons, the examples that the you cite for drugs approved based upon changes in analytes does not support the contention that TRC101 should similarly be approved on the basis of the observed increase in SBC.

You then cite the results of two additional endpoints in Study TRCA-301/-301E, KDQOL-PFD and STS5.  The KDQOL-PFD is a PRO reflecting ████████████████

**U.S. Food and Drug Administration**
Silver Spring, MD 20993
**www.fda.gov**

FDACDER000841

**CONFIDENTIAL**

NDA 211408
Page 10



Accelerated approval is an important tool FDA can use to bring treatments to patients suffering from serious diseases with unmet needs years before clinical trials may confirm clinical benefit.  This construct requires confidence that the observed effect on the surrogate is reasonably likely to predict clinical benefit, and that clinical benefit will be confirmed in a reasonable period of time after approval. Leaving a drug on the market with uncertainty regarding benefit for a prolonged time period is clearly problematic.  For this reason, having an ongoing trial, already largely recruited, and designed and properly powered to detect the anticipated clinically meaningful difference in a reasonable time frame after accelerated approval is highly desirable. As you suggest, having occasional negative confirmatory trials shows that the Agency is, appropriately, accepting some risk; it is understood that patients with serious diseases without adequate treatments are willing to accept some uncertainty to have earlier access to potentially valuable new drugs.

**U.S. Food and Drug Administration**
Silver Spring, MD 20993
www.fda.gov

FDACDER000842

**CONFIDENTIAL**

NDA 211408
Page 11



With regard to a path forward, you must address the issues raised in the CR letter. Specifically, you must provide substantial evidence of effectiveness and increase confidence that the treatment response in TRCA-303 will be of sufficient magnitude to provide a clinical benefit on CKD progression; further, it will be important for you to show that the confirmatory study is properly powered to detect benefit on CKD progression in a reasonable timeframe if an accelerated approval decision were to be made.

I suggest that you request a meeting with the Division to discuss submission of the Week 52 SBC results from the *full* randomized study population of TRCA-303. The Division can discuss with you what other information would need to be included, other than data from trial primary endpoint results, in such a submission (e.g., safety information, or supporting information relevant to SBC).



Questions regarding next steps as described in this letter should be directed to Anna Park, Regulatory Health Project Manager, Division of Regulatory Operations for Cardiology, Hematology, Endocrinology, and Nephrology at (301) 796-1129.

**U.S. Food and Drug Administration**
Silver Spring, MD 20993
**www.fda.gov**

FDACDER000843

CONFIDENTIAL

NDA 211408
Page 12

This constitutes the final decision at the Office of New Drugs level. If you wish to appeal this decision to the next level, your appeal should be directed to Patrizia Cavazzoni, Director (Acting), Center for Drug Evaluation and Research. The appeal should be sent to the NDA administrative file as an amendment, and a copy should be sent to the Center's Formal Dispute Resolution Project Manager, Melissa Sage. Any questions concerning your appeal should be addressed to Melissa Sage at (301) 796-6440.

Sincerely,

*{See appended electronic signature page}*

Peter Stein, MD
Director
Office of New Drugs
Center for Drug Evaluation and Research

**U.S. Food and Drug Administration**
Silver Spring, MD 20993
**www.fda.gov**

FDACDER000844

CONFIDENTIAL

-----------------------------------------------------------------------------------------------------

**This is a representation of an electronic record that was signed electronically. Following this are manifestations of any and all electronic signatures for this electronic record.**

-----------------------------------------------------------------------------------------------------

/s/

------------------------------------------------------------

PETER P STEIN
02/17/2021 08:45:02 PM

Reference ID: 4748404

FDACDER000845