**UNITED STATES DISTRICT COURT**
**Northern District of California**
**Oakland Division**

MICHAEL PARDI, *Individually and on Behalf of All Others Similarly Situated,* Plaintiff,

v.

TRICIDA, INC. and GERRITT KLAERNER, Defendants.

Case No. 4:21-cv-00076-HSG

## DECLARATION OF HOWARD R. PHILIPS

I, Howard R. Philips, declare as follows:

1.      I am the Director of the Division of Information Disclosure Policy ("DIDP"), Office of Regulatory Policy ("ORP"), Center for Drug Evaluation and Research ("CDER"), U.S. Food and Drug Administration ("FDA"), in Silver Spring, Maryland.  I have held this position since December 2020.  Prior to that, I was Deputy Director of DIDP since October 2010.

2.      I have supervisory authority over DIDP, which processes and responds to third party subpoenas for records in CDER's possession.  DIDP is also responsible for processing and responding to requests made for CDER records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  In addition, DIDP responds to requests for CDER records made by the U.S. Congress; foreign, state, and local governments; other federal agencies; and court orders.  DIDP is also responsible for providing CDER records requested in discovery in FDA enforcement cases, for compiling CDER administrative records where FDA is a defendant, and for proactively reviewing, redacting, and posting on FDA's website, consistent with Executive

1

Order 13,392,[1] records anticipated to be frequently requested, such as drug approval packages and Warning Letters.

3.       At my direction, DIDP personnel search for records under CDER's control to identify documents and other information that may be responsive to particular information requests.  DIDP staff gather and review potentially responsive records to determine whether, before being made available for public disclosure, they should be redacted in part or withheld in their entirety (hereafter referred to as withheld) under any applicable FOIA exemption, other statutory provision, or, in the context of third-party subpoenas or discovery, any applicable privilege or protection ("protection").

4.       The statements made in this declaration are based upon my personal knowledge and official records or information available to me in my official capacity.

5.       The purpose of this declaration is to explain the statutory and regulatory framework governing production of FDA records in response to the third-party subpoena.

### STATUTORY AND REGULATORY FRAMEWORK GOVERNING PRODUCTION OF FDA RECORDS

6.       The Federal Trade Secrets Act (TSA), which applies to all employees of the United States, including FDA employees, prohibits the disclosure of trade secrets and confidential commercial information unless otherwise authorized by law.  *See* 18 U.S.C. § 1905. There are potential civil and criminal penalties for federal employees who violate the Trade Secrets Act.  The Federal Food, Drug, and Cosmetic Act ("FD&C Act") also prohibits the

---

[1]  Executive Order 12,392, Improving Agency Disclosure of Information, issued on December 14, 2005, encourages federal agencies to increase dissemination of records to the public without the need for a FOIA request.

release of certain trade secret or confidential commercial information except under circumstances not applicable here.  21 U.S.C. § 331(j).

7.      FDA's disclosure regulations applicable to all agency records are found in 21 C.F.R. Part 20.  Per 21 C.F.R. § 20.61(c), "[d]ata and information submitted or divulged to the Food and Drug Administration which fall within the definitions of a trade secret, or confidential commercial or financial information are not available for public disclosure." "Commercial or financial information that is privileged or confidential" is defined by regulation to mean "valuable data or information which is used in one's business and is of a type customarily held in strict confidence or regarded as privileged and not disclosed to any member of the public by the person to whom it belongs."  21 C.F.R. § 20.61(b).

8.      Public policy also favors exempting the Requested FDA Materials from disclosure.  The intent of the applicable disclosure provisions, and of FDA's regulations, is to safeguard important interests of both the government and those who submit confidential information.  *See* 39 Fed. Reg. 44602, 44609 (Dec. 24, 1974) (recognizing that exemptions to FOIA highlight the importance the government places on trade secrets).  These provisions ensure that federal agencies can obtain necessary and reliable commercial and financial information from the parties they regulate.  Such protections are important for FDA, which is responsible for protecting public health by ensuring the safety, efficacy, and security of products it regulates, and for advancing public health by helping to speed innovations that make products more safe, more effective, and more affordable.  Unauthorized disclosure of a company's confidential

3

information may undermine the willingness of regulated entities to provide the agency information and seriously impair FDA's ability to perform its critical mission.[2]

## FDA'S PRACTICE REGARDING THE DISCLOSURE OF INFORMATION REGARDING PENDING NEW DRUG APPLICATIONS

9.      To market a new drug product under the FD&C Act, approval of an New Drug Application (NDA) must first be obtained.[3]  Before approving an NDA, FDA must determine that the drug is both safe and effective for use under the conditions prescribed, recommended, or suggested in the product's labeling.[4]  FDA will review the contents of the NDA and make a decision to either approve the NDA under 21 C.F.R. § 314.105 or send a Complete Response letter ("CR letter") under 21 C.F.R. § 314.110.  The Agency will issue a CR letter when the Agency determines that it will not approve the application in its present form.[5]  In response, the sponsor of an NDA who receives a CR Letter may consider submitting a Formal Dispute Resolution Request to FDA to appeal scientific and/or medical disputes, which may include deficiencies cited in CR Letters. The FDA deciding official will send a written decision to a sponsor who submits a Formal Dispute Resolution Request and may either grant or deny the appeal.  An NDA that has been submitted to FDA but has not yet been approved by the Agency is considered pending.

