UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PARDI, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>TRICIDA, INC., et al.,<br><br>　　　　　Defendants. | Case No. 21-cv-00076-HSG (LJC)<br><br>**ORDER REGARDING DISCOVERY LETTER BRIEFS**<br><br>Re: Dkt. Nos. 166, 185 |

## I.   INTRODUCTION

This case concerns allegations that misrepresentation by Defendant Gerrit Klaerner regarding FDA review of a pharmaceutical product called veverimer that Tricida, Inc. was developing affected the value of Tricida stock, including stock purchased by Lead Plaintiff Jeffrey Fiore. Klaerner was Tricida's founder and CEO. Tricida was initially named as a defendant in this case, but Plaintiffs voluntarily dismissed their claims against Tricida when it entered bankruptcy proceedings. Judge Gilliam has referred all discovery disputes to the undersigned magistrate judge, and the parties have filed two joint letters regarding discovery disputes: a letter addressing several requests for production that Fiore served on Klaerner (ECF No. 166), and a letter addressing a subpoena that Fiore served on Tricida (ECF No. 185).

For the reasons discussed below, the Court limits the scope of documents that Klaerner must produce in response to Fiore's requests for production under Rule 34, but declines to limit the scope of Tricida's production in response to Fiore's subpoena, except to ensure that Klaerner will have an opportunity to screen that production for his own attorney-client communications.

## II.   BACKGROUND

As Judge Gilliam recently explained in his Order granting class certification, "[t]wo such allegedly false and misleading statements remain in this case," both of which "revolve around

Defendant Klaerner's failure to disclose issues flagged by the FDA at a May 1, 2020 meeting with Tricida" where the FDA allegedly raised concerns about "the magnitude and durability of the treatment effect," the extent to which certain clinical data applied to the United States, and potentially outsized influence of a single site in Bulgaria. ECF No. 188 at 3. Judge Gilliam identified the two statements at issue as follows:

> The first allegedly false and misleading statement was made during a May 7, 2020 earnings call in which Klaerner stated:
>
>> In our late-cycle meeting with [the] FDA, we took the opportunity to address outstanding review issues. We presented our data and rationale as to why we think [veverimer] satisfied the requirements for initial approval under the Accelerated Approval Program, including the magnitude and durability of the treatment effect on the surrogate mark[er] serum bicarbonate demonstrated in the TRCA-301 and TRCA-301E trials.
>
> *Id.* ¶ 80. The Court held that Plaintiff adequately alleged that Klaerner misled investors by telling them about only one of two "outstanding review issues" discussed at the May 1 meeting: "the magnitude and durability of the treatment effect on the surrogate marker." FAC Order at 22. The Court noted that "by disclosing this key detail, Klaerner was obligated to share the other significant review issue raised by the FDA—the 'applicability of data from the TRCA-301 and TRCA-301E trials to the U.S. population' discussed with the FDA." *Id.*
>
> The second allegedly false and misleading statement was made during the same call. Klaerner stated:
>
>> In our late-cycle meeting with the FDA, held in May 2020, the FDA indicated it currently does not plan to hold an AdCom to discuss veverimer due in part to the logistical challenges posed by COVID-19.
>
> SAC ¶ 158. The Court held that Plaintiff adequately alleged that Klaerner intentionally or recklessly misrepresented the true reasons for the cancellation of the AdCom meeting because "'[t]he FDA did not cite logistical challenges stemming from COVID-19 as even a contributing factor in canceling the AdCom meeting in its communications with Tricida.'" SAC Order at 17. The Court cited Plaintiff's allegations that the FDA identified "'significant issues" with the trial and their impact on a potential AdCom meeting" that would not "warrant convening an Advisory Committee." *Id.*

ECF No. 188 at 3–4 (alterations in original; footnote omitted).

Judge Gilliam emphasized that omission of the FDA's concern about a single site in Bulgaria potentially driving the entirety of a week-52 treatment effect was included within the

issue of whether Tricida's clinical data applied to the United States. ECF No. 188 at 16. "A fully corrective disclosure [would] have informed the market of the three substantive concerns raised by the FDA": (1) magnitude and durability of the treatment effect; (2) application to the U.S. population and medical practice generally, given that most of the clinical data came from Eastern Europe; and (3) the influence of a single site in Bulgaria. *Id.* at 16–17. For the purpose of class certification, Judge Gilliam determined that a corrective disclosure on February 25, 2021 was the first to address all of those issues. *Id.* at 17.

