Jeffrey C. Block, *pro hac vice*
Michael D. Gaines, *pro hac vice*
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
michael@blockleviton.com

*Attorneys for Lead Plaintiff*
*Jeffrey M. Fiore and the Class*

Jacob A. Walker (SBN 271217)
**Block & Leviton LLP**
400 Concar Drive
San Mateo, CA 94402
(650) 781-0025 phone
jake@blockleviton.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| MICHAEL PARDI, *Individually and on Behalf of All Others Similarly Situated,*<br><br>Plaintiff,<br><br>v.<br><br>TRICIDA, INC. and GERRIT KLAERNER,<br><br>Defendants. | Case No. 4:21-cv-00076-HSG<br><br>**Lead Plaintiff's Notice of Motion, Unopposed Motion for Preliminary Approval of Settlement, and Memorandum of Points and Authorities in Support Thereof**<br><br>**Date:        May 1, 2025**<br>**Time:        2:00 p.m.**<br>**Courtroom:  2, 4th Floor**<br>**Hon. Haywood S. Gilliam, Jr.** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Contents**

NOTICE OF MOTION AND UNOPPOSED MOTION ................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 2

I.      PRELIMINARY STATEMENT ....................................................................................... 2

    A.   Statement of Alleged Facts ................................................................................. 2

    B.   Procedural History ............................................................................................. 4

    C.   Settlement Negotiations ...................................................................................... 8

II.     THE SETTLEMENT AGREEMENT ............................................................................. 9

    A.   Settlement Consideration ..................................................................................... 9

    B.   Settlement Class and Claims ................................................................................ 9

    C.   Settlement Administration .................................................................................... 9

    D.   Attorneys' Fees ................................................................................................. 10

    E.   Cy Pres Awardee ............................................................................................... 11

    F.   Class Action Fairness Act (CAFA) Notice .......................................................... 11

    G.   Past Distributions ............................................................................................. 11

III.   ARGUMENT ............................................................................................................. 12

    A.   The Settlement Agreement Is the Result of Arm's Length Negotiations Conducted in Good Faith Between Experienced Counsel and Mediated by a Professional Mediator. .......... 12

    B.   The Settlement Agreement Has No Obvious Deficiencies and Does Not Grant Preferential Treatment to Lead Plaintiff or Any Segment of the Class. ................................... 13

    C.   The Settlement Agreement Falls Within the Range of Reasonableness and Warrants Notice and a Hearing on Final Approval. .......................................................... 14

    D.   The Court Should Approve the Form of Notice and Plan for Providing Notice to the Class and set a Final Approval Hearing Date. ........................................................ 18

IV.  CONCLUSION ............................................................................................................ 20

**Table of Authorities**

**Cases**

*Alberto v. GMRI, Inc.*,
  252 F.R.D. 652 (E.D. Cal. 2008) ............................................................................ 12

*Brokop v. Farmland Partners Inc.*,
  No. 18-cv-02104-DME-NYW (D. Colo. Apr. 5, 2022) ............................................ 17

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................................... 12

*De La Torre v. CashCall, Inc.*,
  No. 08-CV-03174-MEJ, 2017 WL 2670699 (N.D. Cal. June 21, 2017) ............................ 19, 20

*Fitzhenry-Russell v. Coca-Cola Co.*,
  No. 5:17-CV-00603-EJD, 2019 WL 6111378 (N.D. Cal. June 13, 2019) .............................. 19

*Fleming v. Impax Lab'ys Inc.*,
  No. 16-CV-06557-HSG, 2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) .............. 12, 13, 15, 17

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. 08-cv-1365-CW, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................................... 15

*Hampton v. Aqua Metals, Inc.*,
  No. 17-CV-07142-HSG, 2021 WL 4553578 (N.D. Cal. Oct. 5, 2021) ....................... 13, 17, 20

*Hicks v. Stanley*,
  No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................. 14

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ........................................................................ 16

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................................. 14, 18

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ............................... 17, 19

*Luz Bautista-Perez v. Juul Labs, Inc.*,
  No. 20-CV-01613-HSG, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ......................... 12, 13, 18

*Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................................ 16

*Satchell v. Fed. Express Corp.*,
    No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)............................................ 14

*State of California v. eBay, Inc.*,
    No. 5:12-CV-05874-EJD, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014)............................... 19

*Vataj v. Johnson*,
    No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021)...................... 13, 17, 20

*West v. Circle K Stores, Inc.*,
    No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ........ 12, 15, 19

*Young v. Polo Retail, LLC*,
    No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006)...................................... 14

**Statutes**

15 U.S.C. § 77k(e) ........................................................................................................................ 14

15 U.S.C. § 78u-4(a)(4) ................................................................................................................. 13

15 U.S.C. §78u-4(a)(7) .................................................................................................................. 18

**Rules**

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................................... 18

**NOTICE OF MOTION AND UNOPPOSED MOTION**

**TO:  ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD**

PLEASE TAKE NOTICE that on May 1, 2025, at 2:00 pm, or as soon as counsel may be heard before the Honorable Haywood S. Gilliam, Jr., United States District Judge, at the United States District Court, Northern District of California, Oakland Courthouse, Courtroom 2, 4th Floor, Lead Plaintiff Jeffrey M. Fiore ("Lead Plaintiff"), will and does hereby move for an order: (1) preliminarily approving the proposed settlement of this Action; (2) approving the form and manner of giving notice of the proposed settlement to the Class[1]; and (3) scheduling a hearing before the Court to determine whether the proposed settlement, and Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses, should be granted final approval.

