Jeffrey C. Block, *pro hac vice*
Michael D. Gaines, *pro hac vice*
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
michael@blockleviton.com

Jacob A. Walker (SBN 271217)
**Block & Leviton LLP**
400 Concar Drive
San Mateo, CA 94402
(650) 781-0025 phone
jake@blockleviton.com

*Attorneys for Lead Plaintiff*
*Jeffrey M. Fiore and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| MICHAEL PARDI, *Individually and on Behalf of All Others Similarly Situated,*<br><br>Plaintiff,<br><br>v.<br><br>TRICIDA, INC. and GERRITT KLAERNER,<br><br>Defendants. | Case No.: 4:21-cv-00076-HSG<br><br>**Lead Plaintiff's Notice of Motion and Motion for Final Approval of Settlement and Plan of Allocation and Memorandum of Points and Authorities in Support Thereof**<br><br>**Date:**       **October 16, 2025**<br>**Time:**       **2:00 p.m.**<br>**Courtroom:   2, 4th Floor**<br><br>**Hon. Haywood S. Gilliam, Jr.** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Contents**

**NOTICE OF MOTION AND MOTION** ................................................................. 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................................... 2

I.   STATEMENT OF ISSUES TO BE DECIDED ..................................................... 2

II.  PRELIMINARY STATEMENT ............................................................................. 2

III. LEGAL STANDARD ............................................................................................. 6

IV.  THE SETTLEMENT WARRANTS FINAL APPROVAL ...................................... 7

   A.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Class and the
Settlement Results from Arm's-Length Negotiations. ................................................. 7

   B.   The Settlement Provides Adequate Relief to the Class. ...................................... 11

      1.   The risk, expense, complexity, and likely further duration of continued litigation favors
the Settlement. ......................................................................................................... 11

      2.   The amount offered in the Settlement is fair and adequate. .......................... 14

      3.   The reaction of Class Members favors settlement. ....................................... 16

      4.   The remaining Rule 23(e)(2)(C) factors support Final Approval. ................ 17

   C.   The remaining *Churchill* factors favor Final Approval. .................................... 18

V.   THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS ........................ 19

VI.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND TREATS CLASS
MEMBERS EQUITABLY ........................................................................................... 20

VII. CONCLUSION ........................................................................................................... 20

## Table of Authorities

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ........................................................................................ 12

*Baron v. HyreCar Inc.*,
    2024 WL 3504234 (C.D. Cal. July 19, 2024) ................................................................ 4

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) .................................................................................... 6, 7

*Churchill Vill. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................................. passim

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ...................................................................................... 6

*Edenborough v. ADT, LLC*,
    2019 WL 4164731 (N.D. Cal. July 22, 2019).............................................................. 16

*Fleming v. Impax Lab'ys Inc.*,
    2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ........................................................... 16

*Franco v. E-3 Sys.*,
    2021 WL 2333851 (N.D. Cal. June 8, 2021) ................................................................ 7

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................................... 12

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ...................................................................................... 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 6

*Hardy v. Embark Tech.*, Inc.,
    2023 WL 6276728 (N.D. Cal. Sept. 26, 2023) ............................................................ 4

*Hicks v. Morgan Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005). ..................................................... 11, 13

*Hunt v. Bloom Energy Corp.*,
    2023 WL 7167118 (N.D. Cal. Oct. 31, 2023)............................................................... 4

*In re Apple Computer Sec. Litig.*,
    1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................................ 14

*In re Aqua Metals, Inc. Sec. Litig.*,
    2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ........................................................ passim

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................................ 14

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 2554232 (N.D. Cal. May 3, 2019) ............................................................... 5

*In re Extreme Networks, Inc. Sec. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019) ...................................................... passim

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) ...................................................................... 14

*In re ImmunityBio, Inc. Sec. Litig.*,
    2025 WL 1686263 (S.D. Cal. June 16, 2025) ...................................................... 3, 20

*In re Lyft, Inc. Sec. Litig.*,
    2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) .......................................................... 4

*In re Magma Design Automation, Inc. Sec. Litig.*,
    2009 WL 10696109 (N.D. Cal. Mar. 27, 2009) .................................................. 12, 13

*In re NCAA Ath. Grant-in-Aid Cap Antitrust Litig.*,
    768 F. App'x 651 (9th Cir. 2019) .......................................................................... 17

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................. passim

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019) ......................................................... 18

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    2008 WL 11338455 (S.D. Cal. Dec. 19, 2008) ........................................................ 20

*In re Tesla Inc., Sec. Litig.*,
    2023 WL 4032010 (N.D. Cal. June 14, 2023), *aff'd sub nom. In re Tesla, Inc., Sec. Litig.*, 2024
    WL 4688894 (9th Cir. Nov. 6, 2024) ..................................................................... 14

*Karl v. Zimmer Biomet Holdings, Inc.*,
    No. C 18-04176 WHA, 2022 WL 658970 (N.D. Cal. Mar. 4, 2022) ................................. 6, 18

*Kuraica v. Dropbox, Inc.*,
    2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) ........................................................ 10

*La Fleur v. Med. Mgmt. Int'l, Inc.*,
    2014 WL 2967475 (C.D. Cal. June 25, 2014) .................................................... 10

*Lymburner v. U.S. Fin. Funding, Inc.*,
    2012 WL 398816 (N.D. Cal. Feb. 7, 2012) ...................................................... 10

