Jeffrey C. Block, *pro hac vice*
Michael D. Gaines, *pro hac vice*
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
michael@blockleviton.com

Jacob A. Walker (SBN 271217)
**Block & Leviton LLP**
400 Concar Drive
San Mateo, CA 94402
(650) 781-0025 phone
jake@blockleviton.com

*Attorneys for Lead Plaintiff*
*Jeffrey M. Fiore and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| MICHAEL PARDI, *Individually and on Behalf of All Others Similarly Situated,*<br><br>    Plaintiff,<br><br>v.<br><br>TRICIDA, INC. and GERRITT KLAERNER,<br><br>    Defendants. | Case No. 4:21-cv-00076-HSG<br><br>**Lead Counsel's Notice of Motion and Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, and Memorandum of Points and Authorities in Support Thereof**<br><br>**Date: October 16, 2025**<br>**Time: 2:00 p.m.**<br>**Courtroom: 2, 4th Floor**<br>**Hon. Haywood S. Gilliam, Jr.** |

MOTION FOR ATTORNEYS' FEES
CASE NO. 4:21-CV-00076-HSG

**Table of Contents**

**NOTICE OF MOTION AND MOTION** ................................................................................. 1

**MEMORANDUM OF POINTS AND AUTHORITIES** .......................................................... 2

I.    STATEMENT OF ISSUES TO BE DECIDED ................................................................. 2

II.   PRELIMINARY STATEMENT ........................................................................................ 2

III.  LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND
      SHOULD BE APPROVED .............................................................................................. 6

    A.    A Reasonable Percentage of the Common Fund Created by the Settlement is the
      Appropriate Method for Awarding Attorneys' Fees. ..................................................... 6

    B.    The Requested Fee is Reasonable. ................................................................................. 8

        1.    The Result Achieved Supports the Requested Fee ............................................... 9

        2.    The Substantial Risks of the Litigation Support the Requested Fee .................... 10

        3.    The Skill Required and Quality of Work Support the Requested Fee .................. 13

        4.    The Contingent Nature and Financial Burden Support the Requested Fee .................. 14

        5.    The Awards in Similar Cases Support the Requested Fee ................................... 16

    C.    A Lodestar Crosscheck Confirms the Reasonableness of the Fee Sought. ..................... 17

    D.    Lead Counsel's Litigation Expenses are Reasonable and Should be Approved. ............. 18

IV.   CONCLUSION .................................................................................................................. 19

**Table of Authorities**

**CASES**

*Andrews v. Plains All Am. Pipeline L.P.*,
   2022 WL 4453864 (C.D. Cal. Sept. 20, 2022)---------------------------------------------------------------8

*Baird v. BlackRock Institutional Tr. Co.*,
   2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) ------------------------------------------------------------7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980). ----------------------------------------------------------------------------------6

*Brown v. Hain Celestial Grp., Inc.*,
   2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ------------------------------------------------------ 16

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)----------------------------------------------------- 10

*Edenborough v. ADT, LLC*,
   2019 WL 4164731 (N.D. Cal. July 22, 2019)----------------------------------------------------- 18

*Fleming v. Impax Laboratories, Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022)---------------------------------------------- passim

*Franco v. E-3 Sys.*,
   2021 WL 2333851 (N.D. Cal. June 8, 2021)----------------------------------------------------- 18

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) -----------------------------------------------------------------11, 15

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) --------------------------------------------------- 17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ----------------------------------------------------------------------------------9

*Hunt v. Bloom Energy Corp.*,
   2024 WL 1995840 (N.D. Cal. May 6, 2024)----------------------------------------------- passim

*In re Am.-Apparel, Inc. S'holder Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) -----------------------------------------------------7

*In re Amkor Tech. Inc. Sec. Litig.*,
   2009 WL 10708030 (D. Ariz. Nov. 19, 2009) -----------------------------------------------------7

*In re Bluetooth Headset Prods. Liab. Litig.*,

654 F.3d 935 (9th Cir. 2011) ------------------------------------------------------------------------ 6, 7

*In re Capacitors Antitrust Litig.*,
2017 WL 9613950 (N.D. Cal. June 27, 2017). ---------------------------------------------------- 6

*In re Capacitors Antitrust Litig.*,
2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) ---------------------------------------------------- 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
2007 WL 2416513 (N.D. Cal. Aug. 16, 2007)------------------------------------------------- 14

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013) ---------------------------------------------------------------- 7

*In re ImmunityBio, Inc. Sec. Litig.*,
2025 WL 1686263 (S.D. Cal. June 16, 2025)---------------------------------------------- 8, 10, 12

*In re Lidoderm Antitrust Litig.*,
2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)---------------------------------------------------- 8

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
768 F. App'x 651 (9th Cir. 2019). ------------------------------------------------------------- 6

*In re NCAA Ath. Grant-in-Aid Cap Antirust Litig.*,
768 F. App'x 651 (9th Cir. 2019)---------------------------------------------------------------- 16

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)---------------------------------------------------- passim

*In re QuantumScape Sec. Class Action*,
2025 WL 353556 (N.D. Cal. Jan. 22, 2025) ---------------------------------------------------- 8

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)------------------------------------------------------------------- 7

