# EXHIBIT 3

Jeffrey C. Block, *pro hac vice*
Michael D. Gaines, *pro hac vice*
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
michael@blockleviton.com

Jacob A. Walker (SBN 271217)
**Block & Leviton LLP**
400 Concar Drive
San Mateo, CA 94402
(650) 781-0025 phone
jake@blockleviton.com

*Attorneys for Lead Plaintiff*
*Jeffrey M. Fiore and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| MICHAEL PARDI, *Individually and on Behalf of All Others Similarly Situated,*<br><br>Plaintiff,<br><br>v.<br><br>TRICIDA, INC. and GERRIT KLAERNER,<br><br>Defendants. | Case No.: 4:21-cv-00076-HSG<br><br>**Stipulated [Proposed] Order Granting Final Settlement Approval, Request for Attorneys' Fees and Expenses, and Request for Reimbursement of Lead Plaintiff's Costs**<br><br>**Date:**          **October 16, 2025**<br>**Time:**          **2:00 p.m.**<br>**Courtroom:**   **2, 4th Floor**<br><br>**Hon. Haywood S. Gilliam, Jr.** |

STIPULATED [PROPOSED] FINAL APPROVAL ORDER
CASE NO. 4:21-CV-00076-HSG

Before the Court are Lead Plaintiff's motion for final approval of class action settlement, Lead Counsel's motion for an award of attorneys' fees and expenses, and Lead Plaintiff's motion for reimbursement of reasonable costs. *See* Dkt Nos. 223-225. The Court **GRANTS** the motions.

## I.      Background

### A.      Factual Allegations

Tricida, Inc. was a clinical-stage biopharmaceutical company.[1] *See* Dkt. No. 142 ("Second Amended Complaint" or "SAC") at ¶ 45. Its lead investigational drug candidate, veverimer, was intended to slow the progression of chronic kidney disease. *Id.* at ¶¶ 4, 45, 62. Lead Plaintiff alleges that Tricida completed a Phase 3 study for veverimer in May 2018 and based on the purported strength of the Phase 3 results, Tricida held its initial public offering on June 18, 2018, selling over 13 million shares of its common stock for $19 per share. *Id.* at ¶¶ 5–7, 62, 65. Tricida submitted veverimer's New Drug Application ("NDA") for approval to the U.S. Food and Drug Administration ("FDA") in August 2019, and the FDA accepted the application for review in November 2019. *Id.* at ¶ 71.

Lead Plaintiff alleges that on an earnings call in May 2020, Defendant Gerrit Klaerner, Tricida's former Chief Executive Officer and President, made false and misleading statements and omissions of material facts regarding the likelihood that the FDA would approve the NDA. *See id.* at ¶¶ 4, 26, 41. According to Lead Plaintiff, by the time of this earnings call, the FDA had already highlighted "significant issues" with the NDA based on veverimer's trial data. *Id.* at ¶¶ 20, 22–23, 25, 72–77. Moreover, Lead Plaintiff alleges that in meetings and conversations with Tricida in January, March, April, and May 2020, the FDA had repeatedly communicated that because of those "significant issues," it no longer believed that it was necessary to convene an Advisory Committee ("AdCom") meeting to consider the NDA. *Id.* at ¶¶ 22, 25, 74, 159. Lead Plaintiff alleges that despite knowing the FDA's concerns, Defendant Klaerner misled investors on the May 2020 earnings call by: (1) disclosing only one outstanding review issue discussed at the meeting with the FDA—the magnitude and durability of the treatment effect— while concealing the FDA's

---

[1] As described more below, Tricida filed a voluntary petition for reorganization under Chapter 11 of the bankruptcy code in January 2023.

STIPULATED [PROPOSED] FINAL APPROVAL ORDER                                                    1
CASE NO. 4:21-CV-00076-HSG

other "significant" concerns about the applicability of the clinical data to the U.S. population; and (2) stating that the FDA was not planning on holding an AdCom due in part to "the logistical challenges posed by COVID-19." *Id.* at ¶ 26. Defendant Klaerner denies the claims asserted against him and denies having engaged in any wrongdoing or violation of law of any kind whatsoever.

