UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PARDI, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>TRICIDA, INC., et al.,<br><br>  Defendants. | Case No. 21-cv-00076-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL, MOTION FOR ATTORNEYS' FEES AND COSTS, AND LEAD PLAINTIFF'S MOTION FOR AWARD OF REASONABLE COSTS AND EXPENSES**<br><br>Re: Dkt. Nos. 223, 224, 225 |

Pending before the Court are Lead Plaintiff's unopposed motions for final approval of class action settlement, for attorneys' fees and costs, and for award of reasonable costs. Dkt. Nos. 223, 224, 225. The Court held a final fairness hearing on October 16, 2025. For the reasons detailed below, the Court **GRANTS** the motions.

I.  BACKGROUND

  A.  **Factual Allegations**

Tricida, Inc. was a clinical-stage biopharmaceutical company.[1] *See* Dkt. No. 142 ("Second Amended Complaint" or "SAC") at ¶ 45. Its lead investigational drug candidate, veverimer, was intended to slow the progression of chronic kidney disease. *Id.* at ¶¶ 4, 45, 62. Tricida submitted veverimer to the U.S. Food and Drug Administration ("FDA") for approval and the FDA accepted Tricida's New Drug Application ("NDA") for review. *Id.* at ¶ 71. Lead Plaintiff alleges that the FDA identified "significant issues" with the NDA based on veverimer's trial data. *Id.* at ¶¶ 20, 22–23, 25, 72–77. Notwithstanding these concerns, however, Lead Plaintiff alleges that Defendants misled investors regarding the likelihood that the FDA would approve the NDA. *See,*

---

[1] As described more below, Tricida filed a voluntary petition for reorganization under Chapter 11 of the bankruptcy code in January 2023.

*e.g.*, *id.* at ¶¶ 4, 26, 41. The FDA ultimately denied the NDA and Tricida's subsequent appeal. *See id.* ¶¶ 30, 32, 86, 90–92, 182. Lead Plaintiff alleges that Tricida's stock price repeatedly fell following Tricida's announcement of this news. *See id.* at ¶¶ 28–29, 31–33, 79, 88, 93, 175, 178, 181, 184, 186.

### B.     Procedural Background

On January 6, 2021, Plaintiff Michael Pardi filed an initial complaint against both Tricida and Defendant Gerritt Klaerner, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5. *See* Dkt. No. 1. In April 2021, the Court appointed Jeffrey M. Fiore as Lead Plaintiff and Block & Leviton LLP as Lead Counsel.[2] Dkt. No. 65. On January 11, 2023, Tricida filed a voluntary petition for reorganization under Chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the District of Delaware, and Lead Plaintiff subsequently moved to voluntarily dismiss Tricida from this case without prejudice.[3] *See* Dkt. Nos. 120, 125. The Court granted the motion and Defendant Klaerner, therefore, is the only remaining Defendant in this case. *See* Dkt. 132.

The parties engaged in significant motions practice, including several rounds of motions to dismiss. *See, e.g.*, Dkt. Nos. 76, 128. In September 2024, the Court granted Lead Plaintiff's Motion to Certify Class, Appoint Class Representative, and Appoint Class Counsel. *See* Dkt. No. 188. The Court (1) certified a class of investors who acquired Tricida common stock from May 8, 2020, to February 25, 2021 (the "Class Period"), (2) appointed Lead Plaintiff as class representative, and (3) appointed Block & Leviton LLP as class counsel. *Id.* The parties then engaged in substantial discovery. *See* Dkt. No. 211 at 6–8; *see also* Dkt. No. 211-1 ("Block Decl.") at ¶¶ 3–17. The Court granted preliminary approval of the proposed class action settlement in May 2025. Dkt. No. 220.

//

---

[2] This case was originally assigned to Judge Lucy H. Koh and reassigned to the undersigned in January 2022. *See* Dkt. No. 90.

[3] In May 2023, the Bankruptcy Court approved Tricida's chapter 11 plan of liquidation, and the plan effective date was June 12, 2023. *See In re Tricida, Inc.*, Case No. 1:23-bk-10024 (JTD) (Bankr. D. Del.), Dkt. No. 515.