10.     The existence, identity, and status of NDAs, and the information therein, reflect a company's business plans and market strategies, and constitutes "commercial" information.  This

---

[2] *See Jerome Stevens Pharms. v. FDA*, 319 F. Supp. 2d 45 (D.D.C. 2004), *aff'd in part and rev'd in part*, *remanded*, 402 F.3d 1249 (D.D.C. 2005) (seeking $1.345 billion in damages from FDA for releasing alleged trade secret information about the drug Unithroid).  The Jerome Stevens case illustrates that the drug industry takes very seriously the disclosure of confidential commercial information and trade secrets submitted to the agency and is willing to pursue judicial intervention if it disagrees with the agency's disclosure of material it believes warrants protection.

[3] *See* 21 U.S.C. § 355(a); *see also* 21 U.S.C. § 331(d) (prohibiting the marketing of any article in violation of 21 U.S.C. § 355).

[4] *See* 21 U.S.C. § 355(c), (d)).

[5] 21 C.F.R § 314.110(a).

includes correspondence sent during the NDA process, such as the CR Letter and the Appeal Denied Letter at issue here. A company's plans about prospective products are closely guarded commercial secrets in the competitive marketplace for prescription drugs and therefore properly exempt from disclosure as confidential commercial information.

11. This conclusion is reflected in FDA's regulations, which state that FDA will not acknowledge the <u>existence</u> of unapproved applications prior to the time such application is approved unless the applicant itself has already acknowledged its existence. *See, e.g.,* 21 C.F.R. § 312.130 ("The existence of an investigational new drug application will not be disclosed by FDA unless it has previously been publicly disclosed or acknowledged."); § 314.430(b) & (c) ("FDA will not publicly disclose the existence of an application or abbreviated application before an approval letter is sent to the applicant . . . unless the existence of the application or abbreviated application has been previously publicly disclosed or acknowledged," and "If the existence of an unapproved application or abbreviated application has not been publicly disclosed or acknowledged, no data or information in the application or abbreviated application is available for public disclosure.").

12. Moreover, if the existence of an NDA has been publicly disclosed before the Agency sends an approval letter to the applicant, no data or information contained in the application or abbreviated application is available for public disclosure before the Agency sends an approval letter, with certain exceptions not applicable here. *See* 21 C.F.R. § 314.430(d). In addition to the regulations described above, FDA is bound by other statutory requirements governing the disclosure of information in its possession as stated above. For example, 21 U.S.C. § 331(j), prohibits revealing any trade secret information that FDA receives as part of an

NDA. That is because, in the competitive marketplace for prescription drugs, companies' plans about prospective products are closely guarded commercial secrets.

## FDA's HANDLING OF PLAINTIFFS' SUBPOENA

13.    FDA received a subpoena in the above referenced matter, to which it is not a party, on September 12, 2022, requesting records, including documents containing information reflecting Tricida's confidential commercial information (CCI) and trade secret information. FDA responded with a letter on September 15, 2022, pursuant to Federal Rule of Civil Procedure 45, laying out FDA's objections to the subpoena, including objecting to requests for protected information such as trade secrets and CCI. Notwithstanding its Rule 45 letter, FDA produced documents in response to the subpoena in September and October 2022. FDA's productions included the following two records with the designation CONFIDENTIAL:

- FDACDER000014–19 (Aug. 21, 2020, Complete Response Letter)
- FDACDER000833-45 (Feb. 17, 2021, Appeal Denied Letter)

14.    DIDP properly designated as "CONFIDENTIAL" the CR Letter and the Appeal Denied Letter. DIDP acknowledges that certain information about the CR Letter and the Appeal Denied Letter is public.[6] However, the full contents of the CR Letter and the Appeal Denied Letter are not public. Per DIDP policy, prior disclosure of otherwise exempt records triggers the release by FDA of only that information already released. *See* 21 C.F.R. § 20.81 ("Data and information previously disclosed to the public. (a) Any Food and Drug Administration record that is otherwise exempt from public disclosure pursuant to subpart D of this part is available for

---

[6] *See* https://www.biospace.com/tricida-receives-complete-response-letter-from-the-fda-for-its-new-drug-application-for-veverimer-for-the-treatment-of-metabolic-acidosis-and-slowing-of-kidney-disease-progression-in-patients-with-metabolic-acidosis-associated-with-ckd and https://www.biospace.com/tricida-provides-update-on-fda-interactionstricida-has-received-an-appeal-denied-letter-from-the-office-of-new-drugs-of-the-fda-in-response-to-its-formal-dispute-resolution-request

public disclosure to the extent that it contains data or information that have previously been disclosed in a lawful manner to any member of the public, other than an employee or consultant or pursuant to other commercial arrangements with appropriate safeguards for secrecy.").

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Howard R. Philips

HOWARD R. PHILIPS

Executed on August 29, 2024

7