Judge Gilliam previously dismissed claims based on optimistic statements of opinion by Klaerner regarding the quality of Tricida's data and the likelihood of FDA approval, ECF No. 145 at 10–16, as well as claims based on factual (and apparently accurate) statements regarding treatment data that did not reflect concerns raised by the FDA, *id.* at 18. Judge Gilliam dismissed claims based on statements that Tricida conducted trials in "Europe" (without specifying *Eastern* Europe), statements that did not discuss the location of clinical trials and spoke only generally about potential risk of the FDA denying approval, and statements that characterized the trials as "multicenter," for failure to provide allegations raising a sufficient inference of scienter. *Id.* at 20–23.

## III. ANALYSIS OF REQUESTS SERVED ON KLAERNER

### A. Legal Standards for Discovery and Underlying Claims

"Unless otherwise limited by court order," Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1)

The elements of Fiore's claims for securities fraud are: "(1) a material misrepresentation or omission by [Klaerner]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission;

3

(5) economic loss; and (6) loss causation." ECF No. 145 at 8 (quoting *Macomb Cty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098 (9th Cir. 2022)) (alteration in original).  Scienter requires a showing of either "intent to deceive, manipulate, or defraud," or "deliberate recklessness" where the "danger of misleading buyers or sellers . . . is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Id.* at 19 (quoting *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 937 (9th Cir. 2023); *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020)).

### B.   Document Requests at Issue

"Plaintiff seeks to compel production of documents in response to RFP Nos. 2, 5, 7–12, 15–18, 21, 27-30, and 36–39." ECF No. 166 at 1.  The Court addresses those requests in the following categories: (1) requests regarding FDA proceedings, i.e., Request Nos. 11, 12, 15–17, 21, and 27–29; (2) requests related to stock sales, i.e., Request Nos. 7–10; (3) requests regarding communications with investors, analysts, and the press, i.e., Request Nos. 36–39; and (4) other miscellaneous requests, i.e., Request Nos. 2, 5, 18, and 30.

#### 1.   Requests Regarding FDA Proceedings

Judge Gilliam previously relied on Fiore's allegations "that Klaerner was party to extensive communications with the FDA *about its concerns* and their potential impact on the AdCom meeting" to hold that Fiore sufficiently alleged scienter.  ECF No. 145 at 24 (emphasis added).  The extent to which the FDA did or did not discuss the effects of the COVID-19 pandemic may be relevant to the issue of scienter, even in communications that were not directly related to the cancellation of the AdCom meeting.  Hypothetically—because the Court does not know the content of such communications—it is not hard to imagine how such communications might provide context tending to support or negate an inference that Klaerner subjectively believed that the pandemic influenced the FDA's decision to cancel the AdCom meeting, or that he (perhaps mistakenly) believed the FDA had indicated that was a factor in its decision.  Similarly, any explanation by the FDA of its concerns regarding the geographic scope of Tricida's clinical trials might be relevant to Klaerner's understanding of the extent to which such concerns affected the cancellation of the AdCom meeting, even if such communications did not specifically

4

relate to the AdCom meeting. Depending on the nature of such communications, they may have informed Klaerner's understanding—or the reasonableness of his understanding—of the reasons why the AdCom meeting was canceled. More generally, placing such communications in the context of other concerns that the FDA did or did not raise during the relevant timeframe may help a finder of fact to understand what significance Klaerner placed (or should have placed) on the specific FDA concerns that Klaerner did and did not disclose to investors.

The Court therefore concludes that the FDA's communications with Tricida preceding Klaerner's allegedly misleading statements on May 7, 2020, as well as internal Tricida documents reflecting Klaerner's understanding of those communications, are fair game for discovery. Fiore has not shown, however, that *subsequent* FDA proceedings are relevant to the remaining claims in this case such that production of all documents related to those proceedings is warranted.