The grounds for this motion are that the proposed settlement is well within the range of what could be found to be fair, reasonable, and adequate so that notice of its terms may be disseminated to members of the Class and a hearing for final approval of the proposed settlement scheduled.

This motion is supported by the following memorandum of points and authorities in support thereof, and the Stipulation of Settlement ("Settlement Agreement" or "Stipulation") dated March 3, 2025, and exhibits thereto which embody the terms of the proposed settlement between the parties, submitted herewith, and such other and further representations as may be made by Counsel at any hearing on this matter.[2]

---

[1] The "Class" and "Class Period" are consistent with the Court's September 27, 2024 decision certifying the action as a class action. "Class" means all persons or entities who purchased or otherwise acquired common stock of Tricida, Inc. during the period from May 8, 2020 to February 25, 2021, inclusive (the "Class Period"). Excluded from the Class are Defendant and Tricida, Inc. and their families, the officers, directors, and affiliates of Defendant and Tricida, Inc., at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendant or Tricida, Inc. have or had a controlling interest.  Also excluded from the Class is any Person who timely and validly seeks exclusion from the Class, or who have already done so, or whose request for exclusion is accepted by the Court.

[2] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation.

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the proposed settlement of this action for the sum of $14,250,000 is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the Class.

2.    Whether the proposed form of settlement notice and proof of claim and release form and the manner for dissemination to the members of the Class should be approved.

3.    Whether the Court should set a date for a hearing for final approval of the proposed settlement and the application of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses.

## I.    PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiff respectfully submits this memorandum of points and authorities in support of his unopposed motion for preliminary approval of the proposed settlement of this certified class action. The Settlement Agreement, as set forth in the Stipulation of Settlement dated March 3, 2025 (the "Stipulation") and filed contemporaneously herewith, provides for Defendant Gerrit Klaerner ("Defendant" or "Klaerner") to pay or cause to be paid $14,250,000 in cash for the benefit of the Class. Lead Plaintiff believes that the Settlement Agreement would amount to an excellent result for the Class, especially considering the bankrupt status of former defendant Tricida, Inc. and the substantial challenges and risks of a reduced recovery after summary judgment or trial. Lead Plaintiff accordingly requests that this Court grant preliminary approval.

### A.    Statement of Alleged Facts[3]

This case centers on Defendant's alleged misleading statements about the accelerated Food and Drug Administration ("FDA") approval process for veverimer, former defendant Tricida, Inc.'s ("Tricida")[4] lead investigational drug candidate. ¶4.[5] Lead Plaintiff alleges that Tricida

---

[3] Defendant has disputed and continues to dispute many of the facts alleged, but does not oppose the relief sought in this motion.

[4] Following Tricida's bankruptcy, Tricida was voluntarily dismissed from the Litigation without prejudice, ECF Nos. 125, 132.

[5] Citations to "¶" are to the Second Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws, Dkt. 115.

completed its Phase 3 study for veverimer in May 2018, and based on the purported strength of these trial results, went public on June 28, 2018, selling 13,455,000 million shares of its common stock to the class at $19 per share. ¶¶6-7. By February 26, 2021, the day after the FDA rejected Tricida's appeal of its decision not to approve veverimer, Tricida's stock price closed at $5.11 per share. ¶¶185-86.

Lead Plaintiff alleges that on a May 7, 2020 earnings call Defendant made false and misleading statements and omissions of material facts regarding veverimer's likelihood of FDA approval.

Lead Plaintiff further alleges that in communications with Tricida in January and May of 2020, the FDA highlighted "significant issues" with veverimer's New Drug Application (NDA) regarding the magnitude and durability of the treatment effect, the applicability of the trial data to the U.S. population (because the majority of the sites were in Eastern Europe), and that the treatment effect at Week 52 was driven entirely by a single site in Bulgaria. ¶¶20, 23, 75-77. And Lead Plaintiff further alleges that in meetings and conversations with Tricida in January, March, April, and May, the FDA repeatedly communicated that because of those "significant issues," it no longer believed that it was necessary to convene an Advisory Committee ("AdCom") meeting to consider veverimer's NDA. ¶¶74, 159.

Lead Plaintiff alleges that Klaerner misled investors on the May 7, 2020 earnings call by: (1) disclosing only one outstanding review issue discussed at the meeting with the FDA—the magnitude and durability of the treatment effect—while concealing the FDA's other "significant" concerns about the applicability of the clinical data to the U.S. population; and (2) stating that the FDA was not planning on holding an AdCom due in part to "the logistical challenges posed by COVID-19." ¶26.

On July 15, 2020, Tricida announced that the FDA "identified deficiencies that preclude discussion of labeling and postmarketing requirements/commitments at this time." ¶¶28, 79, 174, 176. Tricida's stock price fell $10.56 per share in response to this news. ¶¶79, 175. Tricida reported that the notification did not "specify the deficiencies identified by the FDA"; Lead Plaintiff alleges

that Defendant Klaerner knew what those deficiencies were—the same "significant issues" discussed during prior meetings with the FDA. ¶¶72-78.

On August 24, 2020, Tricida announced that the FDA issued a Complete Response Letter ("CRL") denying its NDA for veverimer. ¶29. Tricida's stock price fell by $3.13 per share, or 24% on this news, and would continue to decrease throughout the remainder of 2020. *Id.*

On October 29, 2020, before markets opened, the Company announced that the FDA told Tricida that it would not approve veverimer without evidence of the drug's effect, evidence that Tricida could not provide "without compromising the integrity of the ongoing trial," thus requiring additional trials. ¶30. In response to this news, Tricida's stock price fell 47% from its closing price of $8.27 per share on October 28, 2020, to close at $4.37 per share on October 29, 2020, wiping out nearly another $200 million in market capitalization. ¶31.