*Mauss v. NuVasive, Inc.*,
    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ..................................................... 20

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 8, 14

*Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) .......................................... 12, 13, 15

*Ochinero v. Ladera Lending, Inc.*,
    2021 WL 4460334 (C.D. Cal. July 19, 2021) ......................................... 8, 10, 16

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................. 7, 14

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ................................................................... 14

*Roberti v. OSI Sys, Inc.*,
    2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ................................................. 10, 11

*Satchell v. Fed. Express Corp.*,
    2007 WL 1114010 (N.D.Cal. Apr.13, 2007) ..................................................... 10

*Torrisi v. Tuscan Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ....................................................................... 7

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ................................................. 9, 16, 18

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
    2018 WL 828199 (S.D. Cal. Feb. 9, 2018) ................................................... 6, 8

**RULES**

Fed. R. Civ. P. 23(c) ............................................................................ 18, 19

Fed. R. Civ. P. 23(e) ...................................................................... passim

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 16, 2025 at 2:00 pm, or the nearest available date on which counsel may be heard, before the Honorable Haywood S. Gilliam, Jr. in Courtroom 2, 4th Floor of the above-referenced Court, located at 1301 Clay Street, Oakland, CA 94612, Lead Plaintiff Jeffrey M. Fiore ("Lead Plaintiff") will, and hereby does, move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) granting final approval of the proposed class action settlement on the terms set forth in the Stipulation and Agreement of Class Action Settlement dated March 3, 2025 (the "Stipulation"); and (ii) approving the proposed Plan of Allocation for the net proceeds of the Settlement.[1]

This motion is based upon: (i) this Notice of Motion; (ii) the Memorandum of Points and Authorities in support thereof; (iii) the Declaration of Jacob A. Walker In Support Of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Walker Declaration"); (iv) the Stipulation; (v) the pleadings and records on file in this Action; and (vi) other such matters and argument as the Court may consider at the hearing of this motion. This motion is made pursuant to the Court's May 16, 2025 Order Granting Motion for Preliminary Approval (the "Preliminary Approval Order"). Dkt. 220.

Pursuant to this Court's Scheduling Order, Dkt. 222, any objections and requests for exclusion from the Class must be filed by September 11, 2025. Lead Counsel will address objections, if any, in the reply brief to be filed October 9, 2025.[2]

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings set forth in the Stipulation. Dkt. 211-2. Citations to "¶" are to the Second Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws, Dkt. 115.

[2] In accordance with the Northern District's Procedural Guidance for Class Action Settlements, Lead Counsel will also provide the Court with the number of undeliverable notices and claim packets, the number of valid claims, and the number of Class Members who opted out, if any. As instructed by the Court, Dkt. 220, the Parties will include a joint proposed order and joint proposed judgment consistent with the Court's recent securities case decisions, when submitting their reply in support of final approval.

A [Proposed] Judgment Approving Class Action Settlement and [Proposed] Order approving Plan of Allocation will be submitted with Lead Plaintiff's reply submission, after the deadline for Class Members to request exclusion from the Class or object to the Settlement and/or Plan of Allocation has passed.

MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff, on behalf of himself and the certified Class, submits this memorandum of points and authorities in support of his motion seeking an Order: (i) granting final approval of the proposed class action settlement on the terms set forth in the Stipulation and Agreement of Class Action Settlement dated March 3, 2025 ("Stipulation"); and (ii) approving the proposed Plan of Allocation for the distribution of the net proceeds of the Settlement.

## I.    STATEMENT OF ISSUES TO BE DECIDED

1)    Whether the Court should grant final approval to the proposed Settlement of this action for the sum of $14,250,000.

2)    Whether the Court should approve the proposed Plan of Allocation for the distribution of the net proceeds of the Settlement.

## II.   PRELIMINARY STATEMENT

Lead Plaintiff has recovered $14.25 million, in cash, for the benefit of the Class through this action. Under the facts and circumstances of this case, a $14.25 million recovery is more than fair, reasonable and adequate, and warrants the Court's approval.

This case centers around misstatements and material omissions concerning Tricida's attempt to obtain approval from the United States Food and Drug Administration ("FDA") for its drug veverimer, to treat chronic kidney disease. This action charges that on Tricida's May 7, 2020 earnings call, Defendant Klaerner misled investors by: (1) disclosing only one outstanding review issue regarding the FDA's potential approval for veverimer discussed at the May 1, 2020 meeting with the FDA—the magnitude and durability of the treatment effect—while concealing the FDA's other two "significant" concerns about the applicability of the clinical data to the U.S. population; and (2) stating that the reason the FDA was not planning on holding an Advisory Committee meeting to review veverimer was "the logistical challenges posed by COVID-19." ¶26.

This Settlement was agreed to after the Court denied, in part, Defendant's motion to dismiss the Second Amended Complaint, after the Court certified the Class under Fed. R. Civ. P. 23, and after Defendant and third parties, including the FDA, produced relevant documents. The Parties had a full understanding of the strengths and weaknesses of their claims at the time they agreed to this Settlement.

While Lead Plaintiff believes his claims have merit, he recognizes the defenses Defendant would mount at both summary judgment and trial. On the merits, Defendant would argue that investors already knew veverimer was subject to risks associated with FDA approval, and that the omitted information was disclosed to investors long before the end of the Class Period. Defendant would also argue that he was not obligated to disclose the omitted information and had no intent, or motive, to mislead investors. For Lead Plaintiff, the FDA approval process would be a complex subject matter to present at trial. *See In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *14 (S.D. Cal. June 16, 2025) ("the complexity of the case is further corroborated by the technicality of the subject matter, requiring specialized knowledge with drug manufacturing and familiarity with applicable FDA regulations.").