*In re Tesla Inc., Sec. Litig.*,
2023 WL 4032010 (N.D. Cal. June 14, 2023), *aff'd sub nom. In re Tesla, Inc., Sec. Litig.*, 2024
WL 4688894 (9th Cir. Nov. 6, 2024) ---------------------------------------------------- 10, 15

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ---------------------------------------------------- 8

*In re: Tricida, Inc.*,
No. 23-10024-JTD (Bankr. D. Del. Jan. 18, 2023)------------------------------------------- 18

*Lopez v. Youngblood*,

2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ------------------------------------------------------- 7

*Miller v. Ghirardelli Chocolate Co.,*
2014 WL 4978433 (N.D. Cal. Oct. 2, 2014) -------------------------------------------------------- 16

*Nat'l Fed'n of the Blind v. Target Corp.,*
2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) ------------------------------------------------------- 15

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ------------------------------------------------- passim

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977); ----------------------------------------------------------------------- 6

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ---------------------------------------------------------------- passim

**STATUTES**

15 U.S.C. §78u-4 ------------------------------------------------------------------------------------ 1, 4, 7

**RULES**

Fed. R. Civ. P. 23(h) ........................................................................................................ 1

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 16, 2025 at 2:00 pm, or the nearest available date on which counsel may be heard, before the Honorable Haywood S. Gilliam, Jr. in Courtroom 2, 4th Floor of the above-referenced Court, located at 1301 Clay Street, Oakland, CA 94612, Lead Counsel Block & Leviton LLP, counsel for Lead Plaintiff Jeffrey M. Fiore and the Class, will, and hereby does move, pursuant to Fed. R. Civ. P. 23(h) for an Order granting an award of attorneys' fees in the amount of 27.5% ($3,918,750) of the Settlement Fund and approving reimbursement of Litigation expenses incurred by Lead Counsel pursuant to 15 U.S.C. §78u-4(a)(4).[1]

This motion is made pursuant to the Court's May 16, 2025 Order Granting Motion for Preliminary Approval (the "Preliminary Approval Order"). Dkt. 220. This motion is based upon: (i) this Notice of Motion; (ii) the Memorandum of Points and Authorities in support thereof; (iii) the Declaration of Jacob A. Walker In Support Of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement(2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses; and (3) Lead Plaintiff's Motion for an Award of Reasonable Costs ("Walker Declaration"); (iv) the Stipulation; (v) the record on file in this Action; and (vi) other such matters and argument as the Court may consider at the hearing of this motion.

Lead Counsel is not aware of any opposition to the motion at this time. Pursuant to this Court's Scheduling Order, Dkt. 222, any objections must be filed by September 11, 2025. Lead Counsel will address objections, if any, in his reply brief to be filed October 9, 2025. A [Proposed] Order Approving Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and Lead Plaintiff Award will be submitted with Lead Counsel's reply papers.

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings set forth in the Stipulation. Dkt. 211-2.

MOTION FOR ATTORNEYS' FEES                                                    1
CASE NO. 4:21-CV-00076-HSG

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF ISSUES TO BE DECIDED

1)    Whether the Court should grant Lead Counsel's request for attorneys' fees in an amount equal to 27.5% of the Settlement Fund ($3,918,750), net of expenses.

2)    Whether the Court should grant Lead Counsel's request for reimbursement of litigation-related expenses totaling $337,645.15.

### II.    PRELIMINARY STATEMENT

After more than four years of hard fought litigation, in which Lead Counsel undertook this action on an entirely contingent basis, advanced $337,645.15 in out-of-pocket costs for which there was no guarantee of repayment, and during which time Lead Counsel has received no compensation for the services it rendered, Lead Counsel now seeks compensation for the results it obtained for the Class. Lead Counsel respectfully requests this Court grant its request for an award of attorneys' fees equal to 27.5% of the Settlement Fund and approve reimbursement of $337,645.15 in out-of-pocket expenses necessary to successfully prosecute this action.

The Settlement provides for an all-cash recovery of $14,250,000, which is an excellent result for the Class. The Settlement was achieved through the skill, experience, and effective advocacy of Lead Counsel in the face of considerable risk and tenacious opposition from Defendant's counsel and significant risk posed by Tricida's bankruptcy. Lead Counsel successfully navigated the obstacles Tricida attempted to erect through the bankruptcy process, which including attempting to have the Class' claims extinguished in the bankruptcy, and negotiated to have Tricida preserve relevant evidence, which helped paved the way for this successful recovery. Plus, only one defendant, Garrett Klaerner, remained in the case after Tricida's bankruptcy filing. While Klaerner had Directors & Officers ("D&O") liability insurance to provide coverage for the claims against him, the amount of coverage was finite, and it also provided for the payment for defense costs and expenses. So, the longer the case went on, the less D&O coverage would be available to provide a recovery for the Class.

Under the circumstances, recovering $14.25 million in cash, which represents at a minimum a recovery of 6.6% of overall damages, or as high as 32% if Defendant prevailed on his

loss causation arguments, is significantly greater than the median settlement value of 2.9% for cases with investor losses between $200 and $399 million and 5.2% for cases with investor losses between $20 and $49 million.[2]

As described below and in the Walker Declaration, the decision to settle came after significant motion practice including defeating, in part, two motions to dismiss, a successful motion to certify the Class, significant discovery including prevailing on a hotly contested motion to compel and with fact discovery nearing its close. Lead Plaintiff and Lead Counsel had a well-informed view of the action's merits and value and negotiated a settlement after two formal, full-day mediations overseen by a neutral third-party.