In July 2020, Tricida disclosed in a press release that the FDA had notified the company that the agency had "identified deficiencies that preclude discussion of labeling and postmarketing requirements/commitments at this time." *Id.* at ¶¶ 28, 79. In August 2020, Tricida issued another press release, stating that it had received a letter from the FDA denying the NDA. *See id.* at ¶¶ 29, 82–84. The FDA (1) expressed concerns about the sufficiency and reliability of Tricida's Phase 3 study and (2) sought more data about the efficacy of veverimer. *See id.* Then in October 2020, Tricida announced that the FDA had stated it would not approve veverimer without different evidence of the drug's efficacy, which would require additional trials. *Id.* at ¶¶ 30, 86, 182. Tricida announced in December that it had filed a formal appeal regarding the denial of the NDA. *Id.* at ¶ 32, 90. And on February 25, 2021, Tricida announced that the FDA had denied the appeal. *Id.* at ¶¶ 91–92. Lead Plaintiff alleges that following this news, Tricida's stock price repeatedly fell and closed at $5.11 per share on February 26, 2021. *See id.* at ¶¶ 28-29, 31–33, 79, 88, 93, 175, 178, 181, 184, 186.

## B.    Procedural Background

On January 6, 2021, Plaintiff Michael Pardi filed an initial complaint against both Tricida and Defendant Klaerner, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5. *See* Dkt. No. 1. In April 2021, the Court appointed Jeffrey M. Fiore as Lead Plaintiff and Block & Leviton LLP as Lead Counsel. Dkt. No. 65. On January 11, 2023, Tricida filed a voluntary petition for reorganization under Chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the District of Delaware, and Lead Plaintiff subsequently moved to voluntarily dismiss Tricida from this case without prejudice.[2] *See* Dkt. Nos. 120, 125. The Court

---

[2] In May 2023, the Bankruptcy Court approved Tricida's chapter 11 plan of liquidation, and the plan effective date was June 12, 2023. *See In re Tricida, Inc.*, Case No. 1:23-bk-10024 (JTD) (Bankr. D. Del.), Dkt. No. 515.

STIPULATED [PROPOSED] FINAL APPROVAL ORDER                                          2
CASE NO. 4:21-CV-00076-HSG

granted the motion on March 23, 2023. *See* Dkt. 132. Defendant Klaerner, therefore, is the only remaining Defendant in this case.

The parties engaged in significant motions practice, including several rounds of motions to dismiss. *See, e.g.*, Dkt. Nos. 76, 128. In September 2024, the Court granted Lead Plaintiff's Motion to Certify Class, Appoint Class Representative, and Appoint Class Counsel. *See* Dkt. No. 188. The Court (1) certified a class of investors who acquired Tricida common stock from May 8, 2020, to February 25, 2021 (the "Class Period"), (2) appointed Lead Plaintiff as class representative, and (3) appointed Block & Leviton LLP as class counsel. *Id.* The parties then engaged in substantial discovery. *See* Dkt. No. 211 at 6–8; *see also* Dkt. No. 211-1 ("Block Decl.") at ¶¶ 3–17. On May 16, 2025, the Court granted preliminary approval of the settlement. *See* Dkt. 220.

### C.     Settlement Agreement

In April and November 2024, the parties participated in mediation with Michelle Yoshida of Phillips ADR. *See* Block Decl. at ¶¶ 19–22. The parties ultimately entered into a settlement agreement, fully executed in March 2025. Dkt. No. 211-2 ("Settlement Agreement" or "SA"). The key terms are as follows:

Class Definition: The Class definition remains unchanged following the Court's prior order granting class certification as "all persons or entities who purchased or otherwise acquired common stock of Tricida, Inc. during the period from May 8, 2020 to February 25, 2021." *Id.* at §§ 1.3, 1.5; *see also* Dkt No. 223-2, Exhibit A ("Class Noice" or "CN") at 4. The Class definition excludes anyone who validly seeks exclusion from the Class or whose request for exclusion the Court accepts. *Id.* at § 1.3. The Court preliminarily approved the Class definition in May 2025. Dkt. 220 at 3-4.