**C.  Settlement Agreement**

In April and November 2024, the parties participated in mediation with Michelle Yoshida of Phillips ADR. *See* Block Decl. at ¶¶ 19–22. The parties ultimately entered into a settlement agreement, fully executed in March 2025. *See* Dkt. No. 211-2 ("Settlement Agreement" or "SA"). The key terms are as follows:

Class Definition: The Class is defined the same as in the Court's prior order granting class certification as "all persons or entities who purchased or otherwise acquired common stock of Tricida, Inc. during the period from May 8, 2020 to February 25, 2021." *Id.* at §§ 1.3, 1.5. The Class definition excludes anyone who validly seeks exclusion from the Class or whose request for exclusion the Court accepts. *Id.* at § 1.3.

Settlement Benefits: Defendant Klaerner will make a non-reversionary payment of $14,250,000. *See id.* at §§ 1.27, 3.1, 3.3, 6.8. The Settlement Fund also includes taxes and tax expenses, Court-approved attorneys' fees and costs, settlement administration fees, any additional award to Lead Plaintiff, and payments to Class Members. *See id.* at §§ 1.17, 3.9, 6.3, 7.1–7.2. The cash payments to the Class will be based on a "Plan of Allocation," which was included as part of the notice to Class Members. *See id.* at §§ 1.22, 6.4–6.7; *see also* Dkt. No. 223-2, Ex. 1 ("Cormio Decl.").

The Plan of Allocation provides a formula for determining the "Recognized Loss Amount" for transactions during the Class Period. *See id.*, Ex. A at 16–10. It accounts for factors including when the common stock was purchased or otherwise acquired during the Class Period; the amount of stock acquired; whether such stock was sold, and if so, the timing and proceeds of the sales; and the "artificial inflation" of the stock during that time. *See id.*

Each Class Member was required to submit a Proof of Claim and Release form to the Claims Administrator by October 1, 2025, to be eligible for a payment from the Settlement Fund. *See* SA at § 6.5; *see also* Cormio Decl., Ex. A at 25–32. The parties have estimated that Class Members will receive approximately $.40 per share of Tricida common stock and Authorized Claimants with any Recognized Loss Amount greater than zero will receive a minimum of $10.00. *See* Cormio Decl., Ex. A at 10, 18. During the hearing, Counsel indicated that based on the

3

1  Claims Administrator's current assessments, the average recovery will be approximately $2,000
2  per Claimant, although the top 200 Claimants thus far represent approximately 90% of the total
3  Recognized Loss.
4        *Cy Pres* Distribution:  If there is any balance remaining in the Net Settlement Fund after a
5  reasonable period of time after the initial distribution of funds, the Claims Administrator shall, if
6  feasible, redistribute the balance among Authorized Claimants until the remaining balance is *de*
7  *minimis*.  *See* SA at § 6.8.  Any *de minimis* balance will be donated to the Bluhm Legal Clinic
8  Center for Litigation and Investor Protection at Northwestern University Pritzker School of Law.
9  *Id.*
10       Release:  All Class Members will release Defendant, "Former Defendant" Tricida, Inc.,
11 and their family members and related parties from:

> any and all claims and causes of action of every nature and description whatsoever as against the Released Defendant Parties that have been or could have been asserted in this or any other action that arise out of, are based upon, or relate in any way to both:  (a) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to in this action, or which could have been alleged in this action, and (b) the purchase, acquisition, holding, sale, or disposition of Tricida securities by any Class Member during the Class Period, including Unknown Claims as defined in ¶ 1.31 hereof, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule, or regulation, at law or in equity, whether fixed or contingent, whether foreseen or unforeseen, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, whether direct, representative, class, or individual in nature.
>
> "Unknown Claims" means any Released Claims or Released Defendant Claims that Defendant, Lead Plaintiff, or any other Class Member does not know or suspect to exist in such party's favor at the time of the release, which, if known by such party, might have affected such party's decision to settle or release claims.