### a. FDA Proceedings Generally

Several of the requests at issue relate to FDA proceedings generally, and warrant production of documents to the extent they relate to the FDA's interactions with Tricida from January 2020 (the starting point proposed in Fiore's portion of the joint letter) through May 7, 2020. Those requests are as follows:

**Request for Production No. 11** seeks:

> All documents concerning any Board of Directors meeting (whether formal or informal and including committee meetings of the Board of Directors), including board packages, financial closing packages, meeting minutes, exhibits, agendas, memoranda and resolutions, whether adopted or discussed concerning Tricida's interactions with the FDA and/or the late cycle meeting.

ECF No. 166-2 at 9.

Klaerner agreed to produce "Board of Directors' meeting minutes and materials regarding the FDA late-cycle meeting held on May 1, 2020 and/or Tricida's disclosures related to the FDA late-cycle meeting held on May 1, 2020," but otherwise objected to this request. ECF No. 166-2 at 9–10. The Court finds the somewhat broader scope proposed in Fiore's portion of the Joint Letter to be reasonable and proportional to the needs of the case, but cabins the period of relevant communications as extending only through the date of Klaerner's allegedly misleading statements.

5

In response to Request No. 11, Klaerner is ORDERED to produce Board of Directors meeting materials regarding "the communications between Tricida and the FDA beginning in January 2020 [through May 7, 2020] concerning the FDA's review of the NDA and documents related to those communications."  *See* ECF No. 166 at 2.

**Request for Production No. 12** seeks:

> All documents sent to or received from any of Tricida's directors regarding Tricida's budget or finances, Tricida's stock price, Tricida's investors, TRCA-301, TRCA-301E, VALOR-CKD, the FDA approval process for Veverimer, or the CRL.

ECF No. 166-2 at 10.  As with the request discussed above, Klaerner agreed to produce documents specifically related to the May 1, 2020 meeting, but the Court finds the broader scope now proposed by Fiore to be more reasonable, limited as discussed above for Request No. 11.  Klaerner is ORDERED to produce documents from Tricida's directors that relate to "the communications between Tricida and the FDA beginning in January 2020 [through May 7, 2020] concerning the FDA's review of the NDA and documents related to those communications."  *See* ECF No. 166 at 2.  To the extent Fiore seeks to compel production of documents unrelated to the FDA approval process, the request is DENIED.

The Court addresses several other requests in this category as a group, with similar results:

**Request for Production No. 15** seeks: "All documents and communications concerning the FDA regulatory process for approval of Veverimer, including related meetings and interim interactions with the FDA."  ECF No. 166-2 at 12.

**Request for Production No. 16** seeks: "All documents you sent to or received from the FDA concerning Veverimer."  ECF No. 166-2 at 13.

**Request for Production No. 17** seeks: "All communications to, from, by, or involving Klaerner, or any former employee identified in either of the parties' Fed. R. Civ. P. 26(a)(1) disclosures, concerning Veverimer's prospects for FDA approval."  ECF No. 166-2 at 13.

**Request for Production No. 21** seeks: "All documents and communications regarding the FDA's comments about the trial data supporting TRCA-301 and TRCA-301E, including any comments expressed by the FDA at the late cycle meeting."  ECF No. 166-2 at 15–16.

**Request for Production No. 27** seeks: "All documents and communications concerning the FDA's determination to seek additional data beyond TRCA-301 and TRCA-301E, including additional data regarding the magnitude and durability of the treatment effect of Veverimer on the surrogate marker of serum bicarbonate and the applicability of the treatment effect to the U.S. population." ECF No. 166-2 at 19.

For most of those requests, Klaerner agreed to produce documents to the extent that they relate to "the FDA late-cycle meeting held on May 1, 2020 and/or Tricida's disclosures related to the FDA late-cycle meeting held on May 1, 2020." *E.g.*, ECF No. 166-2 at 9–10. For Request No. 27, Klaerner agreed to produce documents "regarding a determination by the FDA to seek additional data regarding the applicability of the treatment effect to the U.S. population." *Id.* at 20. Klaerner otherwise objected to these requests.

The Court finds Klaerner's proposed productions overly constrained, and ORDERS Klaerner to produce all documents responsive to these requests that relate to FDA proceedings regarding Tricida's application for approval of veverimer from January 2020 through May 7, 2020, in addition to any scope of production to which Klaerner has already agreed. Fiore's request to compel production beyond that scope is DENIED.