On December 8, 2020, Tricida issued a press release announcing that the Company had failed to "come to a resolution" with the FDA "on the resubmission of our NDA during our Type A meeting" and had submitted a Formal Dispute Resolution Request regarding the NDA. ¶32. On this news, Tricida's stock price fell 17.73%, from a close of $8.12 per share on December 8, 2020, to close at $6.68 per share on December 9, 2020. *Id.*

Finally, on February 25, 2021, Tricida issued a press release announcing the Company had received an Appeal Denied Letter from the FDA. And on this news, Tricida's stock price fell 30.57%, from a closing price of $7.36 per share on February 25, 2021, to $5.11 per share at market close on February 26, 2021. ¶¶185-86.

### B.    Procedural History

The initial complaint was filed on January 6, 2021. Dkt. 1. On April 2, 2021, the Court appointed Jeffrey M. Fiore as lead plaintiff and Block & Leviton LLP as lead counsel. Dkt. 65. Plaintiff filed the First Amended Complaint ("FAC") on June 1, 2021. Dkt. 72.

***Motion Practice:***

On July 16, 2021, Defendant and Tricida moved to dismiss the First Amended Complaint. Dkt. 76. Lead Plaintiff filed his opposition on August 16, 2021. Dkt. 79. Defendant Klaerner and Tricida filed their reply on September 15, 2021. Dkt. 80.

On July 29, 2022, the Court issued an order granting in part and denying in part the motion to dismiss the FAC (the "FAC Order"). Dkt. 93. The Court found the FAC pled valid claims for relief with respect to Defendants' May 7, 2020 statement about outstanding review issues discussed at a late-cycle meeting with the FDA on May 1, 2020. FAC Order 31 but otherwise granted the motion with regard to all other statements. The Court granted leave to amend Lead Plaintiff's other claims. FAC Order 30-31. Defendant and Tricida then filed their Answer and Affirmative Defenses to the Amended Complaint on October 7, 2022. Dkt. 107.

On November 23, 2022, Lead Plaintiff filed a motion for leave to file a Second Amended Complaint ("SAC"). Dkt. 109. The Parties thereafter stipulated to the filing of the Second Amended Complaint, and Lead Plaintiff filed the SAC on December 15, 2022. Dkt. 115.

On January 11, 2023, Tricida filed a voluntary petition for reorganization under Chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the District of Delaware, and Lead Plaintiff subsequently moved to voluntarily dismiss Tricida from this case without prejudice. Dkt. 125. The motion was granted on March 23, 2023. Dkt. 132.

Defendant Klaerner filed a motion to dismiss the Second Amended Complaint on February 6, 2023, Dkt. 128, which the Court granted in part and denied in part on March 11, 2024. Dkt. 145 ("SAC Order"). The Court addressed only the statements it previously found inadequately pled, SAC Order 8, and denied the motion to dismiss with respect to a statement made by Defendant on the May 7, 2020 earnings call that an AdCom meeting would not be scheduled due in part to logistical challenges posed by COVID-19. SAC Order 18, 24. The Court dismissed the remaining alleged misstatements without leave to amend. SAC Order 25. Defendant Klaerner filed his Answer and Affirmative Defenses to the Second Amended Complaint on May 9, 2024. Dkt. 155.

On June 6, 2024, Lead Plaintiff filed a Motion to Clarify the SAC Order. Dkt. 158. The Court ruled on this Motion on July 1, 2024, holding that the "we remain confident" statement, which was the subject of the clarification motion, was dismissed by the SAC Order, leaving in the case two challenged statements from Tricida's May 7, 2020 earnings call: Defendant's statements (1) discussing outstanding review issues addressed at the May 1, 2020 late-cycle meeting and (2)

that an AdCom meeting would not be scheduled due in part to the logistical challenges posed by COVID-19. Dkt. 161 at 2-3.

On April 30, 2024, Lead Plaintiff filed a Motion to Certify Class, Appoint Class Representative, and Appoint Class Counsel. Dkt. 152. Defendant filed an opposition to Lead Plaintiff's motion on July 1, 2024. Dkt. 162. Lead Plaintiff filed a reply on August 15, 2024, Dkt. 175, and Defendant filed a sur-reply on August 27, 2024. Dkt. 181. On September 27, 2024, the Court granted the Motion and (i) certified a class of investors who acquired Tricida common stock from May 8, 2020 to February 25, 2021, (ii) appointed Lead Plaintiff as class representative, and (iii) appointed Block & Leviton LLP as class counsel. Dkt. 188 at 21-22.

***Discovery:***

The PSLRA's automatic discovery stay was lifted on July 29, 2022, with the issuance of the FAC Order. Discovery commenced shortly thereafter. On September 7, 2022, counsel for the Settling Parties conducted a Rule 26(f) conference telephonically. *See* Dkt. 98 at 3. The Settling Parties filed their Joint Rule 26(f) Report and [Proposed] Case Management Order with the Court on September 13, 2022. Dkt. 98. The Settling Parties filed additional Joint Case Management Statements on March 19, 2024 and October 15, 2024. Dkt. 148, 190. The Settling Parties exchanged Initial Disclosures pursuant to Fed. R. Civ. P. 26(a) on October 7, 2022. Dkt. 98 at 4.