The parties also disagreed on whether certain disclosures were "corrective" of the fraud and the size and scope of the damages. Defendant argued that the relevant "truth" entered the market no later than August 6, 2020, the day that Tricida published its Form 10-Q, which Defendant claimed "provided investors with exactly the information Plaintiff complains was concealed on May 7." Dkt. 162 at 5. Based on his expert's analysis, Defendant asserted that the challenged statements "could not have impacted Tricida's stock price" later than August 6, 2020. *Id.* at 10.

In the class certification order, this Court rejected Defendant's argument that price impact could not be proven beyond August 6, 2020, but also held that four out of the five alleged disclosures were not fully corrective. Dkt. 188 at 10-18. Although the Court held that the February 25, 2021 press release was "corrective," "new," and "value-relevant," *id.* at 20, it specifically cautioned that "[a]ny findings of fact in this decision are cabined to the class certification analysis." *Id.* at 13. While the inquiry into price impact at the class certification stage is distinct from proving

loss causation or materiality at trial, this Court also recognized that "[i]n key ways, proving a lack of price impact under *Halliburton II* implicates arguments and evidence required to prove merits issues . . . ." *Id.* at 10. Defendant's challenges to Lead Plaintiff's alleged corrective disclosures would inevitably resurface at trial to implicate loss causation, and, consequently, recoverable damages.

Lead Plaintiff's damages expert determined that, if Lead Plaintiff prevailed on all of his claims and if the jury agreed that each of the alleged corrective disclosures caused investors' losses, then total damages could reach as high as $215 million. When compared to the total possible recovery of $215 million, the Settlement provides for recovery of at least 6.6% of total estimated damages, which is well within the range of reasonableness and significantly greater than the average recovery in securities class actions and in similar cases involving the pharmaceutical and life sciences industry. Dkt. 211 at 17. If Klaerner prevailed at either summary judgment, or at trial —proving that full disclosure of the omitted information was revealed no later than August 6, 2021—then plaintiff-style recoverable damages could be as low as $44 million. Defendant would advance additional arguments (including disaggregating confounding factors) that could potentially further reduce damages. Compared to $44 million in potential recoverable damages, the Settlement provides for a recovery of 32% of estimated damages—an exceptional result. Given the uncertainties and risks inherent in litigating through summary judgment and trial, the Settlement is eminently fair, reasonable and adequate. *See, e.g., Baron v. HyreCar Inc.*, 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2024) (approving settlement for 2% of total damages); *Hunt v. Bloom Energy Corp.*, 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (same for 5.2% of damages); *Hardy v. Embark Tech.*, Inc., 2023 WL 6276728, at *8 (N.D. Cal. Sept. 26, 2023) (same for 1.1% of damages); *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (same for 3.2% of damages).

Further complicating this case and demonstrating the strength of the recovery is that Tricida filed for bankruptcy in 2023, leaving only Klaerner as the remaining defendant. While Klaerner had Directors & Officers ("D&O") insurance to provide coverage for the claims against him, the policy was for a limited amount and provided for the payment of defense costs and expenses. Thus,

the D&O policy was a wasting asset and the longer the case went on, the less (or even no) insurance would be available to satisfy the Class's claims.

Lead Plaintiff and Lead Counsel therefore believe that the Settlement confers substantial benefits upon the Class given the circumstances, and that the Settlement is in the best interests of the Class.

The Settlement is also the product of hard-fought, arms-length negotiations among experienced counsel. The Parties engaged Michelle Yoshida of Phillips ADR to serve as the mediator and facilitate settlement discussions. The Settling Parties participated in formal mediations on April 9, 2024 and again on November 4, 2024. Walker Decl. at ¶¶70-76. The Settling Parties did not reach an agreement at the first session on April 9, 2024. *Id.* at ¶75. After the Court certified the Class, the Parties reengaged Ms. Yoshida and then reached agreement to settle the action at the conclusion of the November 4, 2024 mediation session.

To date, Class Members by and large appear to support the settlement. The Court-appointed Claims Administrator, Kroll, mailed a total of 5,664 Notices and Claim Forms to Class Members and Nominee Account Holders and emailed 581 summary Notices to Class Members or nominees as of July 23, 2025. Walker Decl. at ¶86. Further, Broadridge Financial Services represented to Kroll that they sent 5,950 email notifications containing links to the Notice to customers that had previously elected to receive notification of potential settlements via email. *Id.* Kroll also posted the Notice and Claim Form on the Settlement Website, www.TricidaSecuritiesSettlement.com, and published the Summary Notice via PR Newswire on June 20, 2025. *Id.* at ¶76. To date, no Class Members have opted out since the Settlement was noticed. *Id.* at ¶81[3]. The Court's conclusion on preliminary approval is equally true now, as nothing has changed between May 16, 2025 and the present. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now.").

---

[3] Class members have until September 11, 2025 to either file objections or opt-out of the settlement. Lead Counsel will of course update the Court on the notice process as well as address any objections or opt-outs, with its reply brief.