Lead Counsel assumed all risks in litigating this action by taking the case on a fully contingent basis and devoted substantial resources to prosecuting the action with no guarantee of recovery against well-resourced opposing counsel. The quality legal work Lead Counsel dedicated to the prosecution of this action justifies granting a fee of 27.5% of the Settlement Fund, which is a slight enhancement to the benchmark 25% fee award endorsed by the Ninth Circuit. Under the circumstances, given the result achieved, the risks and obstacles to obtaining the recovery, the skill required, the contingent nature of the work and the awards made in similar cases, a modest enhancement above the 25% benchmark rate is justified. *Fleming v. Impax Laboratories, Inc.*, No. 4:16-cv-06557-HSG, 2022 WL 2789496, at *7-10 (N.D. Cal. July 15, 2022) (awarding attorneys' fees in securities class action of 30% of $33 million recovery); *Hunt v. Bloom Energy Corp.*, No. 4:19-cv-02935-HSG, 2024 WL 1995840, at *8-9 (N.D. Cal. May 6, 2024)  (awarding 30% of $3 million recovery).

As to the work they undertook: Lead Counsel vigorously pursued this litigation from its outset by, among other things: (i) conducting an extensive investigation into the FDA approval process for veverimer and Defendant's knowledge of veverimer's prospects for approval; (ii) drafting the highly detailed First Amended Complaint based on Lead Counsel's investigation, and drafting the Second Amended Complaint after subpoenaing and negotiating with the FDA to obtain

---

[2] *See* NERA, Recent trends in Securities Class Action Litigation: 2024 Full Year Review at 26.

relevant documents concerning Tricida's new drug application for veverimer; (iii) researching and briefing oppositions to Defendant and Tricida's motion to dismiss the First Amended Complaint and Second Amended Complaint; (iv) successfully navigating Tricida's bankruptcy filing including defeating Tricida's attempt to discharge the Class's claims through the bankruptcy court; (v) negotiating for bankrupt Tricida to preserve relevant evidence for use in this action; (vi) serving and responding to document requests; (vii) issuing document subpoenas to third parties; (vii) reviewing and analyzing documents received from Defendant and third parties; (ix) defending Lead Plaintiff at his deposition; (x) successfully drafting a motion for class certification and a reply to Defendant's opposition to class certification; (xi) participating in over thirty meet-and-confers to negotiate discovery issues; (xii) successfully briefing two motions to compel discovery and two discovery letter briefs; (xiii) preparing mediation statements, attending two full-day mediation sessions, and engaging in multiple telephonic discussions with the mediator; and (ix) negotiating various versions of the Stipulation, attending a hearing before the Court regarding Lead Plaintiff's motion for preliminary approval, and preparing the memorandum to support final approval of the settlement.

Lead Counsel undertook these extensive efforts on behalf of the Class on a wholly-contingent fee basis and no payment has been made to Lead Counsel to date for their services or expenses. Lead Counsel firmly believe that the Settlement is the result of their creative and diligent efforts, as well as their reputations as attorneys who are unwavering in their dedication to the interests of the Class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals. As a result, Lead Counsel submit that the requested fee is fair and reasonable and should be awarded.

Moreover, this action is subject to the provisions of the PSLRA, 15 U.S.C. §78u-4, and, therefore, by its nature, is extremely risky. The effect of the PSLRA is to make it harder for investors to successfully plead and prove securities class actions. Lead Counsel was mindful of the fact that in this post-PSLRA environment, a greater percentage of cases are being dismissed than ever before amid defendants' constant attempts to push the envelope and contours of the

MOTION FOR ATTORNEYS' FEES                                                    4
CASE NO. 4:21-CV-00076-HSG

PSLRA. "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc*., 2011 WL 1253250, at *37 (D. Ariz. Mar. 31, 2011) (quoting *Alaska Elec. Pension Fund v. Flowserve Corp*., 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J. sitting by designation)).

Pursuant to the Court's May 23, 2025 Scheduling Order, *see* Dkt. 222, the Court-appointed Claims Administrator Kroll Settlement Administration LLC ("Kroll" or "Claims Administrator") caused the Notice and Claim Form to be mailed to potential Class Members. *See* Walker Decl. Ex. 1 at ¶10. A total of 5,664 Notice Packets have been mailed as of July 23, 2025. *Id.* Further, Broadridge Financial Services represented to Kroll that they sent 5,950 email notifications containing links to the Notice to customers that had previously elected to receive notification of potential settlements via email. *Id.* The Notice and Claim Form were also posted to www.TricidaSecuritiesSettlement.com ("Settlement Website"). *Id.* at ¶13. The Summary Notice was published online in PR Newswire. *Id.* at ¶11. The Notice and Summary Notice advised Class members that Lead Counsel would be applying to the Court for an award of attorneys' fees no greater than 27.5% of the Settlement Fund, plus reimbursement of litigation expenses no greater than $400,000. *Id.* Exs. A, B. The Notice and Summary Notice further informed Class Members that they have until September 11, 2025, to object to these requests. *Id.* While the deadline to object has not yet passed, to date, no objections to the attorneys' fees or litigation expenses set forth in the Notice and Summary Notice have been filed to date. Counsel will update the Court with its reply brief, after the deadline has passed. Walker Decl. ¶92.