Settlement Benefits: Defendant Klaerner has caused to be made a non-reversionary payment of $14,250,000. SA at §§ 1.27, 3.1, 3.3, 6.8. The Settlement Fund also includes taxes and tax expenses, Court-approved attorneys' fees and costs, settlement administration fees, any additional award to Lead Plaintiff, and payments to Class Members. *Id.* at §§ 1.17, 3.9, 6.3, 7.1–7.2. The cash payments to the Class will be based on a "Plan of Allocation," which Lead Plaintiff has included as part of the notice to Class Members. *Id.* at §§ 1.22, 6.4–6.7; Class Notice at 8-13.

The parties have explicitly agreed that this Plan of Allocation is not part of the parties' stipulated settlement and the Court should consider it separately from the fairness, reasonableness, and adequacy of the settlement. SA at § 6.11.

The proposed Plan of Allocation provides a formula for determining the "Recognized Loss Amount" for transactions during the Class Period. Class Notice at 9-10. It accounts for factors including when the common stock was purchased or otherwise acquired during the Class Period; the amount of stock acquired; whether such stock was sold, and if so, the timing and proceeds of the sales; and the "artificial inflation" of the stock during that time. *Id.* at 9–14. An Authorized Claimant with any Recognized Loss Amount greater than zero is entitled to a minimum Distribution Amount of $10.00. *Id.* at 11.

Each Class Member must submit a Proof of Claim and Release form to the Claims Administrator to be eligible for payment from the Settlement Fund. SA at § 6.5; *see also* Dkt. No. 223-2, Ex. A ("Proof of Claim and Release" form). Class Members can submit this form by mail or online through a claims portal available on the Settlement website. Dkt. No. 219-1, Ex. A ("Cormio Decl.") at ¶¶ 11–17.

*Cy Pres* Distribution: If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the initial distribution of funds, the Claims Administrator shall, if feasible, redistribute the balance among Authorized Claimants until the remaining balance is *de minimis*. SA at § 6.8. Any *de minimis* balance will be donated to the Bluhm Legal Clinic Center for Litigation and Investor Protection at Northwestern University Pritzker School of Law. *Id.*

Release: All Class Members will release Defendant, "Former Defendant" Tricida, Inc., and their family members and related parties from:

> any and all claims and causes of action of every nature and description whatsoever as against the Released Defendant Parties that have been or could have been asserted in this or any other action that arise out of, are based upon, or relate in any way to both: (a) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to in this action, or which could have been alleged in this action, and (b) the purchase, acquisition, holding, sale, or disposition of Tricida securities by any Class Member during the Class Period, including Unknown Claims as defined in ¶ 1.31

hereof, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule, or regulation, at law or in equity, whether fixed or contingent, whether foreseen or unforeseen, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, whether direct, representative, class, or individual in nature.

"Unknown Claims" means any Released Claims or Released Defendant Claims that Defendant, Lead Plaintiff, or any other Class Member does not know or suspect to exist in such party's favor at the time of the release, which, if known by such party, might have affected such party's decision to settle or release claims.

*See id.* at §§ 1.13, 1.23, 1.25, 1.31, 5.1–5.3. The settlement "may [] release factually related claims against parties not named as defendants" provided, as is the case here, "that the released claims 'arise from an identical factual predicate as the claims asserted' in the case." *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006).

Class members further agree to waive:

the provisions, rights, and benefits of California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

SA at § 1.31. They further agree to waive: "any and all provisions, rights, and benefits conferred by law of any state or territory of the United States, or principle of common law that are similar, comparable, or equivalent to California Civil Code § 1542." *Id.* Additionally, Class Members agree to waive "any claims they may have that arise from any failure of the notice process" as to Defendant and Tricida. *Id.* § 4.2. Defendant and Tricida also do not have any "responsibility or liability with respect to the Plan of Allocation" for paying out claims, and Class Members do not have claims against counsel, Lead Plaintiff, Defendant, or Tricida "based on distributions made substantially in accordance with" the Settlement Agreement and Plan of Allocation. *Id.* at §§ 1.22, 6.12.