*See id.* at §§ 1.13, 1.23, 1.25, 1.31, 5.1–5.3.[4]  The Class Members further agree to waive:

---

[4] During the hearing on the motion for preliminary approval the Court asked the parties for authority that would permit the settlement to release Tricida, which is no longer a party to this case.  The parties provided a supplemental brief. Dkt. No. 218.  Having reviewed the brief, the Court is persuaded that "[a] class settlement may [] release factually related claims against parties

4

United States District Court
Northern District of California

> the provisions, rights, and benefits of California Civil Code § 1542, which provides:
>
>> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

*Id.* at § 1.31. They further agree to waive:

> any and all provisions, rights, and benefits conferred by law of any state or territory of the United States, or principle of common law that are similar, comparable, or equivalent to California Civil Code § 1542.

*Id.* Additionally, Class Members agree to waive "any claims they may have that arise from any failure of the notice process" as to Defendant and Tricida. *See id.* § 4.2. Defendant and Tricida also do not have any "responsibility or liability with respect to the Plan of Allocation" for paying out claims, and Class Members do not have claims against counsel, Lead Plaintiff, Defendant, or Tricida "based on distributions made substantially in accordance with" the Settlement Agreement and Plan of Allocation. *See id.* at §§ 1.22, 6.12.

Class Notice: A third-party Claims Administrator, Kroll Settlement Administration LLC, mailed class notices to all shareholders who could be identified with reasonable effort, and emailed over 500 Nominee Account Holders to notify them of the settlement. *See* Cormio Decl. at ¶¶ 3–10. The Notice, Proof of Claim and Release form, and other key case documents were also posted on a dedicated website. *See id.* at ¶ 13. Kroll also published a summary Notice on *PR Newswire* and maintained a case-specific, toll-free telephone helpline to field potential Class Members' inquiries. *See id.* at ¶¶ 11–12.

---

not named as defendants" provided, as is the case here, that the released claims "arise from an identical factual predicate as the claims asserted" in the case. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006).

Lead Plaintiff Award: Consistent with the Settlement Agreement, Lead Plaintiff applied for an additional award of up to $1,700 to reimburse him for his time leading the case and sitting for his deposition. *See* Dkt. No. 225; *see also* SA at §§ 1.17, 6.3.

Attorneys' Fees and Costs: Also consistent with the Settlement Agreement, Lead Counsel filed an application for attorneys' fees and costs to be paid out of the Settlement Fund. Dkt. No. 224; *see also* SA at §§ 7.1–7.2. Lead Counsel seeks an award of 27.5% of the Settlement Fund, or $3,918,750.00, in attorneys' fees and $337,645.15 in costs. *See* Dkt. No. 224.

Opt-Out Procedure: The deadline for Class Members to opt out or object to the settlement was September 11, 2025. *See* Cormio Decl., Ex. A. Defendant retained the right to withdraw from the settlement if the number of opt outs reached an agreed-upon threshold. *See* SA at §§ 8.3, 9.12. The threshold was set out in a confidential supplemental agreement, which the parties provided to the Court for *in camera* review. In any event, and as confirmed during the hearing, Defendant has indicated that no class members have objected or opted out. *See* Cormio Decl. at ¶¶ 14–15; Dkt. No. 227 at 1–3; Dkt. No. 227-2, Ex. 1 ("Supp. Cormio Decl.").

## II. DISCUSSION

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998). As indicated above, however, the Court previously certified a class under Federal Rule of Civil Procedure 23(b)(3). *See* Dkt. No. 188. And the proposed Settlement Class is identical to the class already certified by the Court. *See* SA at §§ 1.3, 1.5. Because no facts that would affect certification under Rule 23 have changed since the Court preliminarily approved the settlement on May 16, 2025, this order incorporates by reference the Court's prior analysis. *See* Dkt. No. 220 at 8.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only

6

after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). Since then, the Ninth Circuit has applied this higher level of scrutiny even to settlements reached after class certification. *See Briseño v. Henderson*, 998 F.3d 1014, 1023–25 (9th Cir. 2021). As the Court explained, "[t]he specter of collusion still casts a long shadow over post-class certification settlements when they involve divvying up funds between class members and class counsel." *Id.* at 1024.

The Ninth Circuit has identified several "subtle signs" the Court should consider in determining whether "class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Roes*, 944 F.3d at 1043. These include: "(1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021).