### b.      Subsequent FDA Proceedings

Two of Fiore's requests relate to FDA proceedings occurring after Klaerner's allegedly misleading statements.

**Request for Production No. 28** seeks: "All documents and communications concerning the CRL, including any communications with the FDA regarding the CRL and subsequent End-of-Review Type A Conference held on October 20, 2020 with the FDA's Division of Cardiology and Nephrology." ECF No. 166-2 at 20. The "CRL" is defined as "the Complete Response Letter Tricida received from the FDA on August 21, 2020 regarding the NDA for Veverimer." ECF No. 166-1 at 3.

**Request for Production No. 29** seeks: "All documents and communications concerning Tricida's appeal of the FDA's rejection of the NDA for Veverimer, including the Appeal Denied Letter from the FDA's Office of New Drugs in response to Tricida's Formal Dispute Resolution

7

1  Request submitted in December 2020." ECF No. 166-2 at 20–21.

2        Klaerner agreed to respond to those requests to the extent that they seek documents "related to disclosures made about the FDA late-cycle meeting held on May 1, 2020." ECF No. 166-2 at 20, 21. Fiore has not explained why any other documents pertaining to an August 2020 decision letter, an October 2020 meeting with the FDA, or a December 2020 administrative appeal are likely to be relevant to Klaerner's state of mind at the time of his allegedly misleading statements in May of that year. Fiore's request to compel a response to Request No. 28 is therefore DENIED, except with respect to the scope of documents Klaerner already agreed to produce.

### 2. Requests Related to Stock Sales

      Four of Fiore's requests for production concern stock sales and related issues. Fiore contends that Klaerner's incentive to profit from sales of Tricida stock at inflated values is relevant to showing his intent to mislead. ECF No. 166 at 3. Klaerner argues that stock sales are not relevant to any remaining issue because Judge Gilliam previously found such sales insufficient to establish scienter. ECF No. 166 at 5.

      In his Order on Klaerner's (and then-Defendant Tricida's) first motion to dismiss, Judge Gilliam held that Klaerner's stock sales did not support an inference of scienter as to claims for which Fiore otherwise failed to offer sufficient allegations of scienter, in part because such sales were made pursuant to a predetermined Rule 10b5-1 trading plan implemented at the start of the class period with no prior history of trading to which that plan could be compared. ECF No. 93 at 25–26. In short, Fiore's allegations had "not shown that the timing of Klaerner's stock sales was unusual or suspicious." *Id.* at 25.

      The question before Judge Gilliam at the time was whether Fiore had sufficiently alleged scienter based on Klaerner's stock sales, not whether Klaerner's sales might have any relevance to that issue at trial, in conjunction with other evidence. As Judge Gilliam acknowledged, "'[u]nusual' or 'suspicious' stock sales by corporate insiders may constitute circumstantial evidence of scienter." ECF No. 93 at 25 (quoting *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017)). That such sales may have been made pursuant to a pre-determined plan could reduce their

8

relevance, but does not necessarily eliminate it. *See id.* ("[S]tock sales made 'according to pre-determined plans *may* rebut an inference of scienter[.]" (quoting *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008)) (emphasis added)). This Court does not read Judge Gilliam's order on an early motion to dismiss as foreclosing the possibility that Klaerner's stock sales might be relevant to scienter in conjunction with other evidence. The Court therefore orders production of some documents related to that issue as follows, but cabins such production to avoid imposing undue burden for documents that are not likely to be central to the case.

**Request for Production No. 7** seeks:

> The version(s) of Tricida's policies regarding securities trades by Tricida directors, officers, or employees that were in effect during the Relevant Period and all documents regarding any potential or actual violation of these policies.

ECF No. 166-1 at 13.

Klaerner has agreed to produce these policies, *see* ECF No. 166 at 5 n.4, and he must therefore do so.