Lead Plaintiff served his First Set of Requests for Production of Documents on Defendant and Tricida on September 21, 2022. Block Decl. at ¶3. Defendant and Tricida served their responses and objections on October 24, 2022. *Id.* Lead Plaintiff also served a subpoena for production of documents to the FDA on September 12, 2022, with a production date of October 14, 2022. *Id.* at ¶11. The FDA sent its first production of records on September 28, 2022, the second production on October 7, 2022, and the third production on October 18, 2022. *Id.* at ¶12. The amendments that went into the SAC were largely based on these documents produced by the FDA.

Lead Plaintiff served Defendant Klaerner with a Second Set of Requests for Production of Documents on April 9, 2024, and Defendant served Responses and Objections on May 9, 2024. *Id.* at ¶4. Defendant Klaerner served his First Set of Requests for Production of Documents on

Lead Plaintiff on April 15, 2024. *Id.* at ¶5. Lead Plaintiff served his responses and objections on May 15, 2024 and produced documents to Defendant on the same date. *Id.* On June 24, 2024, counsel for Defendant took the deposition of Lead Plaintiff. *Id.* at ¶6.

On May 10, 2024, Lead Plaintiff noticed and served third-party subpoenas on six former employees of Tricida. *Id.* at ¶11. Lead Plaintiff then conducted meet and confers for the former employee subpoenas and received one production of documents on June 3, 2024. *Id.* at ¶ 13. Lead Plaintiff also served subpoenas on two third-party pharmaceutical companies, and received document productions in June and October 2024. *Id.* at ¶14.

Lead Plaintiff provided Defendant with notice of his third-party subpoena to Tricida on May 29, 2024, and the date of production listed for Tricida was July 15, 2024. *Id.* at ¶15. Lead Plaintiff met and conferred with Tricida's Liquidating Trustee and agreed on a production schedule. *Id.* at ¶16. Before Tricida's document production was to begin, Defendant Klaerner objected to the forthcoming production on August 22, 2024 and the Settling Parties subsequently filed a joint letter brief, as detailed below.

The Settling Parties had numerous disputes over the course of discovery. The Settling Parties met and conferred regarding Lead Plaintiff's second set of document requests on May 17, 2024 and May 29, 2024, and exchanged letters on June 7, 2024, June 13, 2024 and June 26, 2024. *Id.* at ¶9. Lead Plaintiff filed a motion to compel document production on July 17, 2024 in the form of a joint letter. Dkt. 166. The Settling Parties further met and conferred regarding Lead Plaintiff's document requests to both Klaerner and Tricida on June 12, July 2, September 12, September 16, October 11, and October 21, 2024. Block Decl. at ¶9.  The Settling Parties also met and conferred with Tricida's Liquidating Trustee on October 23, 2024. *Id.* at ¶10 .

On September 23, 2024, in response to Lead Plaintiff's subpoena to Tricida, the Settling Parties filed an additional joint letter addressing Defendant's request for a protective order to prevent Tricida's Liquidating Trustee from producing documents. Dkt. 185. Both discovery disputes were referred to Magistrate Judge Lisa J. Cisneros. Dkt. 170. Judge Cisneros issued an Order Regarding Discovery Letter Briefs on October 10, 2024. Dkt. 189. In that Order, Judge Cisneros limited the scope of Defendant Klaerner's document production but declined to limit the

scope of Tricida's production, except to ensure that Klaerner would have an opportunity to screen that production for his own attorney-client communications. Dkt. 189 at 1.

Defendant was ordered to produce documents consistent with Judge Cisneros's order beginning no later than October 24, 2024 and concluding no later than November 15, 2024. *Id.* at 17-18. Defendant Klaerner made his first production of documents to Lead Plaintiff on October 18, 2024 and his second production on November 1, 2024. On October 24, 2024, the Settling Parties filed a Stipulation Regarding Privilege Screening Process for Tricida's Production pursuant to the Court's Order. Dkt. 198.

On October 22, 2024, Defendant Klaerner filed a Motion for Relief from Non-Dispositive Pretrial Order of Magistrate Judge, requesting that the Court set aside Judge Cisneros's decision regarding the Tricida production as "clearly erroneous or contrary to law." Dkt. 196. By operation of the local rules, that motion was deemed denied after the Court determined not to ask for briefing by November 5, 2024.

## C.    Settlement Negotiations

The Settling Parties participated in formal mediations on April 9, 2024 and November 4, 2024. Block Decl. at ¶¶19, 23. Michelle Yoshida of Phillips ADR served as mediator. *Id.* at ¶ 19. Ms. Yoshida has over fifteen years of experience as a mediator and previously was a trial attorney in private practice, litigating complex business matters.[6] The Settling Parties did not reach an agreement at the first session on April 9, 2024. *Id.* at ¶21. In October 2024, the Parties reengaged Ms. Yoshida to help facilitate a settlement and conducted additional negotiations with Ms. Yoshida at a formal mediation on November 4, 2024. *Id.* at ¶22. At the conclusion of the November 4, 2024 mediation session, the Settling Parties reached an agreement in principle to settle the Litigation for the Settlement Amount, subject to the negotiation of the terms of a Stipulation and Agreement of Settlement, and approval by this Court.

---

[6] Ms. Yoshida's Bio states in part that Ms. Yoshida "has been involved in the mediation of over five hundred disputes, involving a myriad of diverse matters, including financial and accounting cases, securities and derivative matters, insurance coverage, regulatory matters, professional liability, ERISA, and trustee issues." *Michelle Yoshida: Mediator/Arbitrator*, Phillips ADR (last visited December 12, 2024), https://phillipsadr.com/our-team/michelle-yoshida/.