## III.   LEGAL STANDARD

Rule 23(e)(2) requires a judicial finding that a settlement is "fair, reasonable, and adequate" as a condition of final approval. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir. 2020). Whether to grant such approval lies within the sound discretion of the district court, *see Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), guided by the Ninth Circuit's strong "[j]udicial policy [that] favors settlement in class actions." *Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018). As recently amended, Rule 23(e)(2) provides that a court should consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's-length;

(C)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Consistent with this guidance, the Ninth Circuit has long identified a set of "overlapping" factors known as the *Churchill*[4] factors.[5] *See Karl v. Zimmer Biomet Holdings, Inc.*, 2022 WL 658970, at *1 (N.D. Cal. Mar. 4, 2022). The Ninth Circuit "recently explained that the final fairness assessment must analyze the eight *Churchill* factors: (1) the strength of the plaintiff's case; (2) the

---

[4] *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004). These factors are also sometimes referred to as the "*Hanlon* factors" after *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).
[5] The Advisory Committee notes clarify that Rule 23's factors "are not intended to 'displace' any factors currently used by the courts," such as the *Churchill* factors, "but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2)).

suit's risk, expense, complexity, and the likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant (if any); and (8) the reaction of the class members to the proposed settlement." *Id.* (citing *Kim v. Allison*, 8 F.4th 1170, 1178–79 (9th Cir. 2021)). "District courts may consider some or all of these factors," *Campbell*, 951 F.3d at 1121, and "different factors may predominate in different factual contexts," *Torrisi v. Tuscan Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Courts should also determine whether notice of the settlement was adequate. *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *5 (N.D. Cal. Mar. 2, 2022).

"Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Franco v. E-3 Sys.*, 2021 WL 2333851, at *5 (N.D. Cal. June 8, 2021) (quoting *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014)).[6] As the Ninth Circuit has explained, a court's review of a private agreement to settle a lawsuit "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

## IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Class and the Settlement Results from Arm's-Length Negotiations.

The considerations of the first two Rule 23(e)(2) factors – adequacy of representation and whether the settlement is the product of arm's length negotiations, *see* Fed. R. Civ. P. 23(e)(2)(A)-(B) – "overlap with certain [*Churchill*] factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Extreme Networks*, 2019 WL

---

[6] Because the Class has already been certified, *see* Dkt. 188, this is not a case in which the court must apply elevated scrutiny. *C.f. Aqua Metals*, 2022 WL 612804, at *4.

3290770, at *7; *see also Ochinero v. Ladera Lending, Inc.*, 2021 WL 4460334, at *4 (C.D. Cal. July 19, 2021) ("Th[e adequacy] analysis includes 'the nature and amount of discovery' undertaken in the litigation.") (quoting Fed. R. Civ. P. 23(e)(2)(A) advisory committee's note to 2018 amendment). Courts have recognized a presumption of fairness where a settlement "follow[s] sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Velazquez*, 2018 WL 828199, at *5 (same).

Lead Plaintiff and Lead Counsel were zealous advocates for the Class, litigated the case to an advanced stage, and agreed to settle from a fully informed position. Lead Plaintiff's claims were typical of those of the Class and he shared the Class's interest in maximizing recovery. Lead Plaintiff contributed to the litigation by reviewing the relevant documents, staying apprised of developments in the case, providing Lead Counsel with information and materials regarding his investment, responding to document requests and interrogatories, sitting and preparing for his deposition, and conferring with Lead Counsel throughout the litigation, including in connection with settlement negotiations. *See* Walker Decl., Ex. 6.[7]

Lead Counsel, meanwhile, adeptly litigated the Class's claims. Among other things, Lead Counsel: drafted the factually detailed FAC; successfully argued against Defendant and Tricida's motion to dismiss the FAC; engaged in comprehensive document and written discovery involving tens of thousands of pages of documents from Defendant and third-parties; briefed two discovery disputes; worked closely with experts to analyze damages issues; carefully analyzed documents produced by the FDA to draft the SAC; researched, drafted, and filed a motion for leave to file the SAC; successfully argued against Defendant's motion to dismiss the SAC; won class certification; drafted and exchanged detailed mediation statements; attended two full-day mediation sessions;

---

[7] Moreover, the Rule 23(e)(2)(A) adequacy analysis "is 'redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively.'" *Hudson v. Libre Tech. Inc.*, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) (quoting *Newberg on Class Actions* § 13:48 (5th ed.)). Because the Court has already determined that Lead Plaintiff and Lead Counsel are adequate representatives of the Class, *see* Dkt. 188, "the adequacy factor under Rule 23(e)(2)(A) is also met." *Hudson*, 2020 WL 2467060, at *5.

engaged in protracted, extensive negotiations about the precise terms of the Settlement; and persuaded the Court to grant preliminary approval. *See* Walker Decl. at ¶126.

Lead Plaintiff's and Lead Counsel's vigorous prosecution of the case allowed them to reach a well-informed settlement with Defendant after years of litigation. When the Parties agreed in principle to settle this action, less than three months remained for fact discovery. *See* Dkt. 171 (setting February 28, 2025, as close of fact discovery). Lead Counsel had reviewed tens of thousands of documents and Defendant had already deposed Lead Plaintiff. *See* Walker Decl. at ¶¶47, 126; *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (holding that plaintiffs' "substantive review of the tens of thousands of documents" indicated that plaintiffs had "enough information to make informed decisions."). Lead Plaintiff also sought and received discovery from the FDA and other key third parties. Walker Decl. at ¶50. Lead Plaintiff and Lead Counsel therefore "had sufficient information to make an informed decision about the merits of the case." *Vataj v. Johnson*, 2021 WL 5161927, at *7 (N.D. Cal. Nov. 5, 2021).