Moreover, utilizing the lodestar cross-check, Lead Counsel and bankruptcy counsel Lowenstein Sandler LLP ("Bankruptcy Counsel") expended 3,326 hours, or a total lodestar of $2,771,874[3], which would amount to a 1.41 multiplier on their time, well-below multipliers

---

[3] In its motion for preliminary approval, Lead Counsel estimated a minimum lodestar of $1.9 million. This estimate did not include a significant number of time entries, the work leading up to final approval, nor the time and lodestar of Bankruptcy Counsel.

routinely awarded by courts in other securities actions. *See Fleming*, 2024 WL 1995840, at \*9 (fee request amounted to 2.6 times counsels' lodestar).

### III.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

#### A.    A Reasonable Percentage of the Common Fund Created by the Settlement is the Appropriate Method for Awarding Attorneys' Fees.

For their efforts in creating a common fund for the benefit of the Class, Lead Counsel seeks as attorneys' fees a reasonable percentage of the fund recovered for the Class. The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Under the common fund doctrine, "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019). "'The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel.'" *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at \*2 (N.D. Cal. June 27, 2017).

Although courts have discretion to employ either the percentage of recovery or lodestar method (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)), the Ninth Circuit has expressly and consistently approved the use of the percentage method in common fund cases, *see, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002), and use of this method "appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). *See also In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at \*2 ("The percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for the benefit of the class."); *In re Amkor Tech. Inc. Sec. Litig.*, 2009 WL 10708030, at \*1 (D.

Ariz. Nov. 19, 2009) (stating percentage-of-recovery method most appropriate to award attorneys' fees in securities class action).

The PSLRA also contemplates that fees be awarded on a percentage basis, authorizing attorneys' fees and expenses to counsel that do not exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also In re Am.-Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) ("'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA]."). The rationale for compensating counsel on a percentage basis in common fund cases is sound. "[C]ourts try to . . . [tie] together the interests of class members and class counsel" by "tether[ing] the value of an attorneys' fees award to the value of the class recovery. . . . The more valuable the class recovery, the greater the fees award. And vice versa." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013).

The percentage method of awarding fees has become an accepted, if not the prevailing method, for awarding fees in common fund cases throughout the United States. A percentage fee award is appropriate because it encourages counsel to obtain the maximum recovery for the class at the earliest possible stage of the litigation and, hence, most fairly correlates Lead Counsel's compensation to the benefit achieved for the Class.

Use of the percentage-of-recovery method is particularly appropriate in common fund cases like this because "the benefit to the class is easily quantified." *Bluetooth*, 654 F.3d at 942; *Baird v. BlackRock Institutional Tr. Co.*, 2021 WL 5113030, at *6-*7 (N.D. Cal. Nov. 3, 2021) (applying percentage of the fund method and lodestar crosscheck); *Vataj v. Johnson*, 2021 WL 5161927, at *8 (N.D. Cal. Nov. 5, 2021) (same). Conversely, the Ninth Circuit has recognized that the lodestar method creates the perverse incentive for counsel to "expend more hours than may be necessary on litigating a case." *Vizcaino*, 290 F.3d at 1050 n.5; *see also Bluetooth*, 654 F.3d at 942; *Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("'[I]n practice,

the lodestar method is difficult to apply [and] time consuming to administer.'") (quoting Manual for Complex Litigation (Fourth) §14.121 (2004)).

Accordingly, Lead Counsel respectfully submits that this Court should utilize the percentage-of-recovery method in determining the award of attorneys' fees.

## B.   The Requested Fee is Reasonable.

For Lead Counsel's efforts in creating a common fund, Lead Counsel seeks 27.5% of the Settlement Fund ($3,918,750). This request is fair and reasonable under the relevant standards.

There are "several factors that a court should consider to determine whether to adjust a fee award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiff; and (5) awards made in similar cases." *Fleming*, 2024 WL 1995840, at *8, *citing Vizcaino*, 290 F. 3d at 1048-50. Courts in the Ninth Circuit have awarded attorneys' fees exceeding the 25% benchmark in similar common fund cases. *In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *14 (S.D. Cal. June 16, 2025) (awarding attorneys' fees of 30% of $10.5 million securities settlement); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (approving attorneys' fees of 28% of $13.75 million securities settlement); *In re QuantumScape Sec. Class Action*, 2025 WL 353556, at *5 (N.D. Cal. Jan. 22, 2025) (awarding attorneys; fees of 30% of the $47.5 million settlement amount); *In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *1-*2 (N.D. Cal. Mar. 6, 2023) (awarding 40% of $165,000,000 partial settlement, resulting in cumulative 31% award of total $604,550,000 settlement); *Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (awarding 32% of $230 million settlement); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1-*3 (N.D. Cal. Sept. 20, 2018) (awarding 33% of $104.75 million settlement); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (awarding 27.5% of $576 million settlement).