Class Notice: A third-party Claims Administrator, Kroll Settlement Administration LLC ("Kroll"), mailed class notices and claim forms to all shareholders who could be identified with reasonable effort, and posted the Notice, Proof of Claim and Release form, and other key case documents on a dedicated website, www.tricidasecuritiessettlement.com. *Id.* at §§ 4.1–4.2, 6.1– 6.2; *see also* Declaration of Robert Cormio Concerning (a) Mailing and Emailing of the Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, Dkt. No 223-2 (Suppl. Cormio Decl.), at ¶¶ 1-10, 13. Kroll also caused a summary Notice to be transmitted over *PR Newswire* in June 2025 and maintains a case-specific, toll-free telephone helpline to field potential Class Members' inquiries. *Id.* at ¶¶ 11, 12.

Kroll represents that at least 5,664 Notice packets were mailed to potential Class Members and nominees, 581 summary notices were mailed to potential Class Members, and Broadridge Financial Services sent an additional 5,950 email notifications containing links to the Notice which included a detailed description of the Plan of Allocation. *Id.* at ¶ 10. There were 41 undeliverable notices. *Id.*

Opt-Out Procedure: The deadline for a class member to opt out or object to the settlement was September 11, 2025. Dkt. No. 222 at 1. Defendant retained the right to terminate the settlement if the number of opt-outs reached an agreed upon threshold. SA § 8.3. The threshold is set out in a confidential supplemental agreement, which the parties have submitted for the Court's *in camera* review. *See* Dkt. No. 220.

Lead Plaintiff Award: Lead Plaintiff applied for $1,700, or $680 in the alternative, for reimbursement of reasonable costs and expenses related to representation of the Class, consistent with the PSLRA and subject to the Court's approval. SA § 7.1; Dkt. No. 225.

Attorneys' Fees and Costs: Consistent with the Class Notice, Lead Counsel filed an application for attorneys' fees for $3,918,750 (27.5% of the settlement fund), and $337,645.15 in litigation expenses. SA at §§ 7.1–7.2; Dkt. No. 224.

**D.      Supplemental Agreement**

The Settlement Agreement also references a confidential "Supplemental Agreement" that was not filed with the Court. S.A. at §§ 8.3, 9.12. The Supplemental Agreement details the

STIPULATED [PROPOSED] FINAL APPROVAL ORDER                                        6
CASE NO. 4:21-CV-00076-HSG

conditions under which Defendant may terminate the settlement if the requests for exclusion from the settlement class exceed a certain level. *Id.* At the Court's request, the parties submitted the confidential Supplemental Agreement for *in camera* review. The Court reviewed the Supplemental Agreement and found that it does not impact the fundamental fairness of the Settlement Agreement. *See* Dkt. No. 220 at 7-8.

## II.    Analysis

### A.    Final Settlement Approval

#### i.    Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because the Court certified a class before the parties agreed to settle, *see* Dkt. No. 188, and no facts that would affect these requirements have changed since the Court provisionally certified the Settlement Class on May 16, 2025, this order incorporates by reference the Court's prior analysis as set forth in the order granting preliminary approval, *see* Dkt. No. 220 at 8. The proposed Settlement Class is identical to the class already certified and preliminarily approved by the Court. *See* SA at §§ 1.3, 1.5; Dkt. No. 220 at 3-4.

#### ii.    The Settlement

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess whether a proposed settlement comports with Rule 23(e), the Court may also consider some or all of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See id.* at 609. In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a)    Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice). The PSLRA has additional notice requirements. *See* 15 U.S.C. § 78u-4(a)(7).