To assess whether a proposed settlement comports with Rule 23(e), the Court may also consider some or all of the following factors:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Id.* at 609 (quotation omitted) (emphasis omitted). In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed

7

below, the Court finds that class members received adequate notice, and that the proposed settlement is fair, adequate, and reasonable.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. *Id*. Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice). The PSLRA also has additional notice requirements. *See* 15 U.S.C. § 78u-4(a)(7).

The Court finds that the notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 220 at 14–16; *see also* Cormio Decl. and Supp. Cormio Decl. As of October 7, 2025, Kroll has distributed 6,669 copies of the Notice to Nominee Account Holders and potential Class Members by mail and email. *See* Supp. Cormio Decl. at ¶¶ 2–3. Broadridge Financial Services, which has taken responsibility for claims processes for many large brokerage companies, also represented to Kroll that it sent 5,950 email notifications with links to the Notice to customers. *Id.* at ¶ 2. Kroll also published a summary Notice on *PR Newswire* and maintained a case-specific, website and toll-free telephone helpline to field potential Class Members' inquiries. *See* Cormio Decl. at ¶¶ 11–13. As of October 6, 2025, Kroll has received approximately 11,859 timely claims and 85 late claims. *See* Supp. Cormio Decl. at ¶ 7. Kroll has also received requests for 290 additional notices to be sent to Nominee Account Holders to forward the document to their customers and clients who may be Class Members and Kroll remailed Notice to one updated address. *See id.* at ¶ 2. Class Counsel explained that although the claims deadline has passed, they intend to seek court approval "to accept late-filed claims that would not otherwise interfere with the payment and distribution of the settlement

class" after Kroll is done processing the claims. *See* Dkt. No. 227 at 4. And as of the October 16 hearing, Counsel confirmed that Kroll has not received any objections to the settlement or requests for exclusion from the Settlement Class. *See* Supp. Cormio Decl. at ¶¶ 14–15. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

In evaluating the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified. *See* Dkt. No. 220 at 9–12; *see also McKinney-Drobnis*, 16 F.4th at 607–08. Nothing in the record changes the Court's preliminary conclusion regarding these factors. The proposed settlement is non-reversionary; notwithstanding any clear sailing provision regarding counsel's request for attorneys' fees, the majority of the monetary settlement will be distributed to Class Members; and the Court still carefully scrutinizes the request for attorneys' fees and costs to ensure Class Members' interests are protected under the settlement. *See* Section II.B. The Court further finds that other factors discussed in *McKinney-Drobnis* also indicate that the proposed settlement is fair, adequate, and reasonable.

#### 1. Strength of Plaintiffs' Case, Litigation Risk, and Risk of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Ching v. Siemens Indus., Inc.*, Case No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (citation omitted).

The Court finds that the amount offered in settlement is reasonable given the complexity of this litigation and the substantial risk that Plaintiff would face in continuing to litigate the case

given the nature of the asserted claims. This is a complex securities case that has been hard-fought and vigorously defended from the beginning. It also involves complex issues regarding the FDA approval process. Were this case to proceed, Defendant intends to raise substantial defenses implicating liability, loss causation, and damages, including that investors already knew about the risks associated with FDA approval of veverimer; Defendant had no obligation to disclose the omitted information and had no intent to mislead investors; and the relevant "truth" was disclosed long before the end of the Class Period. *See* Dkt. No. 223 at 3–4, 11–14; Dkt. No. 223-1 ("Walker Decl.") at ¶¶ 4, 93–101. Such issues would likely involve a "battle of the experts" at trial. *See* Walker Decl. at ¶ 99. Class Counsel thus acknowledges that there are significant risks that the Settlement Class would recover substantially less than their damages expert's calculations. *See* Dkt. No. 223 at 3–4, 11–14; Walker Decl. at ¶¶ 4, 93–101. In short, despite having confidence in the claims, Lead Plaintiff and Class Counsel acknowledge facing uncertainty in establishing liability and damages through summary judgment and at trial. *See id.*

In reaching a settlement, Lead Plaintiff has ensured a favorable recovery for the class and avoided these risks. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors also weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Settlement Amount

The Court previously concluded that the amount of the settlement was within the range of possible approval. *See* Dkt. No. 220 at 12–13. Its opinion has not changed. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See Villanueva v. Morpho Detection, Inc.*, Case No. 13-cv-05390-HSG, 2016 WL 1070523, at *4 (N.D. Cal. Mar. 18, 2016) (citing cases).