Fiore argues generally that Klaerner's own stock sales might be relevant to scienter. ECF No. 166 at 3 ("[H]is stock sales are relevant to his motive."). But Fiore does not address the relevance of "documents regarding any potential or actual violation of [trading] policies," *see* ECF No. 166-1 at 13, except to quote a District of Arizona decision for the proposition that "[e]vidence of insider trading . . . may be relevant to the scienter element of the § 10(b) and Rule 10b-5 misrepresentation claims and perhaps for other purposes," ECF No. 166 at 3 (quoting *Smilovits v. First Solar, Inc.*, No. CV12-0555-PHX-DGC, 2019 WL 7282026, at *2 n.3 (D. Ariz. Dec. 27, 2019)).

Although *Smilovits* also concerned misrepresentation claims proceeding in the absence of insider trading claims, the language on which Klaerner relies appears only in a footnote, with no explanation of the court's reasoning. It is not self-evident that *any* purportedly improper trading by Klaerner would support an inference that he made material misrepresentations in connection with stock trades, much less the specific alleged misrepresentations on which this case is

9

proceeding. The Court therefore concludes that Klaerner must produce any documents regarding potential or actual violations *by Klaerner* of Tricida's trading policies, *if such alleged violations relate to the alleged misrepresentations at issue or Klaerner's knowledge of the FDA approval proceedings.* Klaerner need not produce documents concerning other potential or actual violations.

**Request for Production No. 8** seeks:

> All documents concerning prohibited periods for trading in Tricida's securities by any Company directors, officers or employees, including all emails regarding the commencement or conclusion of any such period.

ECF No. 166-1 at 13.

As discussed above, Klaerner's own trading activity might have some bearing on his motive to (allegedly) mislead investors. Understanding prohibited trading periods may inform a finder of fact's consideration of why a particular trade occurred at a particular time. Klaerner is therefore ORDERED to produce documents *sufficient to show* all prohibited trading periods in calendar years 2020 and 2021. Fiore has not shown that prohibited trading periods outside of that timeframe are relevant, or that requiring production of *all* documents related to prohibited trading periods is proportional to the needs of the case. His request to compel compliance with this request is therefore DENIED to the extent that it seeks documents beyond what the Court now orders produced.

**Request for Production No. 9** seeks: "All documents concerning any requested or approved pre-clearance of any transaction in Tricida securities by any Company directors, officers, or employees." ECF No. 166-2 at 8. Klaerner is ORDERED to comply with this request to the extent that it seeks documents related to his own actual or contemplated trading activity. Fiore's request to compel compliance is DENIED as to documents related to any other person's trading activity, for which Fiore has not shown any potential relevance.

**Request for Production No. 10** seeks: "Transfer records or other documents identifying ownership of Tricida common stock." ECF No. 166-2 at 9. Klaerner is ORDERED to comply with Request No. 10 only to the extent it relates to his own ownership or transfer of Tricida stock.

### 3. Communication with Investors, Analysts, and the Press

Four of the requests at issue relate to communications regarding veverimer with investors, analysts, and others outside of Tricida. The parties do not address these requests specifically in their joint letter.

**Request for Production No. 36** seeks: "All documents regarding Klaerner's consideration of whether and/or when Tricida should disclose to investors any information about Tricida's interactions with the FDA concerning Veverimer." ECF No. 166-2 at 25.

**Request for Production No. 37** seeks: "All documents concerning any communications, conference calls, presentations or meetings with any securities analysts, financial analysts, individual or institutional investors, financial publications, news reporters, journalists, or investment bankers concerning Veverimer." ECF No. 166-2 at 26.

**Request for Production No. 38** seeks: "All documents regarding any coverage of Veverimer by securities analysts or the news media, including any draft or final reports or articles sent to or received by Klaerner." ECF No. 166-2 at 27.

**Request for Production No. 39** seeks: "All communications with, and documents sent to or received from, any analyst or analyst firm concerning Veverimer." ECF No. 166-2 at 27.

For all of those requests, Klaerner agreed to produce documents that "relate to FDA late-cycle meeting held on May 1, 2020." *See* ECF No. 166-2 at 25–28. For the reasons discussed above in the context of requests related to FDA proceedings, Klaerner is ORDERED to produce documents responsive to those requests to the extent that they relate to concerns expressed by the FDA from January 2020 through May 7, 2020. Klaerner is further ORDERED to produce responsive documents related to any subsequent disclosure(s) that he intends to argue were corrective of his allegedly misleading statements on May 7, 2020. *See* ECF No. 188 at 17–19 (Order by Judge Gilliam rejecting, for the purpose of class certification, Klaerner's arguments that certain subsequent disclosures were corrective prior to the February 25, 2021 press release that Fiore alleges first revealed the relevant facts to the public).