## II.    THE SETTLEMENT AGREEMENT

### A.    Settlement Consideration

The Settlement Agreement provides that Defendant Klaerner will pay or cause to be paid consideration of $14,250,000.00 (the "Settlement Amount") in cash into an Escrow Account for the benefit of the Class. The Settlement Amount, after the deduction of any attorneys' fees and Litigation Expenses provided for in the Stipulation or approved by the Court and less Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions (the "Net Settlement Fund"), will be distributed among Class Members who timely submit valid Proof of Claim and Release Forms ("Authorized Claimants"), in accordance with the Plan of Allocation set forth in the Stipulation and Notice. *See* Ex. A-1 at 9-14.

### B.    Settlement Class and Claims

There are no differences between the Class as certified by the court and the Class that will be entitled to share in the Settlement, except that certain individuals who are presently members of the Class may request exclusion.

As a condition of the Settlement Agreement, Lead Plaintiff and the Class will release the claims this Court certified the class to pursue, *see* Dkt. 188, specifically, Exchange Act Section 10(b) and 20(a) claims arising from statements made on the May 7, 2020 earnings call as against Defendant. Additionally, Lead Plaintiff and the Class will release all claims that could have been asserted in this action, or in any other action, that relate in any way to both: (a) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to in this action, or which could have been alleged in this action, and (b) the purchase, acquisition, holding, sale, or disposition of Tricida securities by any Class Member during the Class Period, *see* Stipulation ¶1.23, against all Released Defendant Parties, *see* Stipulation ¶1.24.  There are no differences between the claims to be released and the claims certified for class treatment. No other cases will be affected by the settlement.

### C.    Settlement Administration

The Claims Administrator will calculate each Authorized Claimant's claim amount based on the information each Class Member supplies in her or his Proof of Claim and Release. The Net

Settlement Fund will be allocated *pro rata* pursuant to the Plan of Allocation and based on the amount of each Authorized Claimant's Recognized Claim as calculated by the Claims Administrator after the Effective Date. Defendants do not have a reversionary interest in the Net Settlement Fund unless the settlement is terminated. *See* Stipulation ¶6.8. Under the proposed Plan of Allocation, any class member who submits a claim form and has at least some recognized loss will receive a minimum $10 payment.

Lead Plaintiff has selected Kroll for Court approval as Claims Administrator. Kroll was selected after providing a competitive quote for notice and administration services. Lead Plaintiff believes the selection of Kroll as Claims Administrator represents the most efficient and, in terms of administrative expenses, cost-effective means of providing notice to the class. Lead Counsel has engaged Kroll to serve as notice or claims administrator once over the past two years. *See* Block Decl. at ¶23.

Kroll estimates that 20% of potential Class Members who receive a Notice will submit a claim. *Id.* at ¶24. Kroll based its estimate on its experience with settlements in federal securities class actions.

Lead Plaintiff anticipates Notice and Settlement Administration Expenses of no greater than $200,000. *See* Stipulation ¶3.8. Lead Plaintiff believes these costs are reasonable as they amount to less than 2% of the Settlement Amount. The Notice and Administrative Expenses will be paid from the Settlement Fund.

### D. Attorneys' Fees

Lead Counsel expects to apply to the Court for an award of attorneys' fees in an amount not to exceed 27.5% of the Settlement Fund. This represents at most a 2.06 multiplier over Lead Counsel's current estimated lodestar of approximately $1.9 million. Block Decl. at ¶25. To date, Lead Counsel has billed over 2,500 hours in this action. *Id.* In addition, Lead Counsel will seek payment in an amount not to exceed $400,000 for Litigation Expenses reasonably incurred while prosecuting this action.

### E.    Cy Pres Awardee

Defendants will not have a reversionary interest in the Net Settlement Fund in the event there is any balance remaining after the distribution. Instead, Lead Counsel will make further distributions to Authorized Claimants until the balance remaining in the Net Settlement Fund is *de minimis*. *See* Stipulation at ¶6.8. At that point, any remaining balance, subject to the Court's approval, will be donated to the Bluhm Legal Clinic Center for Litigation and Investor Protection at Northwestern University Pritzker School of Law.

### F.    Class Action Fairness Act (CAFA) Notice

Defendant shall be responsible for determining the identity of those who will receive CAFA Notice and the form such notice shall take. Defendant will, at no expense to the Class or Lead Counsel, serve proper notice of the Settlement Agreement under CAFA no later than ten days after the Settlement Agreement is filed with the Court.

### G.    Past Distributions

As an example of a prior settlement in which Block & Leviton served as Co-Lead Plaintiffs' Counsel, and which has been fully administered, Lead Counsel, consistent with the Court's guidance, provides information about *Odeh v. Immunomedics, Inc., et al.*, No. 2:18-cv-17645-ESK (D. N.J.) which received final approval from the United States District Court for the District of New Jersey on June 15, 2023 and which has now been fully distributed. The details concerning the distribution of that settlement are summarized below.

| | |
|---|---|
| Total # Of Class Members | 44,091 notices were sent to potential class members |
| Settlement Consideration | $40,000,000 |
| Total # of Class Members to Whom Notice was Sent | 44,091 |
| Method(s) of Notice | Notice packets via first-class mail; Wall Street Journal; PR Newswire; DTC Lens |
| # (and %) of Claims Forms Submitted | 8,097 (18%) |
| Average Recovery per Claimant | $3,493.23 per Claimant; $8,891.75 per Authorized Claimant |
| Amounts Distributed to *Cy Pres* | $0 |
| Administrative Costs | $503,846.07 |
| Attorneys' Fees Awarded | $11,800,000 |
| Attorneys' Costs and Expenses Awarded | $591,035.89 |