This action also progressed through substantial motion practice, including two partially successful motions to dismiss, *see* Dkts. 76, 128, and a hotly contested class certification motion, *see* Dkt. 152. These and other disputes across about four years of litigation have previewed and illuminated the likely challenges the Class would face at summary judgment and trial. *See Aqua Metals*, 2022 WL 612804, at *5 (finding parties had substantial grounds to assess likelihood of success "after over three years of litigation and hard-fought negotiations"). For example, Defendant argued at class certification that his May 7, 2020 statements never impacted Tricida's stock price, and even if they did, the impact ended after August 6, 2020, Dkt. 162, demonstrating a strategy to defeat, or erode, the Class's recovery by asserting that investors knew the allegedly undisclosed facts. Additionally, Defendant has maintained that until the FDA makes a final determination, its communications are interim positions, and sponsors have no obligation to recite the details of regulatory back-and-forth to investors. *See* Dkt. 128. The extensive motion practice and discovery provided Lead Plaintiff and Lead Counsel with a strong foundation to assess the relative strengths and weaknesses of the Class's position, and by extension to adequately represent the Class's interests once formal settlement negotiations began.

Lead Plaintiff and Lead Counsel conducted settlement negotiations at arm's-length within the meaning of Fed. R. Civ. P. 23(e)(2)(B). As the Court has already found, none of the traditional signs of collusion are present here. Dkt. 220 at 9. The Settlement came from the sustained, good-faith bargaining initiated in response to this Court's ADR procedures. *See* Dkt. 148. The Settlement also bears the hallmarks of arm's-length negotiations. The Class was represented by counsel who have many years of experience successfully litigating securities class actions across the country, *see* Walker Decl., Ex. 3, and who had undertaken "sufficient discovery that enabled counsel to make educated decisions about the strengths and weaknesses of the case." *Lymburner v. U.S. Fin. Funding, Inc.*, 2012 WL 398816, at *3 (N.D. Cal. Feb. 7, 2012).

Further, the Settlement Amount was reached at the recommendation of an experienced mediator. *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *La Fleur v. Med. Mgmt. Int'l, Inc.*, 2014 WL 2967475, at *4 (C.D. Cal. June 25, 2014) ("Settlements reached with the help of a mediator are likely non-collusive."); *Roberti v. OSI Sys, Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) ("[A]ssistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Ochinero*, 2021 WL 4460334, at *5 ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests.") (quoting Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment) (alterations in original). Participating in a candid mediation contributed to the Parties' familiarity with one another's positions and strategies. *See Kuraica v. Dropbox, Inc.*, 2021 WL 5826228, at *6 (N.D. Cal. Dec. 8, 2021).

The initial mediation was unsuccessful. Walker Decl. at ¶75. It was only after the Parties continued to aggressively litigate this case over the course of about seven months, including briefing class certification and numerous discovery disputes, that the Parties agreed to attend a second mediation and ultimately settle this action for an amount formally recommended by the mediator, Michelle Yoshida of Phillips ADR. *Extreme Networks*, 2019 WL 3290770, at *7 (finding arm's-length settlement where negotiations occurred "through mediation sessions and follow-up

communications supervised by an experienced mediator"); *Roberti*, 2015 WL 8329916, at *3 (approving securities settlement where mediated negotiations continued for 1.5 months and finally agreed to mediator's recommendation of $15 million).

During the mediation process, the parties fully explored the strengths and weaknesses of their litigation positions. In part because of these differing views, the initial mediation session was unsuccessful. Such a "breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005). The Settlement was therefore the product of arm's-length negotiations, conducted by experienced counsel after substantial discovery, litigation, and bargaining. Lead Plaintiff and Lead Counsel decided to settle from a highly informed understanding of the merits, risks, and value of the action.

**B.     The Settlement Provides Adequate Relief to the Class.**

Rule 23(e)(2)(C), which overlaps substantially with the Ninth Circuit's established *Churchill* factors, instructs courts to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors such as the amount offered in the settlement and the reaction of class members. Fed. R. Civ. P. 23(e)(2)(C). Taking Rule 23(e)(2)(C)'s analysis into account, this Settlement provides adequate relief for the Class.

**1.     The risk, expense, complexity, and likely further duration of continued litigation favors the Settlement.**

Rule 23(e)(2)(C)(i) calls for substantially the same inquiry as the first *Churchill* factor, which examines "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." *Omnivision*, 559 F. Supp. 2d at 1041. Although Lead Plaintiff has confidence in the merits of his case, that confidence must be tempered by the fact that the Settlement is certain whereas "significant procedural hurdles remained" in litigation, including likely "summary judgment motion[s], *Daubert* motions, [trial] and appeals," each of which would simultaneously increase the cost of this litigation while also carrying the risk of reducing or wiping

out the class's recovery altogether. *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010).

Because "[s]ecurities actions in particular are often long, hard-fought, complicated, and extremely difficult to win," settlement is often preferable to protracted litigation with uncertain outcomes. *Extreme Networks*, 2019 WL 3290770, at *8. "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). More particularly, because "[p]roving and calculating damages require[s] a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law," courts have recognized that whether a class will prevail on damages "is inherently difficult to predict and risky." *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014); *see also In re Magma Design Automation, Inc. Sec. Litig.*, 2009 WL 10696109, at *2 (N.D. Cal. Mar. 27, 2009) (explaining damages issues are an "inherent difficulty" in the securities class action context).