Each of the foregoing factors confirms that the requested fee of 27.5% is fair and reasonable here.

### 1.    The Result Achieved Supports the Requested Fee

"The first and 'most critical factor [in determining an attorneys' fee] is the degree of success obtained.'" *Vataj*, 2021 WL 5161927, at *9 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)) (alteration in original). The Settlement here is a great result for the Class, amounting to an immediate, guaranteed recovery against a potential for continued litigation that was guaranteed only to be long and unpredictable.

Lead Counsel achieved an excellent result for the Class. Tricida went bankrupt leaving only Klaerner and his D&O insurance as the available sources of recovery. The D&O insurance was a wasting asset in that defense costs and expenses reduce the available insurance as the case went on. So, the longer the case was litigated, the less would be available for settlement.

Achieving a settlement of $14.25 million, which amounts to 6.6% of the total maximum potential damages, is an excellent result when compared to the median recovery of 2.9% in similar cases.

Plus, there was a significant risk Defendant could reduce damages by arguing that the full truth was revealed earlier, including either on August 6, 2020 when Defendant claims that Tricida disclosed the additional review issues discussed with the FDA and on August 24, 2020 after Tricida disclosed it expected to receive a complete response letter ("CRL") from the FDA indicating that it would reject Tricida's new drug application. If a jury agreed with Tricida that disclosure of the CRL cured the misrepresentations, *i.e.*, that Tricida would not get FDA approval for its new drug, then overall damages would have been approximately $100 million, making the settlement even that much more impressive.

On top of the complications the bankruptcy posed and the limitations on the ability to collect on a possible judgment, Klaerner advanced strong arguments against his liability and to reduce or eliminate recoverable damages. In the face of these considerable obstacles, Lead Plaintiff and Lead Counsel secured a $14.25 million recovery, which is at least 6.6% of the maximum estimated damages and 32% of Defendant's estimated damages. *See* Walker Decl. ¶111. If the case continued, there was a significant risk that Defendant could have reduced recoverable damages

even further by proving that the truth was revealed much earlier in the Class Period. As discussed, Defendant had numerous credible arguments to reduce potentially recoverable damages.

Given the substantial risk that Defendant could defeat liability by claiming he did not misrepresent any information the FDA shared with Tricida and was otherwise not obligated to disclose the routine discussions Tricida had with the FDA regarding its NDA, and that he could dramatically reduce, or eliminate, all recoverable damages, the settlement provides a great result for the Class. The $14.25 million settlement is greater than the median settlement values in securities class actions for the prior decade, excluding settlements of over $1 billion or higher. *See* Walker Dec. Exhibit 2 at 23 (Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review, NERA (Jan. 22, 2025)) ("NERA 2024"). Courts in similar situations have regularly awarded at least 27.5% of the common fund. *See id.* at 30; *ImmunityBio*, 2025 WL 1686263, at *13 (recognizing that the percentage of recoverable damages "is well above the median percentage of the recovery level for investor losses in securities class action settlements."). Accordingly, the recovery here more than justifies awarding an attorney fee of 27.5% of the recovery.

## 2. The Substantial Risks of the Litigation Support the Requested Fee

The "recovery must also be considered in light of the significant risks that Plaintiffs would face by further litigating this case." *Fleming*, 2024 WL 1995840, at *9. Courts recognize that securities class actions in particular "are complex cases that are time-consuming and difficult to prove." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019); *see also Omnivision*, 559 F. Supp. 2d at 1046 (explaining that as of 2008 "[n]ationwide, Plaintiffs have won only three of eleven such cases to reach verdicts since 1996" and that plaintiffs lost both cases in the Northern District of California to reach a verdict); *In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal. June 14, 2023), *aff'd sub nom. In re Tesla, Inc., Sec. Litig.*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024) ("After a three-week trial in January 2023, the jury awarded a verdict for Defendants on all claims."). Substantial uncertainty and risk lay ahead here as well.

There were substantial challenges here and recovery was far from guaranteed. *First*, Lead Plaintiff and the Class would have to prevail on summary judgment, and then prove at trial, that Defendant made misstatements and omissions in his May 7, 2020 statements, and that those misstatements were material. In earlier stages of the litigation, Defendant previewed possible fact-based arguments about liability he may have renewed at summary judgment or trial. For instance, Klaerner argued that his statements on May 7, 2020 were not misleading, and that the allegedly concealed information had already been disclosed to investors. Although this was a premature argument at the motion-to-dismiss and class certification stages, if the Court agreed on summary judgment, or if a jury agreed with Defendant at trial, the Class would have recovered nothing. If that failed, Defendant could still defeat liability by convincing the jury that he never intended to mislead investors and had not motive for doing so.