The Court finds that the notice plan previously approved by the Court was implemented and complied with Rule 23(c)(2)(B) and the PSLRA. *See* Dkt. No. 220 at 14-16; *see also* Suppl. Cormio Decl. ¶¶ 4-10. The Claims Administrator timely mailed a total of 5,664 Notices and Claim Forms to Class Members and Nominee Account Holders and emailed 581 summary Notices to Class Members or nominees. Dkt. 223-1 ("Walker Decl.") Ex. 1 at ¶10. Kroll also states that Broadridge Financial Services represented they sent 5,950 email notifications containing links to the Notice to customers that had previously elected to receive notification of potential settlements via email. *Id.* In addition, 51 Notices were returned as undeliverable and 41 of those Notices remain undeliverable. *Id.*

The Notice was also available to Class Members on the Settlement Website, www.TricidaSecuritiesSettlement.com, along with other relevant documents such as the Claim Form, Stipulation, and certain orders of this Court. *Id.* at ¶13. On June 20, 2025, the summary Notice was published over *PR Newswire*, a national newswire service. *Id.* at ¶11. Lead Counsel noted that no Class Members have opted out or objected to any part of the Settlement. Supplemental Declaration of Robert Cormio Concerning: (A) Notice Dissemination; (B) Requests for Exclusion and Objections Received to Date; and (C) Claims Filed to Date ("Second Suppl. Cormio Decl."), ¶9.

In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to class members.

### b)   Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

In deciding the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified. *See* Dkt. No. 220 at 14-16; *see also McKinney Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021). The Court notes that there is no clear sailing agreement: the Settlement Agreement does not prevent Defendant from objecting to or opposing any request for attorneys' fees, and the settlement is non-reversionary. SA at §§ 1.27, 3.1, 3.3, 6.8. Nothing in the record changes the Court's preliminary conclusion regarding these factors. The Court still scrutinizes the requests for attorneys' fees and expenses and costs for Lead Plaintiff to ensure Class Members' interests are protected under the settlement. The Court finds that other factors also indicate that the proposed settlement is fair, adequate, and reasonable.

### 1.   Strength of Lead Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the risk Lead Plaintiff would face by continuing to litigate the case. For example, Lead Counsel notes that Defendant contends investors already knew veverimer was subject to risks associated with FDA approval, the omitted information was disclosed to investors long before the end of the Class Period, Defendant was not obligated to disclose the omitted information, and had no intent, or motive, to mislead investors. Dkt. 223 at 3. The parties

STIPULATED [PROPOSED] FINAL APPROVAL ORDER                                          9
CASE NO. 4:21-CV-00076-HSG

also disagreed on whether certain disclosures were "corrective" of the fraud and the size and scope of the damages. *Id.* Defendant could have appealed any favorable result for the Class which, even if unsuccessful, would delay the Class's recovery by years. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008); *In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal. June 14, 2023), *aff'd sub nom. In re Tesla, Inc., Sec. Litig.*, 2024 WL 4688894 (9th Cir. Nov. 6, 2024) ("After a three-week trial in January 2023, the jury awarded a verdict for Defendants on all claims."). Even if Lead Plaintiff was to prevail, the Class's recovery—after summary judgment, trial, and appeals—could come years in the future. *Id.* at 12-13.

Further complicating this case and demonstrating the strength of the recovery is that Tricida filed for bankruptcy in 2023, leaving only Klaerner as the remaining defendant. While Lead Plaintiff states that Klaerner had Directors & Officers ("D&O") insurance to provide coverage for the claims against him, the policy was for a limited amount and provided for the payment of defense costs and expenses. Dkt. 223 at 4-5. The longer the litigation went on, the less insurance would be available for any future recovery, and there was no assurance that Klaerner had sufficient personal assets to satisfy any potential judgment. *Id.*

The Court finds that these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 220 at 12; *see also Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523, at *4 (N.D. Cal. March 18, 2016) (citing cases).