Lead Plaintiff's damages expert estimated that, assuming Plaintiff was to prevail on all his claims, the realistic total maximum recoverable damages would be approximately $215 million. *See* Dkt. No. 223 at 4, 15–16. The $14 million Settlement thus provides for recovery of approximately 6.6% of these total estimated damages. *Id.* However, if Defendant successfully

10

1  argued that full disclosure of the "truth" occurred no later than August 2021, then recoverable
2  damages could be as low as $44 million. *Id.* The Settlement accordingly provides for a recovery
3  of approximately 32% of these estimated damages. *Id.*

4  The Court agrees with Class Counsel that this recovery is in line with comparable class
5  action settlements. *See, e.g.*, *Hunt v. Bloom Energy Corp.*, No. 19-CV-02935-HSG, 2024 WL
6  1995840, at *6 (N.D. Cal. May 6, 2024) (approving settlement fund amount of 5.2% of the class's
7  total maximum estimated recovery); *In re Lyft Inc. Sec. Litig.*, No. 19-CV-02690-HSG, 2023 WL
8  5068504, at *6–7, & n.6 (N.D. Cal. Aug. 7, 2023) (approving settlement fund amount of 3.2 to
9  4.7% of the class's total maximum estimated recovery); *In re Aqua Metals, Inc. Sec. Litig.*, Case
10  No. 17-cv-07142-HSG, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) (approving settlement
11  fund amount of 7.3% of the class's total estimated damages); *see also In re Volkswagen "Clean*
12  *Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2019 WL
13  2077847, at *2 n.2. (N.D. Cal. May 10, 2019) (noting that "the median settlement recovery from
14  2009 to 2017 was only five percent of damages in securities class actions"). Moreover, "[i]t is
15  well-settled law that a cash settlement amounting to only a fraction of the potential recovery does
16  not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d
17  454, 459 (9th Cir. 2000) (citation omitted).

18  As discussed above, this case—and any possible recovery—is further complicated by
19  Tricida filing for bankruptcy in 2023. Only Defendant Klaerner remains in the case. Class
20  Counsel has explained that although Defendant had Directors & Officers ("D&O") insurance to
21  provide coverage for the claims against him, the policy was for a limited amount and provided for
22  the payment of defense costs and expenses. *See* Dkt. No. 223 at 4–5. Thus, "the D&O policy was
23  a wasting asset and the longer the case went on, the less (or even no) insurance would be available
24  to satisfy the Class's claims." *See id.* at 5; *see also* Walker Decl. at ¶ 94. Class Counsel further
25  explained that although they could seek to recover from Defendant's personal assets, they had no
26  assurance that Defendant had sufficient personal assets to satisfy any potential judgment. *See* Dkt.
27  No. 223 at 15–16.

28  The Court also approves of the Plan of Allocation and the proposed *cy pres* recipient for

the same reasons discussed at preliminary approval. *See* Dkt. No. 220 at 14–16. The Settlement Fund will be distributed on a pro rata basis according to each Class Member's recognized loss. And the proposed *cy pres* recipient, the Bluhm Legal Clinic Center for Litigation and Investor Protection at Northwestern University Pritzker School of Law, does work that aligns with the objectives of the securities laws underlying this case and the Class Members' interest in protecting investors. *See* Dkt. No. 219 at ¶ 5. Thus, there is a sufficient "driving nexus" between the class and the *cy pres* recipient. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). The Court thus finds that this factor weighs in favor of approval.

### 3. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. The parties reached settlement after several years of contested litigation involving significant discovery and extensive investigation into Lead Plaintiff's claims. *See* Walker Decl. at ¶¶ 2–3, 41–68. Thus, the Court is persuaded that Class Counsel entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 4. Reaction of Class Members

The reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted); *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.") (citation omitted).