#### a. Other Requests

**Request for Production No. 2** seeks:

11

> Calendars, date books, and/or appointment books reflecting Tricida-related activities maintained by or for Klaerner, his administrative assistant, and each former Tricida employee identified in either of the parties' Fed. R. Civ. P. 26(a)(1) disclosures.

ECF No. 166-1 at 13.

Neither party addresses that request specifically in their Joint Letter. Fiore argues only that he is entitled to "documents related to all outstanding review issues raised by the FDA during the NDA review, not just the one specific review issue concealed from investors," as well as documents related to stock sales. ECF No. 166 at 3. Klaerner's *complete* calendar does not appear to be relevant to the case, much less the complete universe of Klaener's and other Tricida employees' appointment-related documents. Nor would production of all such documents be proportional to needs of the case. Fiore's request to compel full compliance with Request No. 2 is therefore DENIED.

That said, this Order should not be construed as excluding all calendar entries or similar documents from the scope of production. Klaerner previously agreed in response to this request to produce calendar entries "related to the FDA late-cycle meeting held on May 1, 2020 and/or Tricida's disclosures related to the FDA late-cycle meeting held on May 1, 2020," and he must do so. ECF No. 166-2 at 5. Moreover, to the extent that calendar-related documents might fall within the scope of a more narrowly tailored request to which Klaerner has raised no objection or for which the Court now compels compliance, they must be produced.

**Request for Production No. 5** seeks:

> The certifications of compliance with Tricida's Code of Business Conduct and Ethics, or any similar policy, by or on behalf of Klaerner and any persons identified in the parties' Rule 26(a)(1) disclosures.

ECF No. 166-1 at 13.

Klaerner has agreed as a compromise to produce Tricida's policies, but argues that documents related to compliance are not relevant. ECF No. 166 at 5 n.4. To the extent that such policies (which Klaerner has apparently not yet produced) might bear on Klaerner's obligations with respect to disclosures that could affect Tricida's stock price, certifications showing that Klaerner himself was aware of those policies could perhaps be relevant to scienter. If Klaerner remains in possession of such certifications, producing them would not seem to impose any undue

burden. Klaerner is therefore ORDERED to comply with Request No. 5 to the extent it seeks his own certifications of compliance. Plaintiffs have not demonstrated any relevance of certifications related to anyone other Klaerner himself, which need not be produced.

**Request for Production No. 18** seeks: "All documents and communications concerning the design and completion of TRCA-301 and TRCA-301E, including their associated risks." ECF No. 166-2 at 14.

Judge Gilliam previously limited this case to representations and omissions in May of 2020 concerning the FDA's reasons for not moving forward with the approval process at that time. To the extent that Request No. 18 includes relevant documents related to Klaerner and Tricida's communications with the FDA in the period leading up to Klaerner's allegedly misleading statements, it is duplicative of other more narrowly tailored requests. To the extent it seeks documents unrelated to such communications, and instead merely reflecting the actual results of Tricida's clinical testing, Fiore has not shown that such documents are relevant to his remaining claims or that their production is proportional to the needs of the case. Fiore's request to compel compliance with Request No. 18 is therefore DENIED.

**Request for Production No. 30** seeks: "The version(s) of any of Tricida's external corporate communications policies in effect during the Relevant Period and all documents regarding any request for or approval of any Company personnel to speak on behalf of Tricida or any violation of these policies." ECF No. 166-2 at 21. Fiore has not addressed the relevance of that request, and it does not facially relate to his stated desire to discover "the communications between Tricida and the FDA beginning in January 2020 concerning the FDA's review of the NDA and documents related to those communications." *See* ECF No. 166 at 2. The request to compel compliance with Request No. 30 is therefore DENIED.

### C. Conclusion Regarding Requests Served on Klaerner

Klaerner is ORDERED to begin a rolling production of documents consistent with this Order no later than October 24, 2024, to be completed no later than the November 15, 2024 deadline for substantial completion of document production. *See* ECF No. 171 (2d Am. Scheduling Order).