**ARGUMENT**

The Ninth Circuit has recognized a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[A] full fairness analysis is unnecessary" at the preliminary approval stage. *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 665 (E.D. Cal. 2008) (quoting *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at \*9 (E.D. Cal. June 13, 2006)). Rather, a Court may grant preliminary approval if a settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2022 WL 307942, at \*6 (N.D. Cal. Feb. 2, 2022). "Courts lack the authority, however, to 'delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety.'" *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2021 WL 5447008, at \*8 (N.D. Cal. Nov. 22, 2021) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

> **H.      The Settlement Agreement Is the Result of Arm's Length Negotiations Conducted in Good Faith Between Experienced Counsel and Mediated by a Professional Mediator.**

The record demonstrates that the Settlement Agreement is not collusive. The Settlement Agreement was the result of good-faith, adversarial negotiations and over two and a half years of litigation. The parties, each represented by "experienced counsel familiar with the applicable law, class action litigation, and the facts of this case," reached an arms-length agreement "with the assistance of an experienced mediator." *Juul Labs*, 2022 WL 307942, at \*6; *see also Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at \*4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). The Settlement Amount was reached at the recommendation of the mediator, Michelle Yoshida of Phillips ADR, and only at the end of a second day of mediation. *See* Block Decl. at ¶19-22. The Settling Parties vigorously litigated this action for two and a half years, including during the period between mediation sessions. *See Supra* Section I.B. During the mediation

process, the parties fully explored the strengths and weaknesses of their litigation positions. In part because of these differing views, the initial mediation session was unsuccessful. *Id.* Such a "breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature." *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005). The Settlement Agreement was reached only after nearly seven more months of contentious litigation, including hard-fought motion practice and discovery.

I.      **The Settlement Agreement Has No Obvious Deficiencies and Does Not Grant Preferential Treatment to Lead Plaintiff or Any Segment of the Class.**

Preliminary approval is appropriate where a settlement "has no obvious deficiencies [and] does not improperly grant preferential treatment to class representatives or segments of the class." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd*, 157 F Supp 2d 561, 570 n. 12 (E.D. Pa. 2001)). Here, no segment of the Class will receive favorable treatment. An Authorized Claimant with any Recognized Loss Amount greater than zero is entitled to a Minimum Distribution Amount of $10.00. The Net Settlement Fund will be allocated among all Authorized Claimants whose Distribution Amount is $10.00 or greater on a *pro rata* basis based on the relative size of their Recognized Claims. *Stipulation*, Ex. A-1. at 9-14;  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries"). As with the other Class Members, Lead Plaintiff will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation. An Authorized Claimant with any Recognized Loss Amount greater than zero is entitled to a minimum Distribution Amount of $10.00. *Stipulation*, Ex. A-1. at 9-14.

In scrutinizing settlement agreements for collusion, courts in the Ninth Circuit examine "whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a '"clear sailing" arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel),' and whether the parties agree to a reverter that returns unclaimed funds to the defendant." *Hampton v. Aqua Metals, Inc.*, No. 17-CV-07142-HSG, 2021 WL 4553578, at *8 (N.D. Cal. Oct. 5, 2021) (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d

1035, 1049 (9th Cir. 2019)). None of these indicators is present here. The Stipulation does not contain a "clear sailing" agreement and is non-reversionary. Lead Counsel's anticipated request of 27.5% of the common fund does not amount to a disproportionate distribution of the settlement, especially considering the excellent result achieved for the class, *see Infra* Section III.C., and the substantial motion practice required in this action. *Fleming*, 2021 WL 5447008, at *9 (finding award of 30% to be reasonable in light of "significant results" and extent of motion practice); *Juul Labs*, 2022 WL 307942, at *6 (finding fee request of 42% of settlement fund was not disproportionate for purposes of preliminary approval).

In class actions, "Class Counsel is also entitled to recover 'those out-of-pocket expenses that would normally be charged to a fee paying client.'" *Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *8 (N.D. Cal. Nov. 5, 2021) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Accordingly, Lead Counsel's anticipated request for Notice and Administration Expenses, not to exceed $500,000, likewise does not amount to a disproportionate distribution of the settlement.

**J.     The Settlement Agreement Falls Within the Range of Reasonableness and Warrants Notice and a Hearing on Final Approval.**

For the purposes of preliminary approval, "the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *West*, 2006 WL 1652598, at *11 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982)). To determine if a settlement is within the range of reasonableness, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Fleming*, 2021 WL 5447008, at *10–11 (quoting *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *1 (N.D. Cal. Nov. 21, 2018)). In making this analysis, a Court "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). The Settlement Amount, $14.25 million, is well within the range of reasonableness, considering the Class's realistic recovery and the risks of continued litigation.

With the aid of damages experts, Lead Plaintiff and Lead Counsel took into consideration the Class's likely recoverable damages when negotiating the Settlement Agreement. *See* Block Decl. at ¶18. Lead Plaintiff asserted that if the class prevailed on all of its claims at trial, damages would be as high as $215 million. Defendant's position was that, using a plaintiff-style damages analysis damages might only be as high as $44 million (if at trial the class period were shorter than currently defined) but, Defendant would argue that there were no damages or that damages were less than $44 million.