In a recent securities case from this District, a court identified several "obstacles" standing in the way of the class's recovery that favored settlement, including "challenges to the material falsity of each alleged misstatement . . . loss causation and damages challenges, and the risks inherent in a 'battle of the experts' of complex economic theories in a jury trial." *Extreme Networks*, 2019 WL 3290770, at *8. The Class here faced the same challenges, as Defendant has consistently challenged falsity, scienter, and damages. Moreover, the fact that the *Extreme Networks* Court "narrowed the claims significantly through the motions to dismiss phase," just as this Court did, indicated that Lead Plaintiff could not take those challenges lightly. 2019 WL 3290770, at *8.

At trial, Lead Plaintiff would bear the burden of establishing that Defendant's May 7, 2020 statements were misleading for: (1) disclosing only one outstanding review issue discussed at the meeting with the FDA—the magnitude and durability of the treatment effect—while concealing the FDA's other "significant" concerns about the applicability of the clinical data to the U.S.

population; and (2) stating that the FDA was not planning on holding an AdCom due in part to the logistical challenges posed by COVID-19.

Success, of course, was not guaranteed. Defendant would argue, just as he did on the motion to dismiss, that there was no "bad news" to report on May 7, 2020, rather, there were only further interim discussions with the FDA, which were not required to be disclosed. Dkt. 135 at 7-8. Defendant also argued that Tricida disclosed the exact risk Lead Plaintiff claims was omitted – that there was "uncertainty about the degree of change from baseline blood bicarbonate that will translate into improved clinical outcomes," and that the FDA "may not agree that we have achieved the primary endpoint in our Phase 3 clinical trial, TRCA-301, to the magnitude or to the degree of statistical significance required." *Id.* at 8.

Aside from merits-based arguments, Defendant would have contested that any of Tricida's stock price declines were caused by any of the alleged misrepresentations or material omissions. *E.g.* Dkt. 181 at 1-4; *see also Aqua Metals*, 2022 WL 612804, at *5 (finding litigation risk where "Defendants dispute the extent to which [the company's] stock price decline was attributable to the alleged fraud, as opposed to other company-specific bad news."). This Court's decision in *Hicks* is informative. There, plaintiffs' expert calculated $265.8 million in total damages but defendants' experts put that figure at $40.9 million, asserting that the stock declines were largely "attributable to external market conditions" rather than the alleged misstatements. 2005 WL 2757792, at *7. As discussed, here Defendant's damages expert would argue either no damages or that damages would be, at most, $44 million. "Which expert would be believed by a jury-and to what extent-is highly unpredictable," the *Hicks* court opined, though it was reasonable to believe that the jury could have "give[n] substantial weight to the effect of independent market developments" and decided against the class. *Id.*; *see also Omnivision*, 559 F. Supp. 2d at 1041–42 ("A number of factors, including general market conditions . . . may have affected the portion of the damages attributable to Defendants' purportedly misleading statements."); *Magma Design*, 2009 WL 10696109, at *2 ("[At trial] there could be reasonable disagreement regarding what portion of losses incurred by Class Members was attributable to Defendants' conduct in relation to general market conditions."); *Nguyen*, 2014 WL 1802293, at *2 (approving securities settlement

where "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky") (citation omitted).

Finally, Defendant could have appealed any favorable result for the Class which, even if unsuccessful, would delay the Class's recovery by years. *See Omnivision*, 559 F. Supp. 2d at 1042; *In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal. June 14, 2023), *aff'd sub nom. In re Tesla, Inc., Sec. Litig.*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024) ("After a three-week trial in January 2023, the jury awarded a verdict for Defendants on all claims.").[8] The Settlement therefore provides an "immediate and certain award" as an alternative to protracted, uncertain litigation. *Id.*

### 2.    The amount offered in the Settlement is fair and adequate.

Evaluating a settlement's fairness requires comparing the value of the settlement to the amount a class likely could have recovered at trial, discounted for the risk, delay, and expense of continued litigation. *See Officers for Justice*, 688 F.2d at 629. As the Ninth Circuit has explained, because "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not judge settlements "against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. Thus, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527; *see also In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 626 (N.D. Cal. 2021), *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) ("All good trial lawyers and judges know that it is a fool's errand to predict a jury verdict.").

---

[8] Even success at trial is no guarantee of recovery in a securities class action. *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding $2.46 billion jury verdict after 13 years of litigation in part on loss causation grounds); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81.3 million jury verdict on loss causation grounds); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs).

Lead Plaintiff and Lead Counsel negotiated the Settlement in light of the Class's likely recoverable damages and believe the $14.25 million certain recovery is fair, reasonable and adequate given the risks and expenses of continued litigation and ability to recover higher amounts. *See* Walker Decl. at ¶¶93-101. Lead Plaintiff's damages expert estimated total maximum damages at $215 million, whereas Defendant's expert offered an estimate of plaintiff-style damages as no greater than $44 million. Plus, Defendant would have made further arguments at trial, including whether stock declines after August 6, 2021 were even caused by Defendant's misrepresentations, which would have put the Class's recovery at additional risk. Courts have recognized that the question of how a jury might resolve damages issues in a securities case is "inherently difficult to predict and risky." *Nguyen*, 2014 WL 1802293, at *2.