*Second*, Defendant would have had another chance to reduce or eliminate the Class's recovery by arguing that the relevant "truth" entered the market no later than August 6, 2020, the day that Tricida published its Form 10-Q, which Defendant claimed "provided investors with exactly the information Plaintiff complains was concealed on May 7." Dkt. 162 at 5. Klaerner would have also argued that Tricida's disclosure on August 24, 2020, that it expected to receive a CRL from the FDA, fully informed the market that its NDA would be denied by the FDA, which fully cured any misrepresentation or omission of material facts. *Bloom*, 2024 WL 1995840, at *8 ("Counsel acknowledged that there is a substantial risk that Defendants could succeed in reducing or eliminating recoverable damages by establishing that the remaining two statements were not materially false or misleading, or via successful damages and causation defenses.") *see also Wireless Facilities*, 2008 WL 11338455, at *7 ("Lead Plaintiff faced significant hurdles and risks associated with proving loss causation and damages . . . these risks and uncertainty favor granting Lead Counsels' fee request."). The risk of no or limited recovery in a complex case of this type was very real, especially considering the uncertainty in a "battle of the experts" over damages. *Id.*

*Third*, even if the Class got past summary judgment and prevailed at trial, the verdict may have been overturned on appeal or on a post-trial motion. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (ordering new trial on issues related to

loss causation after plaintiffs prevailed in securities case at trial after years of litigation). Even in the best-case scenario, the likely appeals could have delayed any recovery by years.

*Fourth,* the Class faced the risk of a diminishing asset available for recovery. Tricida, the corporate defendant, was bankrupt leaving Klaerner's D&O insurance and personal assets available for recovery. The D&O is a wasting asset and the longer the case went on, the less insurance would be available for a recovery. Had Lead Plaintiff gone to trial, won, and even prevailed on appeal, that might have been a pyric victory as the D&O coverage could have been exhausted as a result. Moreover, Lead Plaintiff had no indication that Klaerner's personal assets could substantially satisfy a judgment against him.

*Fifth*, there were more risks and pitfalls than the "usual" securities class action. Tricida filed for bankruptcy protection and attempted to use the bankruptcy process to prevent Lead Plaintiff from pursuing this action against Klaerner. As part of its initial reorganization plan, Tricida sought to bar any and all securities fraud claims against any Tricida officer, which included Klaerner. Had Lead Counsel not vigorously, and successfully, opposed this maneuver by Tricida, the Class's claims would have been extinguished and it would have received no recovery at all. Only through Lead Counsel's diligence and skillful and effective advocacy, was this attempt to eliminate the Class's claims defeated and the Class's claims against Klaerner preserved.

The Court in *ImmunityBio* recognized similar risks in approving counsel's requested 30% fee. 2025 WL 1686263, at *14. That case similarly involved allegations that the defendants made materially misleading misstatements and omissions regarding compliance with FDA regulations and the prospects for FDA approval of the company's lead product candidate. The Court emphasized: "These obstacles to recovery are further heightened by the complexity of manufacturing biologic compounds under FDA regulations—a highly technical topic that may be difficult for the Court or a jury to fully understand throughout the proceedings." *Id.* The same would be true in this case. The risks of the litigation were considerable and likewise favor Lead Counsel's fee request.

### 3.     The Skill Required and Quality of Work Support the Requested Fee

Lead Counsel "litigated this case skillfully and professionally." *Bloom,* 2024 WL 1995840, at *8. In *Bloom,* the Court recognized that "counsel conducted an extensive investigation, engaged in substantial and voluminous fact discovery, and defended against three simultaneous motions to dismiss." *Id.* In *Fleming,* the Court noted that counsel litigated "multiple rounds of motions before the Court, [and] Plaintiffs' counsel successfully appealed a dismissal of the entire case with prejudice." 2024 WL 1995840, at *9.

Here, Lead Counsel also engaged in multiple rounds of motions to dismiss, was successful in the motion to certify the Class, engaged in significant pre-trial discovery including serving multiple subpoenas on relevant third parties and successfully obtained key documents from the FDA.

Plus, Lead Counsel overcame more than the traditional obstacles in a securities class action. As noted, Tricida filed for bankruptcy protection in January 2023 and, as part of the bankruptcy, requested the bankruptcy court issue an order that barred any additional securities litigation against any officer of Tricida. This, of course, would have extinguished the Class' claims against Klaerner. By working with Bankruptcy Counsel, Lead Counsel successfully defeated Tricida's attempts to improperly shield Klaerner from answering for his potential securities fraud liability.

Additionally, Lead Counsel successfully negotiated through the bankruptcy process for the bankrupt Tricida and the entities to whom it sold its assets to maintain relevant evidence to be produced in this action. That evidence led to a hotly contested discovery dispute and, ultimately, Magistrate Judge Cisneros agreed with Lead Plaintiff and ordered Tricida to produce documents to Lead Plaintiff over Klaerner's objections.[4] Indeed it was shortly after this victory that the parties resolved this action.

The quality and skill of opposing counsel is also "important in evaluating" the caliber of Lead Counsel's work. *Barbosa*, 297 F.R.D. at 449. Defendant is represented by Sidley Austin LLP, highly experienced and prominent counsel who vigorously sought to defeat Lead Plaintiff's

---

[4] Klaerner sought review of the discovery order by this Court and, before the Court ruled on the appeal, the parties reached an agreement to settle the action.

case. In addition to being highly experienced, Sidley Austin is known as one of if not the leading firms defending biotech securities actions. For example, Sidley publishes a comprehensive annual review of biotech-related securities litigation[5] that is used throughout the field. That Lead Counsel overcame their formidable legal opposition to achieve this excellent result evidences the quality of Lead Counsel's work.

### 4.    The Contingent Nature and Financial Burden Support the Requested Fee

The Ninth Circuit instructed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted:

> Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007).