Here, the total value of the settlement is $14.25 million. SA at § 1.27. Lead Counsel contends that this settlement offer constitutes 6.6% of the most likely recoverable damages, assuming Lead Plaintiff was to prevail on his claims against Defendant. *See* Dkt. 223-1 ("Walker Decl.") ¶ 111. On the other hand, if the case were to proceed, Defendant intended to argue that the Class was not entitled to any damages. *See* Dkt. No. 211 at 15. Even applying a "plaintiff-style damages analysis," Defendant suggested that damages might only be as high as $44 million. *See id.* Viewed through this lens, the Settlement constitutes approximately 32% of estimated damages. *See id.* at 17. Moreover, Lead Plaintiff has acknowledged that he would face substantial risk in

STIPULATED [PROPOSED] FINAL APPROVAL ORDER                                    10
CASE NO. 4:21-CV-00076-HSG

continuing to litigate this case, such as prevailing at trial and through the appeals process. *Id.* at 15–17. At the class certification stage, for example, Defendant argued that Tricida's stock price did not rise a statistically significant amount following the challenged statements. *See* Dkt. No. 162 at 5–9. Defendant further argued that there was a mismatch between the challenged statements and the alleged corrective disclosures for purposes of establishing price impact. *Id.* The parties suggested that this case, if it went to trial, could ultimately turn on a battle of experts and there was a significant risk that Class would ultimately recover nothing. *See* Dkt. No. 211 at 15–16.

That a neutral third-party recommended the Settlement Amount from a position informed by these considerations further supports the conclusion that the Settlement is a reasonable compromise. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, noncollusive, negotiated resolution.").

The Court agrees that this recovery is in line with comparable class action settlements. *See, e.g., Azar v. Blount Int'l, Inc.*, No. 3:16-cv-0483, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement fund amount of 4.63 to 7.65% of the class's total estimated damages); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2019 WL 2077847, at *2 n.2. (N.D. Cal. May 10, 2019) (noting that "the median settlement recovery from 2009 to 2017 was only five percent of damages in securities class actions"). Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

### 3. Extent of Discovery and Stage of Proceedings

The Court also finds that Lead Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties reached settlement after over four years of litigation and hard-fought negotiations which consisted of careful analysis of complex factual and legal issues and an extensive amount of time and effort. *See* Walker Decl. ¶ 2-3. The Court is persuaded that Class Counsel entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

**4.  The Experience and Views of Counsel**

The Court next considers the experience and views of counsel. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotations omitted). Lead Counsel has decades of experience litigating securities class actions. *See* Walker Decl., Ex. 3. And Lead Counsel recommends this Settlement as fair, adequate, and reasonable. Dkt. 223 at 7. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements[.]"). This factor's impact is therefore modest but favors approval.

**5.  Reaction of the Class**

Finally, the reaction of the Class Members also supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

As of October 7, 2025, no objections and no requests for exclusion have been received. Second Suppl. Cormio Decl., ¶9. The Court finds that the lack of objections and opt-outs indicates support among the Class Members and weighs in favor of approval of the settlement. *See, e.g., Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

*            *            *

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement Class Members received adequate notice. Accordingly, Lead Plaintiff's motion for final approval of the class action settlement is **GRANTED**.

**B.    Attorneys' Fees and Litigation Expenses**

In their motion and consistent with the Class Notice, Lead Counsel asks the Court to approve an award of $3,918,750 in attorneys' fees and $337,645.15 in litigation costs. Dkt No. 224.

Lead Counsel is entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from the common fund they created for the benefit of the Class. Fed. R. Civ. P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). The purpose of the "common fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). The district court has discretion over the amount of attorney fees to award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

**i.    Attorneys' Fees**

In a common fund case, the Court may choose either (1) the lodestar method or (2) the percentage-of-the-fund to calculate reasonable attorneys' fees. *Id.* at 1047. Under the percentage of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards, but the Court has awarded attorneys' fees exceeding the 25% benchmark in similar cases. *See Fleming v. Impax Laboratories, Inc.*, No. 4:16-cv-06557-HSG, 2022 WL 2789496, at *7-10 (N.D. Cal. July 15, 2022) (awarding attorneys' fees in securities class action of 30% of $33 million recovery); *Hunt v. Bloom Energy Corp.*, No. 4:19-cv-02935-HSG, 2024 WL 1995840, at *8-9 (N.D. Cal. May 6, 2024) (awarding 30% of $3 million recovery). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotations omitted). Generally, "the relevant community is the forum in which the district court sits." *Id.*

(citations omitted). And typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although the choice between lodestar and percentage calculation depends on the circumstances, either method may have its place in determining reasonable compensation for creating a common fund. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The Court finds Lead Counsel's requested fee of $3,918,750 to be reasonable.