As discussed above, the settlement terms were publicized through a notice process that this Court has deemed adequate. No Class Members requested exclusion from or objected to the settlement. *See* Supp. Cormio Decl. at ¶¶ 8–9; *see also Martin v. AmeriPride Servs., Inc.*, Case No. 08cv440–MMA (JMA), 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011) ("The absence of

any objector strongly supports the fairness, reasonableness, and adequacy of the settlement.") (citations omitted). The Court finds that the positive reaction of the settlement class supports approval of the settlement.

\* \* \*

After considering and weighing the above factors, the Court finds that the Settlement Agreement is fair, adequate, and reasonable, and that the Class Members received adequate notice. Accordingly, the Court **GRANTS** Lead Plaintiff's motion for final approval of the class action settlement. Dkt. No. 223.

### B. Attorneys' Fees and Costs

In its unopposed motion and consistent with the Settlement Agreement, Class Counsel ask the Court to approve an award of 27.5% of the Settlement Fund, or $3,918,750.00, in attorneys' fees and $337,645.15 in costs. *See* Dkt. No. 224.

#### i. Legal Standard

Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from the common fund they created for the benefit of a class. *See* Fed. R. Civ. P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). The purpose of the "common fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (citation omitted). The district court has discretion over the amount of attorney fees to award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Under the PSLRA, the award "shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6).

In a common fund case such as this one, the Court also has discretion to choose either the lodestar method or the percentage-of-the-fund method to calculate reasonable attorneys' fees. *Vizcaino*, 290 F.3d at 1047. Under the percentage-of-the-fund method, 25 percent of a common fund is the benchmark for attorneys' fees awards. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942. The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably

13

1    expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate
2    for the region and for the experience of the lawyer." *Id.* at 941 (citation omitted).  Whether the
3    Court awards the benchmark amount or some other rate, the award must be supported "by findings
4    that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.  To guard
5    against unreasonable results, the Ninth Circuit has encouraged district courts to cross-check any
6    calculations under one method against those under the other method. *Id.* at 1050–51.

7        Class counsel is also entitled to recover "those out-of-pocket expenses that would normally
8    be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)
9    (quotations omitted).

10        **ii.    Discussion**

11        Class Counsel seeks $3,918,750.00 in attorneys' fees and $337,645.15 in costs.  *See* Dkt.
12    No. 224.  Counsel recognizes that this represents 27.5% of the $14.25 million Settlement Fund, a
13    slight enhancement to the 25% benchmark.  *See id.*  However, they urge that this is nonetheless
14    appropriate in light of the results achieved, the risks to obtaining discovery, and the skill required
15    given the complexity of the case.  *Id.*

16        The "touchstone" for the Court's reasonableness analysis is "'the benefit to the class—
17    class counsel can only reap rewards if they have delivered results for class members.'" *In re*
18    *California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025) (quoting *Lowery*
19    *v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 998 (9th Cir. 2023)).  The Court must independently
20    calculate the benefit to the class, and may not approve fees "that appear excessive of settlement
21    value." *In re California Pizza Kitchen*, 129 F.4th at 679.  As discussed, Class Counsel obtained a
22    significant recovery for the class by securing a $14.25 million non-reversionary Settlement Fund.
23    The Court agrees that this is a good result that confers benefits on the Class.  The fact that no
24    Class Members have objected or opted out further buttresses this conclusion.

25        This recovery must be considered in light of the significant risks that Lead Plaintiff would
26    face in further litigation.  In fact, the risk that further litigation might result in the Class not
27    recovering *at all* is a significant factor in the award of fees. *See Vizcaino*, 290 F.3d at 1048.  As
28    Class Counsel explained in support of the motion for final approval, they would face considerable

14

difficulty obtaining similar recovery through further litigation, given the complexity of the case and Defendant's aggressive defense. *See* Walker Decl. at ¶¶ 4, 93–101. Counsel acknowledged that there is a substantial risk that Defendant could succeed in significantly reducing recoverable damages by establishing, for example, that Tricida cured any alleged misrepresentation or omission well before the end of the Class Period. *See id*. Moreover, Defendant Klaerner is the only remaining defendant in the case after Tricida's bankruptcy. Given these challenges, this factor weighs in favor of awarding substantial fees. *See Vizcaino*, 290 F.3d at 1048.