### IV. ANALYSIS OF SUBPOENA SERVED ON TRICIDA

The parties' second discovery letter concerns a subpoena that Fiore served on Tricida in late May of this year, which largely mirrors the requests for production that Fiore served on Klaerner. *See generally* ECF No. 185 (Joint Discovery Letter); ECF No. 185-1 (Requests for Production attached to the subpoena). After meeting and conferring, Tricida (through its liquidation trustee) and Fiore agreed on a scope of production based on certain search terms. *See* ECF No. 185 at 2, 3. Klaerner now seeks a protective order barring enforcement of the subpoena on the grounds that discovery from Tricida would be duplicative of documents Klaerner's counsel gathered upon Tricida's bankruptcy, and that Fiore's subpoena is therefore an attempt to circumvent the dispute that the parties previously presented to this Court regarding the requests for production from Klaerner addressed above. Klaerner also asserts that the production may include his own privileged communications with counsel about this litigation.

#### A. Legal Standard for Party Objections to Subpoenas

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A court must quash a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i), (iv). "Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor [related to undue burden] when determining motions to quash a subpoena." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).

"The scope of [subpoena] discovery under Rule 45 is the same as under Rule 26(b)." *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA (JSC), 2017 WL 2929439, at *2 (N.D. Cal. July 7, 2017). That said, the "Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Maplebear Inc. v. Uber Techs., Inc.*, No. 21-mc-80007-SK, 2021 WL 1845535, at *1 (N.D. Cal. Mar. 23, 2021) (citation omitted); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing *United States v. C.B.S.*, 666 F.2d 364, 371–72 (9th Cir. 1982)).

A party to a case may challenge a subpoena served on a non-party that implicate the

14

party's cognizable interests, including privacy interests. *See, e.g.*, *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 607 (W.D. Wash. 2013).

> Generally speaking, a party to an action does not have standing to move to quash a subpoena served upon a nonparty unless the party claims a personal right or privilege with respect to the documents requested in the subpoena. Therefore, a party's objection that a subpoena to a nonparty seeks irrelevant information, or that it would impose an undue burden [on the nonparty], are not grounds on which that party can base standing to move to quash a subpoena when the nonparty has not objected. However, a party may seek to protect these interests through a protective order pursuant to Rule 26(c) regarding a subpoena issued to a nonparty if it believes its own interest is jeopardized by the discovery sought from that nonparty.

*Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-cv-04165 MMC (RMI), 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019) (citations and parentheticals omitted).

### B. Klaerner's Cognizable Interest Is Limited

As discussed above, a party seeking to prevent discovery from a non-party pursuant to a subpoena may generally rely only on the party's own interest, and cannot invoke generalized interests in relevance or burden on the non-party. Tricida has not sought relief from the Court to quash or otherwise limit the scope of the subpoena that Fiore served on it. Klaerner contends that authority addressing parties' limited ability under Rule 45(d)(3) to quash subpoenas served on non-parties is inapposite, because he seeks a protective order under Rule 26(c). ECF No. 185 at 3. Regardless of the procedural mechanism, however, the relevant standard is substantially similar. Under Rule 26(c), a "party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself," but instead may only "seek an order if it believes its own interest is jeopardized by discovery from a third person." Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2035 (Procedure for Obtaining Protective Orders) (3d ed., June 2024 update); *cf. Cabell*, 294 F.R.D. at 607–08 (allowing a party to seek a protective order "because the subpoenas seek confidential information implicating [that party's own] privacy interests"). Klaerner cites no authority to the contrary.

Klaerner also cites no authority suggesting that a party has standing to raise relevance objections to a subpoena merely because its subject matter overlaps with party discovery for which the Court has separately addressed the scope of relevant and proportional discovery.

The only personal interest that Klaerner claims in the documents at issue is attorney-client privilege, specifically with respect to his own communications with his attorneys about this litigation, and the related burden of conducting a privilege review. ECF No. 185 at 3 & n.2. Fiore does not object to "weed[ing] out [Klaerner's] communications with lawyers about this case," and asserts that he is willing to "facilitate that." ECF No. 185 at 5 n.4.[1] Such review could likely be accomplished with relatively low burden through appropriate search terms. The Court does not find that Klaerner's burden in reviewing such documents warrants preventing Fiore from obtaining discovery from Tricida.