Lead Plaintiff, in consultation with his expert, believes it would have been difficult for the Class to have obtained relief at trial in an amount approaching the largest of those figures. Lead Plaintiff believes that his case is strong but acknowledges that there were risks involved in further litigation. For example, Defendant's arguments about price impact in their opposition to class certification highlight such risks. Defendant maintained that the stock price declines following the disclosures Lead Plaintiff alleges corrected his misstatements were not indicative of inflation maintained in the stock price by Defendant's May 7, 2020 statements. Defendant argued that the relevant "truth" entered the market no later than August 6, 2020, the day that Tricida published its Form 10-Q, which Defendant claimed "provided investors with exactly the information Plaintiff complains was concealed on May 7." Dkt. 162 at 5. Based on his expert's analysis, Defendant contended that the challenged statements "could not have impacted Tricida's stock price" later than August 6, 2020. *Id.* at 10.

In its class certification order, this Court rejected Defendant's argument that price impact could not be proven beyond August 6, 2020. Dkt. 188 at 18, but also held that four out of the five alleged disclosures were not fully corrective. *Id.* at 17-10. Although the Court held that the February 25, 2021 press release was "corrective," "new," and "value-relevant," *id.* at 20, it specifically cautioned that "[a]ny findings of fact in this decision are cabined to the class certification analysis." *Id.* at 13. While the inquiry into price impact at the class certification stage is distinct from proving loss causation or materiality at trial, this Court also recognized that "[i]n key ways, proving a lack of price impact under *Halliburton II* implicates arguments and evidence required to prove merits issues . . ." *Id.* at 10. Defendant's challenges to Lead Plaintiff's alleged

corrective disclosures would inevitably resurface at trial to implicate loss causation, and, consequently, recoverable damages. At trial, Lead Plaintiff's claims would be the subject of complex testimony, including testimony offered by Defendant's experts that would conflict with Lead Plaintiff's expert analysis. Such a "battle of the experts" would necessarily involve substantial expenses and risks. *See, e.g., Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky") (citation omitted); *Juul Labs*, 2022 WL 307942, at *4 (holding that proposed settlement was fair, reasonable, and adequate in part because there would have been "a battle of the experts regarding . . . the computation of damages.").

Although Lead Plaintiff remains confident in his position in response to these arguments, they pose undeniable risks. Any one of these arguments, if successful, could have resulted in the claims at issue being severely curtailed or even eliminated. *See, e.g., In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (holding that key risks the class would have faced at trial, including "loss causation and damages challenges, and the risks inherent in a 'battle of the experts' of complex economic theories in a jury trial," weighed in favor of settlement.).

Even if the Class prevailed at summary judgment and trial, Defendant would be entitled to appeal and recovery could be years away. *See Fleming*, 2021 WL 5447008, at *11. Moreover, it is entirely possible that Lead Plaintiff's claims would fail altogether at summary judgment or trial and the Class would recover nothing. *See, e.g.,* Order Granting Defendants' Motion for Summary Judgment, *Brokop v. Farmland Partners Inc.*, No. 18-cv-02104-DME-NYW (D. Colo. Apr. 5, 2022) (granting defendants' motion for summary judgment and dismissing securities fraud class action with prejudice).

Furthermore, this case has been proceeding since 2021, and given Tricida's 2023 bankruptcy, has proceeded since then against only an individual former officer of Tricida. Under the circumstances, even complete success on all claims at trial could be severely hampered by what

the remaining available insurance would be at that time and Defendant's ability to pay any judgment.[7] Accordingly, the Settlement Amount is an excellent, immediate, and guaranteed result for the Class and therefore well within the range of reasonableness.

When compared to the total possible, but exceedingly unlikely, recovery of $215 million, the Settlement Agreement provides for recovery of at least 6.6% of estimated damages, which is well within the range of reasonableness and significantly greater than the average recovery in a securities class action. *See Vataj*, 2021 WL 5161927, at *6 (approving securities settlement of 2% of estimated damages as "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements."). Additionally, at trial, the class period and recoverable price declines could be smaller and fewer than currently defined. For example, Defendant estimated a plaintiff-style damages figure of $44 million for a class period ending July 15, 2020, and Defendant would have further arguments (including disaggregating confounding factors) that would potentially further reduce damages. Compared to the $44 million figure the Settlement provides for a recovery of 32% of estimated damages—an exceptional result. For comparison, based on its own analysis of Securities fraud class actions such as this one, Cornerstone Research found that in 2023 the median settlement in the pharmaceuticals industry was $8.5 million, or about 3.9% of damages.[8] Accordingly, given the uncertainties and risks inherent in litigating through summary judgment and trial, the Settlement Agreement is reasonable. *See Aqua Metals*, 2021 WL 4553578, at *10 (granting preliminary approval where risks included that "Defendants dispute the extent to which [the] stock price decline was attributable to the alleged fraud, as opposed to other company-specific bad news."); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007) ("Based on the risk of summary judgment . . . and the anticipated expense and complexity of further litigation, the court cannot say that the proposed settlement is obviously deficient or is not 'within the range of possible approval.'").