When loss causation is considered, the Settlement is more than adequate. Here, while the Class's total possible recovery was potentially $215 million, this figure presumes the entire decline in Tricida's stock would be recoverable by the Class, *i.e.*, that all investor losses were caused by the alleged misstatements or material omissions. Assuming *arguendo,* that the Class would have recovered the entire stock price decline, the Settlement is an excellent one as compared to other securities actions, as explained in Lead Plaintiff's Motion for Preliminary Approval. Dkt. 211 at 17. The Settlement here is at least 6.6% of the Class's estimated damages. Compared to Defendant's estimated plaintiff-style damages figure of $44 million, the Settlement provides for a recovery of 32% of estimated damages—an exceptional result. The Settlement here compares favorably when viewed against both recent settlements and a decade-long sample. Dkt. 211 at 17; *see also* Walker Dec. Ex. 2, (Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, NERA (Jan. 22, 2025)) ("NERA 2024").

Moreover, the corporate defendant, Tricida, filed for bankruptcy leaving Klaerner as the only remaining defendant. While Klaerner had D&O insurance to provide coverage for the claims against him, the amount of the D&O coverage was limited and provided for the payment of defense costs. Meaning that the D&O insurance was a wasting asset and the longer the litigation went on, the less insurance would be available to contribute towards compensating investors for their losses. While the class could look to recover from Klaerner's personal assets if the insurance was

exhausted by defense costs, and there is no assurance that Klaerner had sufficient personal assets to satisfy any potential judgment.

Given the above, as well as the uncertainties and risks inherent in litigating through summary judgment and trial, the Settlement is fair, reasonable and adequate. *Ochinero*, 2021 WL 4460334, at *5 ("[T]he remaining uncertainty as to the scope and amount of [defendant's] liability for Plaintiffs' claims means that the Settlement Agreement's quick and certain payout favors preliminary approval."). That a neutral third-party recommended the Settlement Amount from a position informed by these considerations further supports the conclusion that the Settlement is a reasonable compromise. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, noncollusive, negotiated resolution.").

It is entirely possible that Lead Plaintiff's claims would fail altogether at summary judgment or trial. It is also possible that even if the Class prevailed, recovery could be indefinitely delayed by appeals. *See Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *11 (N.D. Cal. Nov. 22, 2021). Accordingly, the Settlement Amount is an excellent immediate, and guaranteed result for the Class.

### 3.    The reaction of Class Members favors settlement.

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Vataj*, 2021 WL 5161927, at *7 (quoting *DIRECTV*, 221 F.R.D. at 528–29). Courts consider not just the number of objections or opt-outs, but whether their size "in comparison to the size of the class" indicates that the class overall favors settlement. *Id.* For example, in *Churchill*, the Ninth Circuit held that 45 objections and 500 opt-outs were not significant compared to the 90,000 potential class members who received notice. 361 F.3d at 577; *see also Omnivision*, 559 F. Supp. 2d at 1041 (3 objections out of 57,630 class members); *Edenborough v. ADT, LLC*, 2019 WL 4164731, at *3 (N.D. Cal. July 22, 2019) (5 objections and 124 opt-outs amounted to just 0.002% of class).

Here, the deadline for Class Members to object or opt-out is September 11, 2025. Dkt. 222. Lead Plaintiff will therefore address the Class's response more fully in his reply papers. As of the date of this filing, no objections to the Settlement have been filed. Walker Decl. at ¶108.

### 4. The remaining Rule 23(e)(2)(C) factors support Final Approval.

Rule 23(e)(2)(C) provides that courts are to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors either support the Settlement's approval or at a minimum are neutral.

First, as detailed below, *see* Section VI, *infra*, Lead Plaintiff has selected well-established, effective procedures for processing Class Members' claims and distributing relief. The Claims Administrator, Kroll, will review and process claims, allow claimants to cure any deficiencies in their claims or request that the Court review a denial of their claims, and, lastly, mail or wire Authorized Claimants their pro rata share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. Walker Decl. Ex. 1, Ex. A. The claims processing method proposed here is standard in securities class action settlements as it has been long found to be effective.

Second, the Settlement is adequate when the terms of the proposed award of attorneys' fees are considered. As discussed in the Memorandum of Law in Support of Lead Counsel's Request for an Award of Attorneys' Fees and Reimbursement of Expenses, the proposed fees of 27.5% of the Settlement Amount are reasonable in light of Lead Counsel's substantial work and efforts, the results achieved, and relative awards in similar cases. Courts in the Ninth Circuit regularly "permit awards of attorneys' fees ranging from 20 to 30 percent of settlement funds. *In re NCAA Ath. Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (collecting cases). Neither Lead Plaintiff nor Lead Counsel may terminate the Settlement based on the ultimate award of attorneys' fees or expenses. *See* Dkt. 211-2 at ¶ 7.3.

Third, Rule 23(e)(2)(C)(iv) asks the Court to consider the proposed relief in light of "any agreements required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv). As

discussed in Lead Plaintiff's preliminary approval brief (Dkt. 211 at 10) and in the Stipulation (¶8.3), Defendant and Lead Plaintiff have entered into a standard supplemental agreement which provides that if opt outs from the Class equals or exceeds a certain threshold, Defendant shall have the option to terminate the Settlement. Such agreements are common and do not undermine the propriety of the Settlement. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2019 WL 2077847, at *2 (N.D. Cal. May 10, 2019). Thus, the relief provided to the Class is adequate under the Rule 23(e)(2) analysis.