Here, Lead Counsel "assumed substantial risk and invested substantial time in litigating a complex securities fraud case on a contingency-fee basis and incurring costs without the guarantee of payment for its efforts." *Fleming,* 2024 WL 1995840, at *9. Lead Counsel undertook this litigation on a wholly contingent fee basis, assuming a significant risk that Counsel's efforts to investigate and litigate this matter would yield no recovery. "The risk that counsel took in litigating this case on a contingency basis for the last few years weighs in favor of a substantial attorneys' fee award. Counsel spent considerable time on this case without any certainty that they would be compensated." *Bloom,* 2024 WL 1995840, at *8.

Unlike counsel for defendants, who are typically paid an hourly rate and paid for their expenses regularly, Lead Counsel has not been compensated for any time or expense since this case began in 2021, *see* Walker Decl. ¶117, and "bore all the risk associated" with pursuing the

---

[5] *See, e.g., Securities Litigation Against Life Sciences Companies: 2024,* available at *https://goodlifesci.sidley.com/2025/04/04/securities-litigation-against-life-sciences-companies-2024/.*

action on a wholly contingent basis. *Wireless Facilities*, 2008 WL 11338455, at *7. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor when considering an award of attorneys' fees. For example, in awarding counsel's attorneys' fees in *Nat'l Fed'n of the Blind v. Target Corp.*, 2009 WL 2390261, at *7 (N.D. Cal. Aug. 3, 2009), the court noted the risks that plaintiffs' counsel had taken:

> Risk of non-payment is also an issue to be considered. 'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.' [internal citations omitted] 'The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis.'

While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. The risk of no recovery in complex cases of this type is very real. In 2024, the number of dismissals in similar securities cases increased by 29% compared to 2023. *See* Walker Decl. Ex. 2 at 13. Of the 217 securities cases resolved in 2024, 124 (54%) were dismissed. *Id.* at 1.

There are numerous contingent fee cases where plaintiffs' counsel, after the expenditure of thousands of hours, have received no compensation. Lead Counsel are aware of many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of the plaintiffs' counsel produced no fee for counsel. Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g., Glickenhaus*, 787 F.3d at 433 (ordering new trial on issues relating to loss causation in phase one of bifurcated trial after years of litigation in which plaintiffs prevailed in both phases at trial); *Tesla*, 2023 WL 4032010, at *1.

While contingent fees are appropriate in a wide range of complex and difficult civil actions, they are particularly apt in the context of securities class actions, where the losses of individual

investors may not justify retaining counsel capable of successfully navigating the procedural and substantive requirements imposed by the PSLRA and "the importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Vataj*, 2021 WL 5161927, at *9; *see also Omnivision*, 559 F.2d at 1047. That is "especially true where, as here, class counsel has significant experience in the particular type of litigation at issue." *Zynga*, 2016 WL 537946, at *18 (citing cases awarding attorneys' fees equal to 33 percent of the common settlement fund).

### 5.   The Awards in Similar Cases Support the Requested Fee

Courts often look to fees awarded in comparable cases to determine whether the fee requested is reasonable. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.4 (9th Cir. 2002) (discussing a survey of fee awards under the percentage method from 34 common fund settlements of $50-200 million from 1996 to 2001 and noting that 79% of awards were between 10-30% with a "majority clustered in the 20-30% range."). Courts in the Ninth Circuit consistently "permit awards of attorneys' fees ranging from 20 to 30 percent of settlement funds[.]" *In re NCAA Ath. Grant-in-Aid Cap Antirust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (collecting cases).

In both *Fleming* and *Bloom* this Court awarded attorney fee requests of 30%, 2.5% higher than the amount requested here. *See Bloom*, 2024 WL 1995840, at *8, collecting cases where courts have awarded fees in excess of 25% in comparable securities cases.

Additionally, that the Stipulation provides for the payment of Lead Counsel's fees before the Settlement Fund is distributed to the Class, subject to return if the Stipulation is terminated, is not unusual. Courts in the Northern District of California "routinely" approve such provisions in class action settlements. *Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016); *see also Miller v. Ghirardelli Chocolate Co.*, 2014 WL 4978433, at *5 (N.D. Cal. Oct. 2, 2014) ("Such 'quick pay' provisions are routinely approved by courts in this district."). Accordingly, the fee here is similar in both amount and timing to other cases. This factor therefore favors approving the requested fee.

**C.      A Lodestar Crosscheck Confirms the Reasonableness of the Fee Sought.**

In cases in which attorneys' fees are sought based on a percentage of the common fund, courts in this Circuit may employ a lodestar crosscheck to assess the reasonableness of the fees sought. *See, e.g., Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *Vataj*, 2021 WL 5161927, at *9 (describing lodestar cross-check "[a]s a final check on [] reasonableness"). In the Ninth Circuit, "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Vizcaino,* 290 F.3d at 1050 n.6 (awarding 28% fee award representing lodestar multiplier of 3.65).