First, Lead Counsel's request of 27.5% of the settlement amount is in line with prior awards in similar cases. *Fleming*, 2022 WL 2789496, at *7-10; *Bloom*, 2024 WL 1995840, at *8-9; *Omnivision*, 559 F. Supp. 2d at 1047 (approving attorneys' fees of 28% of $13.75 million securities settlement). Second, and most significantly, Lead Counsel achieved significant results for Class members by obtaining a net settlement amount of $14.25 million. *See* Dkt. 224 at 9-13. Third, no Class Member objected or opted out of the Settlement, which suggests support for the settlement's outcome. *See* Second Suppl. Cormio Decl., ¶9. And finally, Lead Counsel assumed substantial risk in litigating this lengthy case on a contingency fee basis and incurring costs without the guarantee of payment for its efforts. *See* Dkt. 224 at 14-16.

Using the lodestar method to cross-check, the Court notes that Lead Counsel's hourly rates are $970-$1,290 for partners and $535-$640 for associates. *Id.* at 17. The Court finds that the billing rates used by Class Counsel to calculate the lodestar are in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See, e.g., Hefler v. Wells Fargo & Co.*, No. 16-CV-05479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable).

Across Lead Plaintiff's bankruptcy counsel, Lowenstein Sandler LLP ("Bankruptcy Counsel"), partners' rates ranged from $1,195 to $1,625, counsel's rate was $1,055, and

STIPULATED [PROPOSED] FINAL APPROVAL ORDER                                    14
CASE NO. 4:21-CV-00076-HSG

paralegals' rates ranged from $380 to $410. Walker Decl., Ex. 5. These rates are likewise in line with the prevailing rates for bankruptcy proceedings in the District of Delaware, including the Tricida proceeding. *See In re: Tricida, Inc.*, No. 23-10024-JTD (Bankr. D. Del. Jan. 18, 2023), Dkt. 82 ("Sidley's billing rates for professionals who may work on this matter currently range from $1700 to $700 per hour for attorneys and from $540 to $314 for paraprofessionals."). Since Lead Counsel and Bankruptcy Counsel spent 3,326 hours on this litigation by final approval, the aggregate lodestar is approximately $2,771,874. Dkt. No. 224 at 5; Walker Decl. ¶¶ 131-132.

Lead Counsel's fee request of $3,918,750, then, amounts to a 1.41 multiplier over their anticipated lodestar. In similar cases, courts have approved multipliers ranging from 1.0 to 4.0. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the 1.0 to 4.0 range and 54% in the 1.5 to 3.0 range); *Vataj v. Johnson*, 2021 WL 5161927, at *9 (N.D. Cal. Nov. 5, 2021) (approving 2.5 multiplier in securities case). Overall, the lodestar cross-check supports the reasonableness of the fee. In recognition of the favorable settlement, the substantial risks of litigation, and the financial burden assumed, the Court **GRANTS** attorneys' fees of $_____ (___ %).