Class Counsel also litigated this case skillfully and professionally. The risk that Counsel took in litigating this case on a contingency basis for the last few years weighs in favor of a substantial attorneys' fee award. *See Vizcaino*, 290 F.3d at 1050. Counsel spent considerable time on this case without any certainty that they would be compensated. *See, e.g.*, Walker Decl. at ¶¶ 106, 117–20, 126–38. Further, Counsel conducted an extensive investigation, engaged in substantial and voluminous fact discovery, successfully certified a class, and navigated the complexities of Tricida's bankruptcy in the middle of the litigation.

However, the Court is also cognizant of its obligation to review class fee awards with particular rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino*, 290 F.3d at 1052 (internal quotation marks and citation omitted).

Here, given all the above factors, particularly the significant amount of work Class Counsel performed in this case, the substantial risk taken on a contingency basis, and the good results achieved, the Court finds that an increase above the 25% benchmark is warranted, and that the requested award of 27.5% of the fund, or $3,918, 750.00 is appropriate under the circumstances. Courts in this district have awarded similar fees in comparable securities cases. *See, e.g.*, *Hunt*, 2024 WL 1995840, at *8–9 (awarding 30% of the common fund in securities class action); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (awarding

15

28% of the common fund in securities class action); *In re Nuvelo, Inc. Sec. Litig.*, Case No. C 07–04056 CRB, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (awarding 30% of the common fund in securities class action);.

The reasonableness of an award of 27.5% of the settlement fund is also confirmed by a lodestar cross-check. As a final check on the reasonableness of fees, the Court may compare the requested fees with counsel's bills under the lodestar analysis. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The Court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (citation omitted).

Class Counsel represent that they expended 3,106.3 hours on this case over the last four years, resulting in a lodestar of $2,494,599. *See* Dkt. No. 224 at 17–18; Walker Decl. at ¶ 126–132; Dkt. No. 223-5, Ex. 4. Bankruptcy counsel at Lowenstein Sandler LLP, in turn, expended 219.7 hours, resulting in a total of $227,275. *See* Walker Decl. at ¶ 132; *see also* Dkt. No. 223-6, Ex. 5 ("Etkin Decl."). Following the hearing, and at the Court's request, Counsel provided their billing records for the Court's in camera review.

Counsel's hourly rates range from $970 to $1,625 for partners, $535 to $640 for associates, and $380 to $410 for paralegals. Walker Decl. at ¶ 131; Etkin Decl. at ¶ 7. This is in line with prevailing rates in this district in similar cases for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Hunt*, 2024 WL 1995840, at *9 (collecting cases). The requested amount represents a 1.41 multiplier to Class Counsel's anticipated lodestar. Dkt. No. 224 at 18. In similar cases, courts, including this Court, have approved multipliers ranging from 1.0 to 4.0. *See Vizcaino*, 290 F.3d at 1051, n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the 1.0 to 4.0 range and 54% in the 1.5 to 3.0 range); *In re Lyft Inc. Sec. Litig.*, Case No. 19-cv-02690-HSG, 2023 WL 5068504, at *12 (N.D. Cal. Aug. 7, 2023) (approving 1.47 multiplier in securities case); *In re Aqua Metals*, 2022 WL 612804, at *9 (approving 0.4 negative multiplier in securities case); *Vataj v. Johnson*, Case No. 19-cv-06996-HSG, 2021 WL 5161927, at *9 (N.D. Cal. Nov. 5, 2021) (approving 2.5 multiplier in securities case). Overall, the lodestar cross-check

16

supports the reasonableness of the fee.

An attorney who has created a common fund for the benefit of the class is also entitled to reimbursement of reasonable litigation costs from that fund. *See Harris*, 24 F.3d at 19. Here, Class Counsel requests $337,645.15 in costs that counsel represents was incurred in this litigation. *See* Walker Decl. at ¶ 140; Etkin Decl. at ¶ 7. The Court finds that counsel's requested expenses are reasonable and **GRANTS** the request as to the costs.