Beyond Klaerner's undisputed interest in privileged attorney-client communications related to this litigation, "any privilege that exists as to a corporate officer's role and functions within a corporation belongs to the corporation, not the officer," and an officer seeking to claim a personal privilege for communications with corporate counsel must meet an exacting standard to show that the officer sought and received confidential legal advice in their personal capacity that "did not concern matters within the company or the general affairs of the company." *United States v. Graf*, 610 F.3d 1148, 1159–61 (9th Cir. 2010) (quoting and adopting the standard of *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123–25 (3d Cir. 1986)). Tricida is a separate legal entity from Klaerner, which Klaerner no longer controls. Aside from the attorney-client communications addressed above, Klaerner has not shown any likelihood that Tricida's production would contain documents over which Klaerner can assert any cognizable privilege or other personal interest.

Klaerner also asserts that he would suffer unspecified "severe prejudice if Plaintiff is allowed to resort to self-help to avoid judicial review of the pending scope issue." ECF No. 185 at 3. One possible interpretation of that assertion is that Klaerner is concerned about potential adverse evidence coming to light. If so, he cites no authority treating such a concern as cognizable in this context. It is also possible that was not Klaerner's intent, but no other potential prejudice is apparent, and a vague assertion of unspecified "severe prejudice" is not a persuasive reason to

---

[1] Tricida, which is in the process of liquidation, is apparently not in a position to conduct any privilege screen itself.

limit discovery.

Tricida has agreed to a protocol to produce documents in response to Fiore's subpoena. With the narrow exception of Klaerner's attorney-client communication addressed above, Klaerner has made no showing that he has any personal interest in the documents that Tricida intends to produce—or, in other words, that the documents are not Tricida's to disclose as it sees fit. Klaerner does not claim or articulate, for example, any personal confidentiality or privacy interest in Tricida's corporate records. Although Tricida's production might extend beyond this Court's view of documents relevant and proportional to the needs of the case, Klaerner cannot now[2] raise objections related to relevance or burden on Tricida—arguments that Tricida declined to pursue—to prevent Tricida from producing its own documents to Fiore. "In fact, the burden on the non-part[y] would be greater if the court were to require [it] to do a more detailed sorting of the documents." *See Finley v. Pulcrano*, No. C 08-0248 PVT, 2008 WL 4500862, at *2 (N.D. Cal. Oct. 6, 2008).

Accordingly, the parties and Tricida are ORDERED to meet and confer as to a screening process for Klaerner's attorney-client communications, and file either a stipulation as to that process or a joint letter raising any disputes as to that process no later than October 17, 2024. Although the Court will resolve disputes regarding the review process if needed, the Court will not consider further argument that the scope of the subpoena should be limited. Unless the parties agree on a scope of initial production that does not risk disclosure of Klaerner's privileged communications, Tricida shall not produce any documents in response to Fiore's subpoena until a review protocol for such communications is established either by stipulation or by Court order.

## V. CONCLUSION

For the reasons discussed above, Klaerner is ORDERED to produce documents consistent with this Order in response to Fiore's requests for production beginning no later than October 24, 2024, and concluding no later than November 15, 2024.

---

[2] The Court does not reach or rely on Fiore's argument that Klaerner's objections are untimely, but notes that Klaerner offered no meaningful explanation for his failure to raise any objection to this subpoena until more than three months after Fiore served it, including in the party's first Joint Discovery Letter addressing the very similar requests for production that Fiore served on Klaerner.

1    The parties and Tricida are ORDERED to meet and confer to develop a screening process to identify any of Klaerner's communications with his attorneys about this litigation that might be included in the documents Tricida has otherwise agreed to produce. The parties shall file either a stipulation or a joint letter addressing that process no later than October 17, 2024. Unless the parties agree on a limited scope for initial production that does not implicate potentially privileged documents, Tricida shall not produce documents in response to the subpoena until after a review process is established.

**IT IS SO ORDERED.**

Dated: October 10, 2024

LISA J. CISNEROS
United States Magistrate Judge