---

[7] Given Tricida's bankruptcy, applicable D&O insurance, which was in a limited amount, was the most readily available source of a recovery.
[8] *See Securities Class Action Settlements: 2023 Review and Analysis*, CORNERSTONE RESEARCH, https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf

Moreover, Lead Counsel's informed recommendation to settle "should be given a presumption of reasonableness." *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D.Cal.1979)). That the settlement negotiations occurred at an advanced stage of the litigation—after two motions to dismiss, *see* Dkts. 76, 128, after the Court certified the Class, Dkt. 188, and with less than three months left of discovery, *see* Dkt. 171 (setting February 28, 2025 as close of fact discovery)—indicates that the Settlement Agreement is not collusive and that Lead Counsel understood the case's merits. *See Juul Labs*, 2022 WL 307942, at *6 (explaining that settlement occurring after extensive litigation and discovery indicates lack of collusion). Lead Plaintiff actively litigated discovery disputes and received over 52,000 documents from Defendant and third parties. Defendant's first production of documents to Lead Plaintiff was made on October 18, 2024 and his second production on November 1, 2024. Block Decl. at ¶7. Lead Counsel reviewed thousands of documents in total, including documents produced by Defendant, the FDA, and other third parties. *Id.* at ¶3-17. Lead Counsel therefore had an informed view of the merits and risks of this action and Lead Counsel's recommendation to settle this action should be given substantial deference.

Lead Plaintiff, having considered the risks of continued litigation and the reasonableness of the Settlement Agreement's terms, respectfully submits that the Settlement Agreement is fair and should be granted preliminary approval.

### K. The Court Should Approve the Form of Notice and Plan for Providing Notice to the Class and set a Final Approval Hearing Date.

The form, content, and plan for providing the proposed Notice and Summary Notice are reasonably calculated to inform Class Members of the terms of the Settlement Agreement and the options available to them. *See* Stipulation, Ex. A-1. In the Ninth Circuit, "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *De La Torre v. CashCall, Inc.*, No. 08-CV-03174-MEJ, 2017 WL 2670699, at *11 (N.D. Cal. June 21, 2017) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Here, the Notice is "written in plain English [and] are easy to comprehend." *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-CV-00603-EJD, 2019 WL 6111378, at *5 (N.D. Cal. June 13, 2019). The Notice features a question-and-answer format that sets out the relevant information clearly and answers most questions Settlement Class Members are likely to have, but also provides contact information for Lead Counsel and the Claims Administrator should Class Members have any further questions. *See State of California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *7 (N.D. Cal. Aug. 29, 2014) (approving notice "consist[ing] of a series of questions and answers" that also "provides the contact information for the lawyers representing each party."). Among other disclosures, the Notice objectively and neutrally explains the nature of this action, the definition of the Class, the binding effect of Final Judgment, and the procedures for seeking exclusion, objecting, and submitting claims. *See West*, 2006 WL 1652598, at *11 (finding notice that explained class members' options was adequate). Courts have found that comparable notice programs meet the requirements of due process and Rule 23. *See, e.g.*, *Portal Software*, 2007 WL 1991529, at *7 (holding that "notice by mail and publication is the 'best notice practicable under the circumstances,' as mandated by FRCP 23(c)(2)(B)") (citation omitted).

Furthermore, pursuant to the PSLRA, the Notice: states the Settlement Amount; provides a statement from the Settling Parties concerning issues about which they disagree; states the amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides Lead Counsel's contact information; and provides a statement explaining why the Settling Parties are proposing the settlement. *See* 15 U.S.C. §78u-4(a)(7). The Notice will also disclose the date, time, and location of the Settlement Hearing.

The Court should also find the plan for disseminating Notice to be adequate. Rule 23 requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal". Fed. R. Civ. P. 23(e)(1)(B); *see also Vataj*, 2021 WL 5161927, at *4 ("Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice."). Lead Plaintiff believes the plan for providing Notice is the best practicable plan under the circumstances. *See CashCall*, 2017 WL 2670699, at *11 (approving plan of notice substantially the "same as that which [was] used to notify Class

Members that the Court had Certified the Class."). Individual notices will once again be "sent to all class members 'whose names and addresses may be ascertained through reasonable effort.'" *Aqua Metals*, 2021 WL 4553578, at *10 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)).

If the Court grants preliminary approval, it must also set a final approval hearing date ("Settlement Hearing"), dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or objections to the Settlement Agreement. Lead Plaintiff respectfully proposes the following schedule for the Court's consideration, as agreed to by the Settling Parties and set forth in the [Proposed] Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice to the Class ("PAO"), attached as Exhibit A to the Stipulation:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class Members ("Notice Date") | No later than 20 days after entry of the PAO |
| Deadline for filing final approval papers | 49 days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections | 35 days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 days prior to the Settlement Hearing |
| Settlement Hearing | At least 100 days after the PAO is signed and entered, at the Court's convenience |
| Deadline for submitting Proof of Claim and Release Forms | 90 calendar days after the Notice Date |

## III.    CONCLUSION

For the reasons provided above, the Court should grant preliminary approval of the Settlement Agreement, direct notice to the Class, and schedule a hearing on final approval.

March 3, 2025                                  Respectfully submitted,

                                              **Block & Leviton LLP**

                                              */s/ Jeffrey C. Block*
                                              Jeffrey C. Block, *pro hac vice*
                                              Michael D. Gaines (*pro hac vice*)
                                              260 Franklin Street, Suite 1860
                                              Boston, MA 02110
                                              (617) 398-5600 phone
                                              jeff@blockleviton.com
                                              jake@blockleviton.com

                                              Jacob A. Walker (SBN 271217)
                                              400 Concar Drive San Mateo, CA 94402
                                              (650) 781-0025 phone
                                              jake@blockleviton.com

                                              *Counsel for Lead Plaintiff and the Class*