### C.   The remaining *Churchill* factors favor Final Approval.

The remaining *Churchill* factors—the experience and views of counsel, the risk of maintaining class status, and the presence of a governmental participant—either favor final approval or are neutral. First, courts give weight to the recommendations of experienced counsel because "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Vataj*, 2021 WL 5161927, at *7 (quoting *Rodriguez*, 563 F.3d at 967). Lead Counsel's extensive experience with securities class actions supports approval of the Settlement. *See* Walker Decl. Ex. 3; *Zimmer Biomet*, 2022 WL 658970, at *1.

Second, the risk of maintaining class status is neutral. The Court certified the Class on September 27, 2024, *see* Dkt. 188, and although Fed. R. Civ. P. 23(c)(1)(C) authorizes the Court to revisit that decision prior to final judgment, Lead Plaintiff believes that the risk of losing class status would have been fairly minimal except for the possibility that the "law could trend unfavorably." *Aqua Metals*, 2022 WL 612804, at *6.

Finally, there was no government participant here, so the final *Churchill* factor is either "neutral," *Zimmer Biomet*, 2022 WL 658970, at *3, or favors settlement because the "class in this case does not have the benefit . . . of previous litigation between the defendants and the government" to draw from. *Rodriguez*, 563 F.3d at 966. Taken together, the *Churchill* Factors therefore favor settlement.

## V.    THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

Notice to class members of a settlement must be directed in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B) and be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

In the Order Granting Motion for Preliminary Approval, the Court found that the content of the Notice "provides sufficient information about the case and thus conforms with due process requirements." Dkt. 220 at 16. Lead Plaintiff and the Claims Administrator faithfully implemented the notice plan approved by the Court. The Claims Administrator timely mailed a total of 5,664 Notices and Claim Forms to Class Members and Nominee Account Holders and emailed 581 summary Notices to Class Members or nominees. Walker Decl. Ex. 1 at ¶10. Broadridge Financial Services also represented to Kroll that they sent 5,950 email notifications containing links to the Notice to customers that had previously elected to receive notification of potential settlements via email. *Id.* 51 Notices were returned as undeliverable and 41 of those Notices remain undeliverable. *Id.* The Notice was also available to Class Members on the Settlement Website, www.TricidaSecuritiesSettlement.com, along with other relevant documents such as the Claim Form, Stipulation, and certain orders of this Court. *Id.* at ¶13. On June 20, 2025, the Court-approved Summary Notice was published over PR Newswire, a national newswire service. *Id.* at ¶11. The Notice program here therefore provided enough information for Class Members to make informed decisions about the Settlement, fairly apprised them of their rights, represented the best notice practicable under the circumstances, complied with this Court's Order Granting Motion for Preliminary Approval, and satisfied Rule 23, the PSLRA, and due process.

Lead Plaintiff and the Claims Administrator will update the Court on the status of the notice and claims process on October 9, 2025, when filing a reply in support of final approval, and again shortly before the final approval hearing on October 16, 2025.

## VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND TREATS CLASS MEMBERS EQUITABLY

The final 23(e)(2) factor examines whether a settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Courts consider whether the settlement and plan of distribution "improperly grant[s] preferential treatment to class representatives or segments of the class." *Extreme Networks*, 2019 WL 3290770, at *8. "Approval of an allocation plan under [Rule] 23 is governed by the same standards applicable to the overall settlement – the plan must be both fair and reasonable." *In re Wireless Facilities, Inc. Sec. Litig. II*, 2008 WL 11338455, at *6 (S.D. Cal. Dec. 19, 2008). The aim of such a plan "is to provide an equitable basis for distributing the settlement fund," and the plan "needs only a reasonable, rational basis for approval." *Id.* "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) (internal quotations omitted).

The Plan of Allocation, which is fully described in the Notice, Dkt 219-2, provides for distribution of the Net Settlement Fund to Authorized Claimants who submit timely and valid Claim Forms demonstrating a loss on their Tricida transactions during the Class Period. The Net Settlement Fund will be allocated *pro rata* based on the amount of each Authorized Claimant's Recognized Claim as calculated by the Claims Administrator after the Effective Date. Defendant does not have a reversionary interest in the Net Settlement Fund unless the settlement is terminated. *See* Stipulation ¶8.3. Under the proposed Plan of Allocation, all Authorized Claimants will be evaluated by the same formula, and none will be granted preferential treatment. *In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *14 (S.D. Cal. June 16, 2025) (approving similar plan of allocation). The Court should thus approve the Plan of Allocation and find that the Settlement treats Class Members equitably.

## VII. CONCLUSION

For the reasons provided above, the Court should grant final approval of the Settlement Agreement and Plan of Allocation.

July 28, 2025

Respectfully submitted,

**Block & Leviton LLP**

/s/ Jacob A. Walker
Jacob A. Walker (SBN 271217)
400 Concar Drive San Mateo, CA 94402
(650) 781-0025 phone
jake@blockleviton.com

Jeffrey C. Block, *pro hac vice*
Michael D. Gaines (*pro hac vice*)
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
michael@blockleviton.com

*Counsel for Lead Plaintiff and the Class*