Consistent with the Court's Procedural Guidance for Class Action Settlements, Lead Counsel has submitted detailed information about the numbers of hours spent on various categories of activities related to the action by each biller, together with hourly billing information. *See* Walker Decl. ¶131. Lead Counsel has expended a total of 3,106.3 hours over the course of about four years of investigation, litigation, and negotiation of the monetary payment reflected in the Settlement. *Id.* Lead Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney and professional by their current hourly rates, is $2,494,599. *Id.*; *see also id.* Ex. 4 (breaking down lodestar by categories of activities and biller). In addition, Bankruptcy Counsel expended a total of 219.7 hours for a lodestar of $277,275. *Id.,* Ex. 5

Across Lead Counsel, partners' rates range from $970 to $1,290 per hour, associates' rates range from $535 to $640 per hour. *Id.* at ¶116.[6] These rates are "in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation." *Fleming,* 2024 WL 1995840, at *9 (finding 2022 "rates which range from $760 to $1,325 for partners, $895 to $1,150

---

[6] Lead Counsel calculated its lodestar using the current billing rates of its attorneys and paralegals (with the exception of individuals who have departed the firm, who were assigned the last hourly rates used by them prior to their departure). *See* Walker Decl. ¶131. Using current rather than historic rates "is a well-established method of ensuring that '[a]ttorneys in common fund cases [are] compensated for any delay in payment.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 n.17 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (quoting *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002)) (alterations in original).

for counsel and $175 to $520 for associates" to be reasonable.); *Bloom,* 2024 WL 1995840, at \*9 (rates which "range from $900 to $1,000 for partners, $500 to $675 for associates, $475 for staff attorneys and $325 for paralegals" are "in line with prevailing rates."). Across Bankruptcy Counsel, partners' rates ranged from $1,195 to $1,625, counsel's rate was $1,055, and paralegals' rates ranged from $380 to $410. Walker Decl., Ex. 5. These rates are likewise in line with the prevailing rates for bankruptcy proceedings in the District of Delaware and in the Tricida proceeding. Sidley Austin's rates in Tricida's bankruptcy proceeding demonstrate the reasonableness of Bankruptcy Counsel's rates. *See In re: Tricida, Inc.*, No. 23-10024-JTD (Bankr. D. Del. Jan. 18, 2023), Dkt. 82 ("Sidley's billing rates for professionals who may work on this matter currently range from $1700 to $700 per hour for attorneys and from $540 to $314 for paraprofessionals.").

Here, the requested fee of 27.5% of the Settlement Fund ($3,918,750) represents a 1.41 multiplier over Lead Counsel and Bankruptcy Counsel's lodestar. Walker Decl. ¶132. This is well-within the multiplier range of one to four frequently used as a crosscheck. *See Vataj*, 2021 WL 5161927, at \*9 (approving a 2.5 multiplier in securities case); *Fleming,* 2024 WL 1995840, at \*9 (2.6 times counsels' lodestar); *Bloom,* 2024 WL 1995840, at \*9 (0.5 negative multiplier). The reasonableness of the requested fee is therefore confirmed by a lodestar crosscheck.

**D.    Lead Counsel's Litigation Expenses are Reasonable and Should be Approved.**

"An attorney who has created a common fund for the benefit of the class is also entitled to reimbursement of reasonable litigation expenses from that fund." *Bloom,* 2024 WL 1995840, at \*9. Such expenses include costs incurred for mediation, travel, filing fees, service of process, expert fees, electronic legal research, deposition and other transcripts. *See Franco v. E-3 Sys.*, 2021 WL 2333851, at \*6 (N.D. Cal. June 8, 2021); *Edenborough v. ADT, LLC*, 2019 WL 4164731, at \*5 (N.D. Cal. July 22, 2019).

As detailed in the Walker Declaration, Lead Counsel incurred $337,645.15 in expenses litigating this case. *Id.* at ¶140. The vast majority of these expenses were related to the retention of experts who guided Lead Counsel and the Class through certification. These expenses were

reasonable and necessary for the prosecution and resolution of the litigation and are of the type routinely charged to hourly paying clients, such as expert fees, legal research, court filing fees, travel, meals. *See, e.g., In re Aqua Metals*, 2022 WL 612804, at *7. A complete breakdown by category of the expenses Lead Counsel incurred is set forth in ¶140 of the Walker Declaration.

## IV.    CONCLUSION

For the reasons provided above, the Court should: (i) award Lead Counsel attorneys' fees of 27.5% of the $14,250,000 Settlement Fund; and (ii) approve the reimbursement of $337,645.15 in out-of-pocket expenses reasonably expended by Lead Counsel in the prosecution of this action.

July 28, 2025                                         Respectfully submitted,

                                                     **Block & Leviton LLP**

                                                     /s/ Jacob A. Walker

                                                     Jacob A. Walker (SBN 271217)
                                                     400 Concar Drive San Mateo, CA 94402
                                                     (650) 781-0025 phone
                                                     jake@blockleviton.com

                                                     Jeffrey C. Block, *pro hac vice*
                                                     Michael D. Gaines (*pro hac vice*)
                                                     260 Franklin Street, Suite 1860
                                                     Boston, MA 02110
                                                     (617) 398-5600 phone
                                                     jeff@blockleviton.com
                                                     michael@blockleviton.com

                                                     *Counsel for Lead Plaintiff and the Class*

MOTION FOR ATTORNEYS' FEES                                                    19
CASE NO. 4:21-CV-00076-HSG