### ii.    Litigation Expenses

An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). Class Counsel is accordingly entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Id.*

The Court finds that Lead Counsel's request for reimbursement of $337,645.15 in litigation costs is reasonable. *See* Dkt. No. 224 at 18. The incurred costs include damages consultant fees, mediation fees, filing and court fees, electronic research, postage and travel. *See* Walker Decl. ¶ 140. These reflect the type of expenses routinely charged to paying clients. *See, e.g., Torres v. Pick-A-Part Auto Wrecking*, No. 116-CV-01915, 2018 WL 3570238, at *9 (E.D. Cal. July 23, 2018) (finding that ordinary out-of-pocket expenses include "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees"); *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (same). And the amount requested is also within range of approval. *See, e.g., Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019) (reimbursing

$823,904.04 for costs including filing fees, copying, postage, document storage, depositions, travel, experts, transcripts, computer research, the cost of the mediator, and common-fund contributions). The Court finds that these costs were reasonably incurred and **GRANTS** the motion for costs in the amount of $337,645.15.

### C. Reimbursement for Lead Plaintiff

Lead Plaintiff also seeks a $1,700 award of costs and expenses related to his representation of the Class, or in the alternative, $680 to reimburse his limited paid time off work. Dkt. No 225.

The PSLRA prohibits incentive awards, stating that named plaintiffs "will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's *pro rata* share of any recovery." 15 U.S.C. § 78u–4(a)(2)(A)(vi); *see also Rodriguez*, 563 F.3d at 960 n.4 ("The [PSLRA] prohibits granting incentive awards to class representatives in securities class actions."); *Schwartz v. Arena Pharms., Inc.*, 775 F. App'x 342, 343 (9th Cir. 2019) (finding district court abused its discretion in granting an incentive award rather than assessing request for lost wages under the PSLRA).

However, courts may still award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4). Lead Plaintiff has provided "meaningful evidence demonstrating that the requested amounts represent actual costs and expenses incurred directly as a result of the litigation." *See In re Lyft, Inc. Sec. Litig.*, No. 19-CV-02690-HSG, 2022 WL 17740302, at *5 (N.D. Cal. Dec. 16, 2022) (quoting *In re Twitter Inc. Sec. Litig.*, No. 16-CV 05314-JST, 2022 WL 17248110, at *2 (N.D. Cal. Nov. 21, 2022)).

Lead Plaintiff conservatively estimates that he spent at least 20 hours reviewing relevant case documents, staying apprised of developments in the case, providing Lead Counsel with information and materials regarding his investments, responding to Defendant's discovery requests, taking paid time off to prepare and sit for a deposition, and conferring with Lead Counsel throughout the litigation, including regarding the settlement negotiations. Dkt. 225 at 3. At minimum, the record demonstrates that Lead Plaintiff traded the value of his paid day off work to instead prepare and sit for a deposition on behalf of the Class. Dkt. 163-16 (transcript excerpts of the deposition of Jeffrey M. Fiore). Lead Plaintiff's lost paid day off has the equivalent value of $680. Dkt. No. 223-7 (Fiore Decl.) at ¶¶7 8.

Lead Plaintiff has provided sufficient evidence of his reasonable costs, and the Court therefore **GRANTS** Lead Plaintiff's requested reimbursement in the amount of $_____.

### III.    CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement, **GRANTS** the motion for attorneys' fees and litigation expenses, and **GRANTS** the motion for reimbursement to Lead Plaintiff. Dkt. Nos. 223-225. The Court approves the settlement amount of $14,250,000. The Court also approves (1) Lead Counsel's request for an award of attorneys' fees in the amount of $_____; (2) Lead Counsel's request for payment of current actual costs incurred in the amount of $337,645.15; (3) reimbursement of costs to Lead Plaintiff in the amount of $_____.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. Within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to class members, *cy pres* beneficiaries, and others pursuant to the settlement agreement), the parties must file a Post-Distribution Accounting, which provides the following information:

> The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average, median, maximum, and minimum recovery per claimant, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each *cy pres* recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, plaintiff's counsel's updated lodestar total, and the lodestar multiplier.

Counsel is directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases. The parties shall post the Post-Distribution Accounting, including the chart, on the settlement website. The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

**IT IS SO ORDERED.**

DATED: _____, 2025

_____
HONORABLE HAYWOOD S. GILLIAM, JR.
United States District Judge

STIPULATED [PROPOSED] FINAL APPROVAL ORDER                                          17
CASE NO. 4:21-CV-00076-HSG