\*   \*   \*

The Court accordingly **GRANTS** the request for attorneys' fees and costs, and awards to Class Counsel $3,918,750.00 in attorneys' fees and $337,645.15 in costs, for a total of $4,256,395.15.

### C. Lead Plaintiff's Costs and Expenses

Lastly, Lead Plaintiff requests $1,700 for reasonable costs and expenses related to his representation of the Class, or in the alternative, $680 for the time spent preparing and sitting for his deposition. Dkt. No. 225. Lead Plaintiff states that he spent at least 20 hours, or the equivalent of 2.5 workdays representing the Class in this action. *Id.*

The PSLRA prohibits incentive awards, stating that named plaintiffs "will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery." 15 U.S.C. § 78u–4(a)(2)(A)(vi); *see also Rodriguez*, 563 F.3d at 960, n.4 ("The [PSLRA] prohibits granting incentive awards to class representatives in securities class actions."); *Schwartz v. Arena Pharms., Inc.*, 775 F. App'x 342, 343 (9th Cir. 2019) (finding district court abused its discretion in granting an incentive award rather than assessing request for lost wages under the PSLRA). However, courts may still award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4). At preliminary approval, the Court cautioned that Lead Plaintiff "must provide meaningful evidence demonstrating that the requested amounts represent actual costs and expenses incurred directly as a result of the litigation." *See* Dkt. No. 220 at 12 (quotation omitted).

Here, the Court finds that Lead Plaintiff has done so. He expended significant time on this case over the last several years. He states that he reviewed documents and filings and coordinated

with Class Counsel to respond to discovery requests and evaluate the Settlement. *See* Dkt. No. 235 at 2; *see also* Dkt. No. 223-7, Ex. 6 ("Fiore Decl.") at ¶¶ 3, 8. He also spent a day preparing for and attending his deposition. *See* Dkt. No. 225 at 3. In total, he estimates that he spent at least 20 hours on this case, or approximately the equivalent of 2.5 workdays. Lead Plaintiff also explains that he used paid time off from his work to prepare for and attend his deposition. *See id.*; *see also* Fiore Decl. at ¶ 8.

Lead Plaintiff is a salaried worker who makes approximately $160,000 a year, with limited paid time off. *See* Fiore Decl. at ¶¶ 7–8. In an effort to calculate how much he should be compensated, Plaintiff divided his $160,000 annual salary by 235 days of work a year. *See id.* at ¶ 7. The Court finds that this is a reasonable estimate of the actual costs and expenses that Lead Plaintiff incurred as a result of this litigation. The Court therefore **GRANTS** Lead Plaintiff's request. Dkt. No. 235.

### III. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement, Dkt. No. 223, and **GRANTS** the motion for attorneys' fees, Dkt. No. 224. The Court awards attorneys' fees in the amount of $3,918,750.00 and costs in the amount of $337,645.15. The Court **GRANTS** Lead Plaintiff's motion for costs and expenses, and awards Lead Plaintiff $1,700. Dkt. No. 225.

The parties and settlement administrator are directed to implement this Final Order and the Settlement Agreement in accordance with the terms of the Settlement Agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 7 days from the date of this order. The judgment need not, and should not, repeat the analysis in this Order. For guidance on the format of such a stipulated judgment, the Court directs the parties to review *Vataj v. Johnson*, Case No. 4:19-cv-06996, Dkt. No. 139.

Class counsel shall file a Post-Distribution Accounting within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to class members, *cy pres* beneficiaries, and others pursuant to the Settlement Agreement). In addition to the information contained in the Northern District of California's Procedural Guidance for Class

Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the Post-Distribution Accounting shall discuss any significant or recurring concerns communicated by class members to the settlement administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved.  Counsel is directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases.  The parties shall post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website.  The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

The Court will withhold 10% of the attorneys' fees granted in this Order until the Post-Distribution Accounting has been filed.  Class Counsel shall file a proposed order releasing the remainder of the fees when they file their Post-Distribution Accounting.

**IT IS SO ORDERED.**

Dated: 10/23/2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge